ACCEPTED
12-15-00277-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
12/2/2015 5:11:54 PM
Pam Estes
CLERK

CASE NO. 12-15-00277-CV

IN THE
TWELFTH COURT OF APPEALS
at Tyler

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
12/2/2015 5:11:54 PM
PAM ESTES
Clerk

*In re AAA Texas County Mutual Insurance Company*

Petition for Writ of Mandamus from Cause No. 2014-1365-A
188th District Court, Gregg County, Texas
Honorable David Brabham Presiding

## REAL PARTY IN INTEREST THOMAS JACKSON'S RESPONSE TO RELATOR'S PETITION FOR WRIT OF MANDAMUS

GLENN PERRY
Texas Bar No. 15801500
E-mail: gap@sloanfirm.com
JUSTIN A. SMITH
Texas Bar No. 24068415
E-mail: jsmith@sloanfirm.com
Sloan, Bagley, Hatcher & Perry
Law Firm
101 East Whaley Street
P.O. Drawer 2909
Longview, Texas 75606
Telephone: 903-757-7000
Telecopier: 903-757-7574

ATTORNEYS FOR REAL PARTY
IN INTEREST THOMAS
JACKSON

December 2, 2015

## IDENTITY OF PARTIES AND COUNSEL

1. AAA Texas County Mutual Insurance Company, Relator

   *Appellate Counsel for Relator:*   Gregory R. Ave
   Texas Bar No. 01448900
   E-mail: Greg.ave@wbclawfirm.com
   Jay R. Harris
   Texas Bar No. 00793907
   Walters, Balido & Crain, LLP
   Meadow Park Tower, Suite 1500
   10440 North Central Expressway
   Dallas, Texas 75231
   Telephone: 214-347-8310
   Facsimile: 214-347-8311

2. AAA Texas County Mutual Insurance Company, Relator

   *Trial Counsel for Relator:*   Carlos Balido
   Texas Bar No.01631230
   E-mail: carlos.balido@wbclawfirm.com
   Walters, Balido & Crain, LLP
   Meadow Park Tower, Suite 1500
   10440 North Central Expressway
   Dallas, Texas 75231
   Telephone: 214-749-4805
   Facsimile: 214-760-1670

3. *Respondent*

   The Honorable Judge David Brabham
   Judge of the 188th Judicial District
   Court of Gregg County, Texas
   Gregg County Courthouse
   101 E. Methvin St., Suite 408
   Longview, Texas 75601
   Telephone: 903-237-2588
   Facsimile: 903-236-8603

4.    Thomas Jackson, Real Party in Interest

*Trial Counsel for Mr. Jackson*:  Glenn A. Perry
Texas Bar No.  15801500
E-mail: gap@sloanfirm.com
Justin A.
Texas Bar No. 24068415
E-mail: jsmith@sloanfirm.com
Sloan, Bagley, Hatcher & Perry Law Firm
101 East Whaley Street
P.O. Drawer 2909
Longview, Texas 75606
Telephone: 903-757-7000
Facsimile: 903-757-7574

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................... i

TABLE OF CONTENTS ................................................... iii

INDEX OF AUTHORITIES ................................................. v

TERMINOLOGY ........................................................ vii

STATEMENT OF THE CASE ............................................. 1

   I.  The UIM Lawsuit's Inception and the Genesis of the Subject Motion to Compel .......................................................... 4

   II.   The Motion to Sever and Abate ............................. 12

STATEMENT REGARDING ORAL ARGUMENT ....................... 15

ISSUES PRESENTED .................................................... 16

II. STANDARD OF REVIEW ............................................ 17

III. ARGUMENT & AUTHORITY ....................................... 18

   I.  Relator's Petition for Writ of Mandamus is Premature and will likely be Rendered Moot ...................................... 18

   II.   The Standard for Severance and Abatement in First Party Insurance Cases Involving Extra-contractual Claims ............... 20

   III.  Relator Did Not Plead, Allege, Argue, or Provide Evidence of Any Facts that Would Require Severance and Abatement, thus the Trial Court Could Not have Abused its Discretion ...... 24

   IV.  Bifurcation Protects Relator from Inadmissible Evidence Being Presented for Determining Third Party Fault and Underinsured Status ................................................ 34

V.    The Trial Court Did Not Abuse its Discretion in Denying Abatement ...............................................................................38

VI.   Relator Has Failed to Establish that it has No Clear and Adequate Remedy by Appeal in Failing to Establish that the Trial Court Abused its Discretion  or in That it Will Lose Substantial Rights By Being Required to Conduct Discovery on Jackson's Claims ..................................................................46

VII. Relator's Request to Vacate the November 6, 2015 Order on Jackson's Motion to Compel is Improper...................................48

V. CONCLUSION & PRAYER...................................................49

CERTIFICATE OF SERVICE...................................................53

CERTIFICATE OF COMPLIANCE...........................................54

TABLE OF CONTENTS TO REAL PARTY IN INTEREST'S APPENDIX ...........................................................................55

# INDEX OF AUTHORITIES

**CASES**                                                                   **PAGE(S)**

*Liberty Nat. Fire Ins. Co. v. Akin,* 927 S.W.2d 627
(Tex. 1966) ................................................. 17, 18, 20—24, 35

*Womack v. Berry,* 291 S.W.2d 677
(Tex. 1956) ......................................................................... 17

*Allstate Ins. Co. v. Hunter,* 865 S.W.2d 189
(Tex.App.—Corpus Christi 1993)....................... 17, 18, 25, 44

*Progressive County Mut. Ins. Co. v. Parks,* 865 S.W.2d 776
(Tex.App—El Paso 1993) ..................................................... 17

*In re Allstate Ins. Co.,* 2005 WL 1114640
(Tex.App.—Texarkana May 12, 2005) ......................... 18, 34

*Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916
(Tex. 1985) ................................................................. 18, 34

*Walker v. Packer,* 827 S.W.2d 833
(Tex. 1992) ...........................................................................18

*In re Reynolds,* 369 S.W.3d 638
(Tex.App.—Tyler 2012) ....................................................... 25

*In re Trinity Univ. Ins. Co.,* 2003 WL 22839280
(Tex.App.—Tyler Nov. 26, 2003, orig. proceeding)............. 25

*In re Allstate Texas Lloyds,* 202 S.W.3D 895
(Tex.App.—Corpus Christi-Edinburg 2006)....................... 25

*In re Arcababa,* 2013 WL 5890109
(Tex.App.—Waco October 31, 2013) ................................... 25

*Texas Farmers Ins. Co. v. Cooper*, 916 S.W.2d 698
    (Tex.App.—El Paso 1996) ........................................ 25, 45—46

*In re State Farm Mut. Auto Ins. Co.*, 395 S.W.3d 229
    (Tex.App.—El Paso 2012, orig. proceeding) ................. 26, 27,

*In re Reynolds,* S.W.3d, 354
    (Tex.App.—Houston [14th Dist.] 2003) .............................. 28

*In re Allstate Ins. Co.*, 232 S.W.3d 340
    (Tex.App.—Tyler 2007) ............... 29, 31—34, 38—39, 42, 47

*In re Farmers Tex. Mut. Ins. Co.,* 2011 WL 4916303
    (Tex.App.–Amarillo October 17, 2011). ...................... 29, 30

*Liberty Nat. Fire Ins. Co. v. Akin,* 927 S.W.2D 627
    (Tex. 1996) .............................................................. 35

*Accardo v. America First Lloyds Ins. Co.,* 2012 WL 1576022
    (S.D.Tex. 2013) ......................................................... 40, 41

*Hamburger v. State Arm Mut. Auto Ins. Co.,* 361 F.3D 875
    (5th Cir. 2004)............................................................41

*Aleman v. Zenith Ins. Co.,* 343 S.W.3D 817
    (Tex.App.—El Paso 2011, no pet.) .................................. 41

*Jordan v. Fourth Court of Appeals*, 701 S.W.2d 644
    (Tex. 1985) ..............................................................43

*In re Park Cities Bank,* 409 S.W.3d 859
    (Tex.App.—Tyler 2013) ................................................43

## Texas Rules of Civil Procedure

Tex. R. Civ. P. 193.3. ................................................... 43

# TERMINOLOGY

| | |
|---|---|
| "AAA" or "Relator" | Relator/Defendant, AAA Texas County Mutual Insurance Company |
| "Jackson" or "Real Party in Interest" | Real Party in Interest/Plaintiff, Thomas Jackson |
| "Judge Brabham" or the "trial court" | Honorable Davis Brabham, 188th Judicial District Court, Gregg County, Texas |

## STATEMENT OF THE CASE

It is interesting how an offending party may, through grand revisionism, portray themselves as the offended. That is exactly what AAA Texas County Mutual Insurance Company has done in this case. The truth is that virtually none of arguments made in Relator's petition were made in the trial court below and not *one* piece of evidence was filed with, cited to, or even mentioned in Relator's motion to sever and abate or in Relator's attendant arguments to the trial court. In fact, despite the attestations in Mr. Balidos' affidavit, some of the evidence in the mandamus record, namely the extrinsic correspondence upon which Relator relies to characterize their offer as one for the entire contract, labeled MR 4 and MR 5, was *never* filed with or mentioned in the trial court at all and makes its first appearance in this case on appeal. *See* Affidavit of Carlos Balido, pg. 2, *see* MR 4—MR 5.

Prior to the underlying wreck which caused Thomas Jackson severe injury, Relator entered into a contract of insurance with him, they took his premiums, they promised to provide him with coverage in the event he was injured by an uninsured or

1

underinsured motorist and assumed the attendant duties of dealing with him in good faith and fair dealing. It is undisputed that the policy exists and provides coverage for the underlying wreck. *See* MR 187.

On June 12, 2013, Thomas Jackson was involved in an automobile wreck. *See* MR 7—8. The facts of the wreck were not disputed by Relator in the motion or in their argument on severance and abatement. *See generally* MR 139—215. On June 12, 2013, Jackson, leaving the church where he works, was headed west on Pliler Precise Road and came to a stop at the red light where Pliler Precise Road intersects Judson Road. MR 7; MR 143. When Jackson's light turned green, he entered the intersection. MR 7, MR 143. At that same time, Patricia Tompkins was driving north on Judson Road, disregarded the red light commanding her to stop, entered the intersection unlawfully, and struck Jackson. MR 7, MR 143. Jackson was transported from the scene of the wreck by ambulance to Good Shepherd Medical Center. MR 7, MR 143. To date, Jackson has gathered evidence that he has paid or

2

incurred approximately $47,000.00 in past medical expenses alone. MR 143.

The information relating to the wreck and Jackson's injuries was, of course, presented to Ms. Tompkin's insurer. Ms. Tompkin's insured tendered their policy limits of $30,000.00. MR 8—9. Nor is there any great mystery as to why Ms. Tompkin's insurer did so, in light of the fact that Jackson's *past* medical expenses alone are approximately $17,000.00 in excess of Ms. Tompkin's policy limits.

Jackson presented his claim to Relator, providing it with the clear facts of this case and his damages. Presumably, Relator conducted an investigation and made their own determination of coverage and entitlement to benefits. Based on that investigation and determination, Relator offered $20,000.00 in excess of Ms. Tompkin's policy limits and the PIP benefits that had already been disbursed. MR 1.

Relator characterizes that offer as unequivocally being an offer to settle the entirety of Mr. Jackson's contract claim, including disputed portions of the claim, despite the fact that no such language appears in the offer. While Jackson disagrees with

3

Relator's characterization, the truth is that for purposes of Relator's petition these characterizations do not matter one iota. Relator had the burden of establishing that it was entitled to severance and abatement below and they did not do so.

Despite the fact that Jackson has contended since the filing of this suit that the $20,000.00 offer represented an amount that was undisputedly owed to him, Relator *never* pled, alleged, argued, or contested in *any* filing prior to this mandamus that the offer was for disputed damages and the entirety of the contract. MR 227—228; MR 62—65; MR 93—126; MR 81—86; MR 66—80; MR 139—182; MR 183—216. Nor did Relator offer any evidence in support of its motion to sever and abate, let alone evidence that Relator claimed to support its position that they had made a settlement offer on the entirety of the contract. MR 66—80; MR 183—216. The trial court was and is entitled to hold Relator to its burden and doing so is not an abuse of discretion.

I.    The UIM Lawsuit's Inception and the Genesis of the Subject Motion to Compel

This suit was filed on July 16, 2014. MR 217—223. That suit alleges breach of contract claims, a declaratory judgment claim, and extra-contractual claims. *Id.* On October 17, 2014, Jackson's counsel served Relator with their First Request for Admissions, First Request for Production and First Set of Interrogatories. MR 88; *See also* Pet., Tab C. Thirty days later, Relator requested and Pastor Jackson granted the first of *four* extensions for Relator to respond to written discovery, extending Relator's deadline to November 17, 2014. MR 241. Again, on November 25, 2014, Relator requested and was given a second extension. MR 242—243. On December 10, 2014, Relator again requested and was given a third extension. MR 244. On December 17, 2014, Relator requested, and received, a fourth extension to respond to discovery. MR 245.

When Relator finally responded to discovery, their responses were abysmal, where almost every request was objected to and virtually no responsive information was provided. MR 87—MR 90; MR 15—65; *See also* Pet., Tab C. On January 16, 2015, Jackson filed a motion to compel, which he did not set for hearing. MR

236—245. In a conference following the production of their discovery responses, Relator's asked to table the pending issues and engage in an early mediation, given the clear facts of this case and purportedly to avoid unnecessary litigation expense. MR 145, 147, 154, 156—157. Jackson agreed and suggested mediators. *See id.* None of the mediators were acceptable and Relator requested additional proposals, which Jackson provided. *Id.* Two months after Relator's request for an early mediation in April, Relator finally agreed to a mediator, with whom Jackson worked to obtain more than a dozen available dates in June and July of 2015, which were circulated to Relator. MR 156—157. Relator claimed they were not available for any of these dates and requested additional dates. MR 157. In June, Jackson again circulated more than dozen available dates for August and September of 2015. *See id.* Relator chose the very last available date, six months after Relator's request for an "early mediation." *See id.*

It became clear to Jackson in late June that Relator's tactics in this case were likely dilatory in nature. On July 15, 2015, Jackson sent his motion to compel with a letter to Relator seeking

to confer on Relator's discovery responses and requesting a privilege log. MR 252—260. Following that letter, Jackson's counsel called Relator's counsel three times in an attempt to meet and confer on discovery, with no response. MR 157—158, MR 91. Jackson's motion to compel was served on Relator on August 7, 2015 and was file marked on August 10, 2015. MR 87, MR 92. Jackson did not, however, set the motion for hearing, in the hope that filing the motion would prompt Relator to confer on the disputes. It did not. Finally, on September 10, 2015, after almost two months of attempting to confer with Relator on discovery, Jackson set his motion to compel for hearing and served Relator with notice of the hearing, set for October 1, 2015, by both e-filing and facsimile. MR 261—264. Even then, however, Relator still attempted to delay this case by filing a motion to continue Jackson's hearing on discovery by informing the trial court that the notice of hearing was not e-filed, even though it is clearly file marked, and that it did not receive service of the notice via facsimile, even though the fax confirmation sheet established that Relator had been served on September 10, 2015. MR 161—162.

7

Accordingly, the trial court denied Relator's motion for continuance and addressed the merits of Relator's objections

Just as it did in the trial court below, Relator attempts to misrepresent the record here, stating that:

> At prior hearr 1, 2015 the parties presented to the trial court their arguments as to why discovery as to the extra-contractual claims should be stayed (by AAA) and why it should not (by Jackson). *Yet, the court did not rule* [on the motion to compel] *until after the severance and abate hearing* where the trial court then entered an order retroactively dating back to October 1, 2015 directing AAA to respond to the extra-contractual discovery requests within 45 days – which became ten days from the date of the hearing.

*See* Pet. pg. 10 (emphasis added).

That assertion is blatantly false, as the transcripts to the October 1 and November 6, 2015 hearings, which Relator chose not to make part of the record, make perfectly clear. At the October 1, 2015 hearing:

> The Court: All right. Thank you, Counsel. What relief are you asking for, Mr. Smith?...
>
> Mr. Smith: The easiest way of doing it is for the requests and the interrogatories that deal with the substantive underlying claim,

8

I would ask that those objections be
overruled and they [Relator] be ordered,
compelled to respond to those within 14
days....

The Court: *I'm going to make that ruling.*
Okay. *All right.*

Mr. Smith: With respect to the bad faith
claims, perhaps the fairest way of dealing
with that is to overrule the objections and
require a response within 30 days, or maybe
even 45 days. That will give them time to
file their motion to sever and abate. In the
event that it's granted, that discovery would
be pending in the severed claim, and they
won't have to respond to it until the
abatement is removed. In the event that it's
bifurcated, then we already have an order
that compels the production of that
information, and we can kind of keep this
thing rolling.

*The Court: I'll make that ruling....*

MR 178—179 (emphasis added); *see also* MR 141 (the

chronological index identifying where in the transcript the "court's

ruling" appears).

In addition, Judge Brabham ordered, at the October 1, 2015

hearing, that Relator would produce a privilege log for each

category of discovery within the time frames cited, 14 days for the

9

discovery relating to the underlying wreck and within 45 days for the discovery relating to the extra-contractual claims. MR 180.

That Relator's alternate reality is purposefully crafted cannot be doubted. Relator was present at the October 1, 2015 hearing, when Judge Brabham first issued his ruling on the motion to compel. Jackson submitted his proposed order that is *identical* in substance to the agreed order, which the trial court signed on *October 26, 2015*, eleven (11) days *prior* to the hearing on the motion to sever and abate. MR 270—271. Relator itself informed the trial court at the hearing on its motion to sever and abate that the trial court had *signed an order on the motion to compel prior to that hearing*. MR 189. Last, and most telling, is Relator's *own acknowledgment of the court's October 1, 2015 ruling* when Relator presented its agreed order on the motion to compel.

> The Court: So this is the order *consistent with my **prior ruling**?*....
>
> [Counsel for Relator]: ***Yes, Your Honor***.

MR 214 (emphasis added).

10

While Jackson is not surprised that Relator would characterize the trial court signing the agreed order at their request as Judge Brabham's first and only ruling on the motion to compel, despite Relator's prior acknowledgments and, thus, knowledge that such a characterization is false, the prejudice they claim from that invented fact simply does not exist.

Relator goes on to inform this Court that "the trial court reviewed the following discovery requests which clearly go beyond the scope of the evidence" required to establish Ms. Tompkin's fault and underinsured status. *See* Pet. at pg. 11. This also Relator knows is false. The trial court directed the *parties* to review the discovery and determine if there was an agreement regarding which discovery requests related to Ms. Tompkins' fault and insurance status and which related to extra-contractual claims. MR 179—180; MR 212. Jackson and Relator did confer following the October 1, 2015 hearing and the discovery requests reflected in the Agreed Order[1] reflect Jackson's and Relator's

---

[1] This is also true of Plaintiff's Proposed Order, filed on October 6, 2015, since by that time the parties had conferred and reached an agreement regarding the discovery requests. The only disagreement at that time, and that prompted the filing

agreement as to which discovery requests relate to which claims. MR 212.

Almost *half* of the requests Relator now contends the trial court reviewed and "clearly go beyond the scope of the evidence to establish" Ms. Tompkins' fault and underinsured status, listed on page 12 through 20 of the Petition, are those Relator itself *agreed* relate to underlying claim to establish Ms. Tompkin's fault, underinsured status, and coverage. *See* Pet., Tab B; MR 168—169, MR 212.[23]

## II.    The Motion to Sever and Abate

It is telling that the entirety of Relator's petition, which it titles "The Motion to Sever and Abate," does not actually discuss the motion to sever and abate or the hearing on the motion, save

---

of the Proposed Order, was whether the trial court, in ruling on the motion on October 1, 2015, overruled Relator's objections. *See* MR212; MR270—272.

[2] Specifically out of Relator's list of now complained of discovery requests, the parties agreed that Requests for Production Numbers 7, 11, 13, and 18 and Interrogatory Numbers 5, 7, 9, 11, 15, and 20 relate to Ms. Tompkin's fault, Jackson's damages (and, thus, Ms. Tompkins' underinsured status), and coverage. *See* Pet., Tab B; MR 270—272. Relator responded to Requests for Admission Number 14 and 18 without objection and, thus, they were not subject to the motion to compel. *See id.*

[3] Jackson has no desire to re-litigate the motion to compel or argue that which was agreed to by the parties. However, by way of example, Request for Production Number 11, which asks for the discovery of insurance policies which provide coverage, which is expressly discoverable in every suit under Texas Rule of Civil Procedure 192.3(f). Likewise, Request No. 18, and Interrogatories Nos. 7 and 9 ask for information that would substantiate any claim of pre-existing injury.

for making the misrepresentation discussed above that the trial court "did not rule" on the motion to compel until after denying severance and abatement. *See* Pet. pg. 10—21. The entirety of the section is devoted to the motion to compel which was filed in August and ruled on October 1, 2015.

Relator's motion to sever and abate filed with the trial court below comprises seven pages and one exhibit. MR66—MR80. The one exhibit attached to it is not any "evidence" that Relator urges this Court to consider; rather, it is a copy of one of the cases cited in Relator's motion. MR 73—80.

Nowhere in Relator's motion to sever and abate does Relator argue that the trial court was required to sever and/or abate the case because they had made an offer to settle the entire contract claim in offering $20,000.00, which Jackson contends was undisputedly owed in UM/UIM coverage at the time it was made. MR 66—72. Nowhere in Relator's motion does Relator claim they had, in fact, made *any* offer to settle the entire contract claim or that the $20,000.00 offer was *not* for an undisputed sum. *See id.*

The $20,000.00 offer which Jackson contends Relator should have paid upon their determination that it was owed, and which Relator has attached as MR1, was not filed as evidence with their motion and is not referenced or cited. MR 66—80. Jackson's response to that letter demanding that the amount be paid by Relator, MR2—MR3, was also not filed as evidence with their motion, nor is it referenced or cited. MR 66—80.

Despite Mr. Balidos' assertion in his sworn affidavit to this Court that the attached documents which comprise the mandamus record are "[t]rue and correct copies of the material documents *filed with the trial court*," the letter that Relator contends it sent to Jackson and which it contends evidences that the $20,000.00 offer was for a disputed sum on the entire contract, labeled as MR 4—5, was *never* filed in the trial court at any point time. *See* Affidavit of Carlos Balido, pg. 2 (emphasis added); *See* Affidavit of Justin Smith, pg. 4—5.

14

## STATEMENT REGARDING ORAL ARGUMENT

Jackson asks this Court to grant oral argument in this matter because full discussion of the case would materially aid in this Court's decision-making process.

## ISSUES PRESENTED

1. Is a UM/UIM carrier entitled to severance and abatement of an insured's extra-contractual claims when it does not meet its burden of establishing that the carrier made an offer to settle the entirety of a disputed contract claim or other compelling circumstances.

## II. STANDARD OF REVIEW

"Severance of claims under the Texas Rules of Civil Procedure rest within the sound discretion of the trial court." *Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). A trial court only abuses its discretion in failing to order a severance "when all of the facts and circumstances of the case unquestionably require a separate trial to prevent manifest injustice, and there is no fact or circumstance supporting or tending to support a contrary conclusion and the legal rights of the parties will not be prejudiced thereby...." *Womack v. Berry*, 291 S.W.2d 677, 683 (Tex. 1956). Prejudice is not presumed simply because contract claims and extra-contractual claims are joined in the same action and accordingly, severance is not always mandatory. *See Allstate Ins. Co. v. Hunter*, 865 S.W.2d 189, 193—194 (Tex.App.—Corpus Christi 1993); *see also Progressive County Mut. Ins. Co. v. Parks*, 865 S.W.2d 776, 778 (Tex.App.—El Paso 1993). "To satisfy the clear abuse of discretion standard, the relator must show 'that the trial court could reasonably have

reached only one decision.'" *See id.* Thus, "[f]or mandamus relief to be appropriate, the trial court must have... issue[d] a decision *without basis or guiding principle in law." In re Allstate Ins. Co.,* 2005 WL 1114640, at *1 (Tex.App.—Texarkana May 12, 2005) (emphasis added) *citing to Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex. 1985).

Further, a writ of mandamus will not issue "absent a clear abuse of discretion that leaves the aggrieved party no adequate remedy at law." *Liberty Nat. Fire Ins. Co. v. Akin,* 927 S.W.2d 627, 629 (Tex. 1996). "Mandamus is intended to be an extraordinary remedy, available only in limited circumstances." *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992). "The writ will issue only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *See id.*

### III. ARGUMENT & AUTHORITY

I. Relator's Petition for Writ of Mandamus is Premature and will likely be Rendered Moot

18

Before turning to the merits of why Relator's Petition should be denied, it is important to note that, procedurally, this petition is premature and will likely be rendered moot. The titular contentions of Relator's petition are that "AAA has no contractual duty to pay UIM benefits" and that "[a]llowing discovery on Jackson's extracontractual claims *before* a determination on Jackson's UIM claim is an abuse of discretion." *See* Pet. pg 22 and 25 (emphasis added). These are also the sole contentions that Relator made below with respect to severance and abatement. MR187—190.

Jackson has pending now before the trial court his Motion for Partial Summary Judgment and No Evidence Summary Judgment which, if granted, will determine Ms. Tompkin's liability for causing the underlying wreck, the amount of Jackson's actual liquidated damages, and thus Ms. Tompkin's underinsured status. *See* Affidavit of Justin Smith, pg. 4

In the event Jackson's Motion for Summary Judgment is granted, there *will* be a determination of coverage triggering Relator's obligation to pay under *Brainard* and mooting Relator's

19

contention that the trial court abused its discretion in permitting discovery prior to the determination of Ms. Tompkins' liability and underinsured status. This Court should, therefore, lift the stay on the underlying proceeding and deny the petition to allow the motion for summary judgment to be decided. Alternatively, this Court should lift the stay and withhold rendering its decision until after the motion for summary judgment is decided. Further, because that course of action would expedite this proceeding and that below, in the event that this Court lifts the stay to permit the trial court to rule on Jackson's motion for summary judgment, Jackson would agree to a stay of Relator's obligation to produce discovery regarding Jackson's extra-contractual claims until after the trial court's ruling on his motion for summary judgment.

II.    The Standard for Severance and Abatement in First Party Insurance Cases Involving Extra-contractual Claims

The Supreme Court's decision in *Liberty National Fire Insurance Company v. Akin* is the seminal and controlling case regarding the severance and abatement of insurance coverage or

20

breach of contract claims from extra-contractual claims. *Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). There an insured brought breach of contract and bad faith claims against her homeowner's insurer after a denial of coverage. *See id.* at 628. The insurer moved to sever the breach of contract claims from the bad faith claims, arguing that certain evidence admissible for bad faith would be inadmissible on the contract claim. *See id.* The insurer also sought to abate the bad faith claims until the contract claim was finally resolved. *See id.* The trial court denied the severance and abatement, which the appellate court affirmed, and the case proceeded to the Supreme Court. *See id.*

The Supreme Court stated in *Akin* that "insurance coverage claims and bad faith claims are by their nature independent." *See id.* at 629. While Relator's assertion that bad faith claims can *never* exist absent a preliminary determination that of coverage[4] is not accurate, that is generally the case. *See id.* at 629. Thus, the insurer in *Akin* argued exactly what Relator argued here, namely

---

[4] *See* Pet. pg. 23

that "the trial court should have required [its insured] to obtain a favorable finding on her contract claim before proceeding with the bad faith claim," and that abatement should be ordered "to avoid the effort and expense of litigating a claim that may be nullified by a judgment for the insurer on the contract verdict." *See id.* The insurer also argued that it was entitled to severance because it had offered and tendered the undisputed portion of the insured's damages. *See id.* at 630.

After re-iterating that severance and abatement are matters vested in the discretion of the trial court, the Supreme Court held the trial court did not abuse its discretion in denying the insurer's motions for severance and abatement. *See id.* The Supreme Court noted, however, that:

> A severance may nevertheless be necessary in *some* bad faith cases.... One example would be when the insurer has made a settlement offer on the *disputed* contract claim. As we have noted some courts have concluded that the insurer would be unfairly prejudiced by having to defend the contract claim at the same time and before the same jury that would consider evidence that the insurer had offered to settle the *entire dispute.* While we concur with these

22

decisions, we hasten to add that evidence of this sort simply does not exist in this case. *In the absence of a settlement offer on the entire contract claim*, or other compelling circumstances, *severance is not required.*

*Id.* at 630 (emphasis added).

Thus, the Supreme Court maintained that "[t]raditionally, severance has been reserved to the trial court's discretion, where we leave it today." *See id.* at 631. *Akin* is the law in Texas regarding severance and abatement of first party insurance contractual/coverage claims from extra-contractual claims and the trial court here was referred to and relied upon *Akin* in reaching its decision in this case. MR193—194.

Under *Akin*, there is no special rule for bad faith insurance claims and there is but *one* situation in first party insurance cases, whether that is homeowner's insurance or UM/UIM insurance, that clearly requires severance. That is, if the trial court is *presented with evidence* that established there is a settlement offer on the *entire* and disputed portion of a contract claim, severance would be required to avoid undue prejudice. *See id.* at 630. If the trial court is *not* presented with evidence that

23

established there is a settlement offer on the *entire* contract claim, then, under *Akin* "severance is not required" and the trial court does not abuse its discretion in refusing to order a severance. *See id. Akin* was decided in 1996 and this is not new law.

The entirety of Relator's petition, unlike its motion to sever and abate and arguments below, revolves around contractual/coverage claims being severed from extra-contractual claims when the insurer has *put on evidence* that a settlement offer for the entire contract claim has been made. *See* Pet. pg. 22—39. Relator, however, misconstrues the evidence, contentions, and arguments Relator presented to the trial court and, thus, completely misses the point. Relator did *not* contend or make *any* showing to the trial court that the rule they invoke here was applicable.

III. Relator Did Not Plead, Allege, Argue, or Provide Evidence of Any Facts that Would Require Severance and Abatement, thus the Trial Court Could Not have Abused its Discretion

Relator, as the party moving for severance and abatement, had the burden of establishing in the trial court that severance and abatement of the extra-contractual claims was required. *In re Reynolds*, 369 S.W.3d 638, 652—653 (Tex.App.—Tyler 2012) (stating that "party seeking severance has the burden to show how it will be prejudiced if severance is not granted and to present evidence to the trial court, in camera if necessary, to support its position.) *citing to In re Trinity Univ. Ins. Co.*, 2003 WL 22839280, at *2 (Tex.App.—Tyler Nov. 26, 2003, orig. proceeding) (mem. op.) *and Allstate v. Ins. Co. v. Hunter*, 865 S.W.2d 189, 194 (Tex.App.—Corpus Christi 1993, no writ); *see also In re Allstate Texas Lloyds*, 202 S.W.3d 895, 900 (Tex.App.—Corpus Christi-Edinburg 2006) ("Rather, the burden is on the party seeking severance to show how it will be prejudiced if the claims are tried together and to present the evidence to the trial court, in camera if necessary, that forms the basis of its claims. In other words, relators must still carry the burden of proof to show that severance is required."); *see also In re Arcababa*, 2013 WL 5890109, at *8 (Tex.App.—Waco October 31, 2013); *see also Texas*

25

*Farmers Ins. Co. v. Cooper*, 916 S.W.2d 698, 701 (Tex.App.—El Paso 1996) ("It is and remains the *movant's burden* to show *specifically* how it will be prejudiced if abatement is not ordered, and to show *concrete evidence* of how defending against plaintiff's contract claim clashes with defending against plaintiff's bad faith claims.") (emphasis added).

Relator cites this Court to the El Paso court of appeals opinion in *In re State Farm Mutual Auto Insurance Company* as authority which, in Relator's own words, was decided "under virtually identical circumstances," as guiding the outcome of this matter. *See* Pet., pg. 32—33. Jackson agrees whole-heartedly that the El Paso court of appeals rightly decided *In re State Farm* and that its opinion should guide this Court's determination of this matter, just as it did the trial court's determination. MR194—195. Jackson also agrees that the decision in *In re State Farm* is virtually identical to this case, with one *very* important distinction; the insurer there actually argued *and* put on evidence that "conclusively proved" that that they had made an offer on the entire contract claim in presenting its motion to sever and abate.

*See In re State Farm Mut. Auto Ins. Co.*, 395 S.W.3d 229, 232 (Tex.App.—El Paso 2012, orig. proceeding).

As here, the plaintiff in *State Farm* contended that payment offered was not "an offer to settle the entire contract claim." *See id.* at 236. Relying, as it was required to do, on *Akin*, the El Paso court held that "severance is required when an insurer offers to settle the entire contract claim...." *See id.* at 234. Unlike Relator, however, "State Farm asserted *in its motion and reply*, and *provided proof to the trial court* in the form of letters and affidavits from its claims representative, that it was offering to settle in full each of" the insured's contract claims. *See id.* (emphasis added). Thus, "State Farm met its evidentiary burden by providing *the trial court* with letters and affidavits from its claims representative that *conclusively proved* that State Farm offered to settle" the entirety of the insured's contract claims "and the resulting damages therefrom." *See id.* at 236 (emphasis added). Therefore, because the trial court was presented with conclusive evidence that State Farm had made settlement offers

on the entirety of the insured's contractual claims, it abused its discretion in denying severance, contrary to *Akin*. *See id.*

Similarly, in *In re Reynolds* there was a dispute over whether the insurer had made an offer to settle the entirety of the contract claims under *Akin*, thus mandating the severance of the insured's contractual/coverage and extra-contractual claims. *See In re Reynolds*, 104 S.W.3d 354, 358—360 (Tex.App.—Houston [14th Dist.] 2003). There, the court of appeals held that because the insurer did not "*conclusively prove*[] they offered to settle the *entire* claim as required by *Akin*," as opposed to an offer on the undisputed portion of the claim, the insurer failed to establish that they were entitled to severance and abatement. *See id.* at 359—360 (emphasis added).

Here, unlike *In re State Farm* and *In re Reynolds*, Relator did not contend in its motion or any reply that it made an offer to settle the entire and disputed portions of Jackson's contract claim, nor did it offer *any* evidence that it had done so. MR66—MR80. Similarly, Relator did not claim at the hearing on its motion that they had made an offer on the entirety and disputed portions of

28

Jackson's contract claim and again offered *no* evidence that it done so. *See generally,* MR183—216[5] While Jackson disagrees with Relator's characterization of their $20,000.00 offer[6], the characterizations, arguments and so-called evidence Relator were not presented to the trial court, could not have been considered by the trial court, and, thus, cannot form the basis for an abuse of discretion. *See In re Allstate Ins. Co.,* 232 S.W.3d 340, 342—343 (Tex.App.—Tyler 2007).

---

[5] The only reference Relator made to the $20,000.00 offer at the hearing on their motion to sever and abate is located at MR 199 of the transcript. In truth, Jackson is not certain what the argument is attempting to convey because it is nigh on unintelligible, but it seems to be that, because Relator has no contractual obligation to pay prior to their being a judicial determination of third party fault and uninsured status, Relator's failure to tender the $20,000.00 is not a breach of contract.

[6] Relator claims there is a "clear connotation" that the April 28, 2014 letter was to settle a disputed contract claim, but itself is forced to rely on a document that was not filed in the trial court below as extrinsic evidence that Relator disputed the value of Mr. Jackson's claims. *See* Pet. pg. 1—3. Relator's reliance on that extrinsic evidence indicates that even Relator acknowledges that the April 28, 2014 letter is not clear. Of course, the trial court could not have relied on that extrinsic evidence, nor was it asked to rely on *any* evidence. The April 28, 2014 letter also states that the $20,000.00 sum was arrived at from a "review of the facts" and there are other extrinsic facts which support Jackson's position that Relator did not and could not have disputed that he was entitled to at least $20,000.00 in damages, such as the amount of his past medical damages, his future medical damages, the evidence of other unliquidated damages, the clarity of Ms. Tompkins' fault for causing the wreck. There also is likely other evidence, which has not yet been produced in discovery, which evidences Relator's investigation of the claim and their determination that Jackson was covered and entitled to at least $20,000.00 at the time the offer was made.

This is the situation that was presented to the Amarillo court of appeals in *In re Farmers Texas Mutual Insurance Company. See In re Farmers Tex. Mut. Ins. Co.*, 2011 WL 4916303 (Tex.App.—Amarillo October 17, 2011). Farmers, as Relator did here, filed to abate all extra-contractual claims until after the resolution of the UIM claim. *See id.* at *1. Farmers, also as Relator did here, did not raise that it had made an offer to settle the entire contract claim. *See id.* at *1—2. The trial court denied Farmers motion. *See id.* at *1. After the trial court's ruling, Farmers informed the trial court that it had made "a settlement offer to conclude [the insured's] entire contract claim" and asked the trial court to enter an order memorializing its prior ruling for appeal. *See id.* at *1—2. The Amarillo court of appeals noted that "in a mandamus context, for a party to preserve its complaint that the trial court failed to abate extra-contractual claims, that party must have brought the issue to the trial court's attention...." *See id.* at *1.

> Farmers's mandamus petition alleges that Judge Schildknecht clearly abused her discretion by failing to abate Henrie's extra-

30

contractual claims after Farmers made a settlement offer on Henrie's entire contract claim. As such, *Farmers has failed to preserve its complaint by failing to seek an abatement order from the trial court on the grounds upon which it now seeks mandamus relief.* Consequently, we *cannot* conclude that the trial court clearly abused its discretion or that Farmers does not have an adequate remedy available at law. Having failed to establish its entitlement to mandamus relief, we deny Farmers's petition.

*See id.* at *2 (emphasis added).

Relator asserts that this Court in *In re Allstate Ins. Co.* "held that severance and abatement was necessary where an insurer made an offer to settle." Pet. pg. 30. That is not the holding of this Court in *Allstate*, although the actual opinion is instructive. In *Allstate* the insureds' vehicle was damaged by a falling tree and they submitted a claim to their insurer, Allstate. *See In re Allstate Ins. Co.*, 232 S.W.3d 340, 341 (Tex.App.—Tyler 2007). Allstate had the vehicle damage appraised and tendered a check for $867.34, which represented the undisputed damages less the deductible. *See id.* The insureds obtained their own appraisal, which reflected greater damage, and ultimately brought suit

31

against Allstate. *See id.* Allstate filed a motion to sever and abate extra-contractual claims until the breach of contract was determined. *See id.* The trial court denied the motion. *See id.* Allstate then made a settlement offer on the entire contract and, thereafter, filed a motion for reconsideration with the trial court premised on that settlement offer. *See id.* The motion was again denied. *See id.*

This Court recognized that "[i]n considering whether the trial court abused its discretion in denying Allstate's motion to sever and abate, our review is limited to the record *as it existed before the trial court at the time of the decision.*" *See id.* at 343 (emphasis added). Citing to the Supreme Court's opinion in *Akin,* this Court also recognized that a "trial court has broad discretion to sever a lawsuit into separate suits" and is only required to do so "when there is a settlement offer on the *disputed* contract claim." *See id.* (emphasis added).

While this Court determined that the trial court *"could* have granted the severance," because the claims did not rely on the same facts and were not inextricably intertwined, that alone is not

32

sufficient. *See id.* The question in whether the trial court abused its discretion was whether it was *required* to order severance because it was presented with evidence that Allstate had made an offer on the entire contract claim. *See id.* In fact, this Court noted that "if the settlement offer represented only the undisputed portion of the contract claim, the trial court's denial of the severance *would not be an abuse of discretion.*" *See id.* (emphasis added). Which is, of course, exactly what Jackson has contended since day one and which Relator made no apparent attempt to contradict. MR 66—80; MR 183—MR 216.

There is, quite frankly, no evidence here that "conclusively proves" that Relator made an offer for the entirety of a disputed contract claim, as opposed to undisputed damages, and there was certainly *no* evidence at all that Relator had presented or asked the trial court to consider in conjunction with its motion to sever and abate. Thus, consistent with the Supreme Court's opinion in *Akin*, the El Paso court's opinion in *In re State Farm*, the Houston court's opinion in *In re Reynold's*, the Amarillo court's opinion in *In re Farmers* and this Court's opinion in *In re Allstate*, Relator

33

did not meet its burden of establishing that the severance and abatement was mandatory and, clearly, the trial court did not abuse its discretion by having "issue[d] a decision *without basis or guiding principle in law.*" *In re Allstate Ins. Co.*, 2005 WL 1114640, at *1 (Tex.App.—Texarkana May 12, 2005) (emphasis added) *citing to Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985).

IV.  Bifurcation Protects Relator from Inadmissible Evidence Being Presented for Determining Third Party Fault and Underinsured Status

Putting aside Relator's new arguments and so-called evidence regarding settlement under *Akin*, the only argument presented to the trial court by Relator regarding severance was that certain evidence that would be admissible with respect to Jackson's extra-contractual claims would be inadmissible for determining whether Ms. Tompkins' was liable and underinsured. MR66—72. That was also a concern raised in *In re Allstate* and, as this Court noted there, even if the trial court *could* order severance, its refusal to do so is not an abuse of discretion. *See In*

34

*re Allstate*, 232 S.W.3d at 343. Relator's concern does not mandate severance here just as it did not mandate it in *In re Allstate*.

*Akin* suggested that a trial court "may address any undue prejudice by instructing the jury that the evidence proves nothing with regard to the coverage of the plaintiff's claim, but may be considered relevant only to the bad faith claim." *See Liberty Nat. Fire Inc. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996). Judge Brabham's order bifurcating the coverage claim from the remainder of the claims provides far more protection than the instruction suggested in *Akin*. In fact, the trial court's order here complies with even the "inflexible" application rejected by *Akin*. *See id.* at 632 (dissent) (requiring "segregation" of claims in all first party cases, but maintaining a trial court's discretion to sever or bifurcate, and prohibit abatement).

Nonetheless, Relator asserts that it will be prejudiced because Jackson intends to introduce the $20,000.00 offer *in the first trial*, during which the jury will determine Ms. Tompkins' liability and underinsured status. *See* Pet. pg. 8—9 (... Jackson is going to make the settlement offer the focal point by arguing to

the jury that it represents (1) an admission by AAA *he is entitled to UIM benefits* and (2) then to the same jury in the same bifurcated trial portion that AAA acted in bad faith in not paying him the per person policy limit.")(emphasis added).

To be clear, Jackson has always intended and contemplated that Ms. Tompkins' fault and Jackson actual damages, and thus his entitlement to UIM benefits is to be tried solely and exclusively in the first trial. MR194—195. Jackson does not now nor has he ever expressed an intention to introduce the $20,000.00 sum as evidence in that first trial for any reason. As Jackson stated at the hearing below, only "after that issue [of third party fault and underinsured status] is tried," would there be a "bifurcated trial on the bad faith claims and the [second] breach of contract claim that asserts that [AAA's] failure to tender the amount that [it] determined to be owed was a breach of contract and bad faith." MR195.[7] Removing the potential concern of

---

[7] Contrary to Relator's contention, Jackson's bad faith claims are not premised on the sufficiency or adequacy of the $20,000.00 sum, such that Jackson will be contending that "AAA acted in bad faith in not paying him the per person limit." Pet. pg. 9.

36

presenting evidence supporting both of these latter claims, which arise from the same facts and involve the exact same issues, during the first stage of the trial is exactly why Jackson proposed and Judge Brabham ordered the bifurcation of this trial. *See id.* Relator did not make any showing below, and does not make any showing here, how the second breach of contract claim, asserting that Relator's failure to tender the $20,000.00 offer upon Jackson's request, and his remaining extra-contractual claims, asserting that Relator's failure to tender the $20,000.00 which Jackson contends and believes Relator determined to be owed following its investigation of the claim, that "the extra-contractual claims are not so interwoven with the contract action that they involve the same facts and issues," such that severance of those two claims would be proper. *See* MR 69.

Thus, in ordering bifurcation, evidence that is inadmissible with respect to Jackson's claims to determine coverage remains inadmissible and there is no prejudice to Relator in how this matter will be tried.

V. The Trial Court Did Not Abuse its Discretion in Denying Abatement

A party cannot be entitled to an abatement if it is not entitled to a severance that would make abatement possible. As demonstrated above, Relator completely failed to establish its entitlement to a severance and, thus, is also not entitled to an abatement. However, even if Relator had established its entitlement to severance, this Court has specifically rejected a mandatory rule requiring abatement *even* where severance would be *required* because the trial court was presented with evidence that the insurer offered to settle the entire contract claim, which was not the case here. *See In re Allstate Ins. Co.*, 232 S.W.3d 340, 344 (Tex.App—Tyler 2007) ("We recognize that a number of our sister courts hold that abatement is mandatory when a trial court orders severance of extracontractual claims from contractual claims," however, "we have avoided creating a bright line rule requiring abatement under these circumstances.")

This Court reached this result because "a trial court should schedule its cases in such a manner as to expeditiously resolve

38

them," and that to promote carrying out this task, the "trial court is given broad discretion in managing its docket" which "we will not interfere with the exercise of... absent a showing of clear abuse." *See id.* Despite this Court's clear language in *Allstate* to the contrary, Relator cites to that opinion for the proposition that this Court "held that severance and abatement is necessary where an insurer made an offer to settle," a claim which is, as discussed above, not accurate with respect to either severance or abatement. *See* Pet. at pg. 30.

While this Court did ultimately find that abatement was required in *Allstate*, it rejected the notion that avoiding potentially unnecessary discovery was sufficient by itself to establish the necessity for abatement and relied on two additional factors, the first being the insurer's showing that it would have to disclose privileged and protected information and, second, the fact that the insured's did not dispute that, if severance was ordered, abatement should be granted. *See In re Allstate Ins. Co.*, 232 S.W.3d 340, 344—345 (Tex.App.—Tyler 2007). This latter factor,

of course, is conspicuously missing from Relator's block quote of the opinion in *In re Allstate. See id.* at pg. 30 (emphasis added).

Unlike *In re Allstate*, none of the factors that led this Court to hold that abatement was required are present here. As an initial matter, Relator offered no evidence in the trial court that the $20,000.00 offer was for the entirety of a disputed contract claim, thereby establishing the necessity of a severance. *See infra* § I and II.

Second, an adverse determination on coverage will not negate the remainder of Jackson's claims and, thus, will not render discovery of Jackson's extra-contractual claims and second breach of contract claim unnecessary. As noted above, it is not universally true that extra-contractual claims require on determination of coverage. The only case Relator cites for the proposition is the Southern District of Texas' 2009 opinion in *Weir v. Twin City Fire Ins. Co. See* Pet., pg. 26. *Wier*, however, was rejected by the none other than the Southern District of Texas in 2013 because it is not the law in Texas or even in the Fifth Circuit when applying Texas law in UM/UIM bad faith cases. *See Accardo*

*v. America First Lloyds Ins. Co.*, 2012 WL 1576022, at *4—5 (S.D.Tex. 2013) *relying on Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 880 (5th Cir. 2004). The duty of good faith and fair dealing, which is imposed on all first party insurers in Texas, does not focus on whether the claim is *valid*, but whether the insurer acted *reasonably* in the handling of the claim. *Aleman v. Zenith Ins. Co.*, 343 S.W.3d 817, 822 (Tex.App.—El Paso 2011, no pet.) *citing to Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995). Thus, there are occasions where the insurer's investigation reveals such evidence of the motorist's fault and their own insured's damages where "the judicial determination that triggers the insurer's obligation to pay is no more than a mere formality." *See id.* at *5. "In such cases, an insurer may act in bad faith by delaying payment and insisting that the insured litigate liability and damages before paying benefits on a claim." *See Accardo v. America First Lloyds Ins. Co.*, 2012 WL 1576022, at *4—5 (S.D.Tex. 2013) *relying on Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 880 (5th Cir. 2004).

41

Jackson believes that this is just such a case, as evidenced by his motion for summary judgment. Further, Jackson's claim that AAA's failure to tender the $20,000.00 offer amounts to a breach of contract is independent of any judicial determination of coverage. While Relator apparently would like to contest the validity of that claim, arguing their interpretation of the offer and whether there was a rejection and counter-offer based on purported evidence that is not even in the record below, the truth is that this is not an appeal from a motion for summary judgment where the merits of Jackson's claims are at issue. Jackson's breach of contract claim is a live claim that is not contingent on a judicial determination of coverage and discovery of that claim is not contingent on a judicial determination of coverage.

The first additional factor cited in *In re Allstate* was the insurer's showing that it would be required to disclose privileged information if the extra-contractual claims were not abated. *See In re Allstate Ins. Co.*, 232 S.W.3d 340, 344—345 (Tex.App.—Tyler 2007). Relator has not, however, been ordered to produce *any* privileged information for *any* claim.

In fact, Jackson has been attempting to discover what information Relator even *contends* is privileged since sending his request for a privilege log on July 15, 2015. Jackson presumes Relator's response to this will be that the agreed order did not compel them to produce a privilege log on the extra-contractual discovery until after the proceeding below was stayed by this Court.

That, however, does not excuse or explain their failure to produce a privilege log within fifteen (15) of the July 15, 2015 request, as required by Texas Rule of Civil Procedure 193.3, or prior to the hearing on Jackson's motion to compel almost eighty (80) days later where Relator's objections and assertions of privilege were set for hearing and Relator was obliged to prove the applicability of its asserted privileges. *See Jordan v. Court of Appeals*, 701 S.W.2d 644, 648—49 (Tex. 1985) ("The burden of proof to establish the existence of a privilege rests on the one asserting it."); *see also In re Park Cities Bank*, 409 S.W.3d 859, 868—69 (Tex.App.—Tyler 2013). Nor does it explain why Relator did not offer any privilege log or *any* other evidence that supports

43

its claim that *some* privileged material will be disclosed and thereby cause prejudice in an attempt to meet its burden in moving for severance and abatement. MR 66—MR80.

A party is not permitted to simply refuse to comply with its obligation to produce a privilege log under Rule 193.3, or its obligation to establish the applicability of its privileges under the jurisprudence of the Texas Supreme Court and this judicial district, or its obligation to meet its burden of proof in establishing its entitlement to severance and abatement, and then claim in seeking a mandamus that a trial judge, whose rulings have been reasoned and fair, has abused his discretion by not finding some amorphous prejudice which the party has refused at every single step in the proceeding to identify or substantiate. *See Allstate Ins. Co. v. Hunter*, 865 S.W.2d 189, 194 (Tex.App.—Corpus Christi 1993) (noting that the insurer failed to carry its burden of proof in requesting abatement where it provided "nothing more than generalized allegations of prejudice" and "no evidence to the trial court, in open court or for *in camera review*, of specific settlement offers *or the nature or contents of the allegedly privileged matters*,

44

so that the trial court could determine their prejudicial/beneficial potential.")

Which brings us to the second of the two additional factors this Court cited in *In re Allstate*, specifically the insured's non-opposition to abatement, which is conveniently omitted from consideration when Relator quotes the *Allstate* opinion in its petition. It should be clear, based on the above and the transcript from below, that Jackson is staunchly opposed to abatement in this case. Since the filing of this suit, Relator has made every attempt to unnecessarily delay the litigation of this matter and this Court need only look at the facts and the *actual* record of what has been filed, what has been said, and what has been done in this case to understand exactly what game Relator is playing here. Abatement is just one more means of delay and if permitted poses a substantial risk of prejudice to Jackson.

As the El Paso court of appeals wrote in upholding a trial court's denial of a UM/UIM insurer's request for abatement:

> [I]f discovery in the extracontractual case is
> stayed until the uninsured motorist claim is
> final, years may pass. Witnesses may die or

disappear, files may be lost, and memories will undoubtedly fade. Rather than minimizing pretrial efforts, abatement may require that discovery be conducted twice, as the carrier may successfully argue it initially prepared for trial only on [the insured's] contractual claim, not his extracontractual causes. Moreover, it is possible that the entire lawsuit, contractual and extracontractual, is subject to disposition before trial.... [And n]umerous pretrial rulings may effect both contractual and extracontractual claims.

*See Texas Farmers Ins. Co. v. Cooper*, 916 S.W.2d 698, 702 (Tex.App.—El Paso 1996).

VI. Relator Has Failed to Establish that it has No Clear and Adequate Remedy by Appeal in Failing to Establish that the Trial Court Abused its Discretion or in That it Will Lose Substantial Rights By Being Required to Conduct Discovery on Jackson's Claims

As noted above, an "abuse of discretion occurs only when the trial court's decision was without reference to guiding principles." *See Texas Farmers Ins. Co. v. Cooper*, 916 S.W.2d 698, 702—703 (Tex.App.—El Paso 1996). It is clear from a review of the record in this case that the trial court here did *not* abuse its discretion and

46

relied on the guiding principles cited in the briefing and arguments below, including the Texas Supreme Court's opinion in *Akin* and the El Paso Court of Appeals opinion in *In re State Farm*. The simple matter of it that, despite its protestations, contentions and the purported evidence offered here, Relator placed none of it in front of the trial court below and, thus, simply failed to meet its burden under existing case law.

Relator goes on, however, to claim that it has no adequate remedy by appeal for one reason only; that it will be required to engage in discovery on Jackson's remaining claims. This is exactly the same argument Relator espouses with respect to abatement and which this Court has held is insufficient to establish an abuse of discretion regarding abatement. *See In re Allstate Ins. Co.*, 232 S.W.3d 340, 343 (Tex.App.—Tyler 2007). Since that basis is insufficient to establish an abuse of discretion, it is also insufficient to establish an inadequate remedy on appeal. *See id.* Jackson incorporates herein by reference Section IV, *supra*, his arguments as to why Relator's claim that it will be required to engage in discovery that *might* be unnecessary does not establish

47

an inadequate remedy by appeal and, thus, establish an entitlement to mandamus relief.

### VII. Relator's Request to Vacate the November 6, 2015 Order on Jackson's Motion to Compel is Improper

The Prayer of Relator's Petition asks this Court to "vacate the November 6, 2015 order compelling AAA to respond to the discovery requests associated with or which only pertain to Jackson's extra-contractual claims." *See* Pet., pg. 41. Jackson presumes that the order referenced is the agreed order which Relator requested the trial court sign, *after* the trial court signed Jackson's proposed order, both of which memorialized the trial court's *prior* ruling on the motion to compel at the October 1, 2015 hearing.

Jackson cannot find any briefing in the Petition where Relator has made a showing that the trial court abused its discretion in its ruling on Jackson's motion to compel and that it is entitled to the vacation of the agreed order, or the proposed order, or the trial court's October 1, 2015 ruling. Relator did not contest that it was required to respond to *all* of the discovery propounded

48

upon it. MR176—177. The only question was one of timing. MR176—177. The trial court's October 1, 2015 ruling and subsequent orders are expressly tailored to work in conjunction with any subsequent severance, abatement or bifurcation. MR 176—MR 177. Relator's attempt to vacate that order, which does not compel them to respond *if* severance and abatement were required, can only be an attempt to force Jackson to re-litigate discovery disputes that have already been briefed, argued and decided by the trial court, to cause yet another delay and the unnecessary expense of time and effort by Jackson's counsel and, thus, is improper.

## V. CONCLUSION & PRAYER

Jackson has, since the inception of this suit, sought to accommodate Relator. Jackson's efforts are maligned by Relator here, accusing him of engaging in "procedural machinations," of being "delusional," and misrepresenting his conduct and his statements below. *See* Mtn for Emergency Relief, pg. 4; *see* Pet., pg. 9—11.

49

Far more important, however, is that the trial court provided Relator with ample opportunities to offer its evidence and meet its burdens. On October 1, 2015, the trial court did not overrule Relator's claims of privilege for its failure to comply with Rule 193.3 or offer any evidence to substantiate its claims of privilege, as it was well within its rights to do. Nor did the trial court order that Relator respond to extra-contractual discovery prior to being afforded forty-five (45) days to submit its motion for severance and abatement, along with any and all evidence Relator deemed material and appropriate to meet its burden. Relator does the trial court's efforts here grave disservice by claiming that it did not rule on Jackson's motion to compel until November 6, 2015, and thus claiming prejudice because the court "retroactively" ruled on the motion giving them ten days to respond, despite the Relator's own acknowledgments that its claims are not true; by claiming that the trial court ordered them to produce discovery that "clearly" goes beyond the scope of discovery, even though the requests are those that Relator itself agreed are discoverable in the underlying claim; and, not least of all, by claiming and implying that the

arguments Relator makes here and the evidence it submits are those which it presented to the trial court below in conjunction with its motion to sever and abate, when its arguments here are largely new and not one piece of evidence was offered by Relator to meet its burden. Relator failed to meet its burden and the necessary result was and is the denial of its motion to sever and abate. That the trial court did, as it was entitled to do under the Texas Supreme Court's opinion in *Liberty Nat. Fire Ins. Co. v. Akin*, and its progeny. The trial court, in following that guidance, did not abuse its discretion.

Therefore, Real Party in Interest Thomas Jackson respectfully requests that this Court deny Relator's Petition for Writ of Mandamus, lift the stay on the proceeding below, and for any and all other relief to which he may be entitled or which the Court deems proper.

Respectfully submitted,

Sloan, Bagley, Hatcher & Perry Law Firm
101 East Whaley Street
P.O. Drawer 2909
Longview, Texas 75606
Telephone: 903-757-7000
Telecopier: 903-757-7574

By: _/s/ Justin A. Smith_

GLENN A. PERRY
Texas Bar No. 15801500
E-mail: gap@sloanfirm.com
JUSTIN A. SMITH
Texas Bar No. 24068415
E-mail: jsmith@sloanfirm.com

**ATTORNEYS FOR REAL PARTY IN INTEREST – THOMAS JACKSON**

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to Rule 9.5, Texas Rules of Appellate Procedure, that a true and correct copy of the foregoing brief was served upon the following counsel electronically, through the electronic filing manager, and via certified mail, return receipt requested, on this the 2nd day of December, 2015:

Gregory R. Ave
Jay R. Harris
Walters, Balido & Crain, LLP
Meadow Park Tower, Suite 1500
10440 North Central Expressway
Dallas, Texas 75231
*Appellate Counsel for Relator*

Carlos Balido
Walters, Balido & Crain, LLP
Meadow Park Tower, Suite 1500
10440 North Central Expressway
Dallas, Texas 75231
*Trial Counsel for Relator:*

The Honorable Judge David Brabham
Judge of the 188th Judicial District
Court of Gregg County, Texas
Gregg County Courthouse
101 E. Methvin St., Suite 408
Longview, Texas 75601

By:___*/s/ Justin A. Smith*_____
GLENN A. PERRY
Texas Bar No. 15801500
E-mail: gap@sloanfirm.com
JUSTIN A. SMITH
Texas Bar No. 24068415
E-mail: jsmith@sloanfirm.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), the undersigned certified that this petition complies with the type-volume limitations of Texas Rule of Appellate Procedure 9.4(i)(2)(B). Exclusive of the exempt portions identified by Texas Rule of Appellate Procedure 9.4(i)(1), this response contains <u>9,647</u> including footnotes, headings, and quotations. In providing this word-count, the undersigned is relying on the word count generated by the computer program used to prepare the brief.

This brief has been prepared in proportionally spaced, 14-point text, and in Century font, using the computer program known as Microsoft Word (2012 version).

Acknowledged: December 2, 2015

By: */s/ Justin A. Smith*
JUSTIN A. SMITH

## TABLE OF CONTENTS TO REAL PARTY IN INTEREST'S APPENDIX

| Description | Tab | MR No. |
|---|---|---|
| Affidavit of Justin Smith | 1 | |
| Reporter's Record – Transcript of October 1, 2015 Hearing | 2 | MR139 - MR182 |
| Reporter's Record – Transcript of November 6, 2015 Hearing | 3 | MR 183 – MR 216 |
| Plaintiff's Original Petition with Exhibit A - B | 4 | MR 217 – MR 226 |
| Defendant's Original Answer | 5 | MR 227 – MR 228 |
| Plaintiff's First Amended Petition | 6 | MR 229 – MR 235 |
| Plaintiff's Motion to Compel Discovery with Exhibits A - D | 7 | MR 236 – MR 245 |
| Notice of Hearing on Plaintiff's Motion to Compel | 8 | MR 246 |
| Plaintiff's Response to Defendant's Emergency Motion to Reset Hearing with Exhibit A -C | 9 | MR 247 – MR 269 |
| Plaintiff's Proposed Order on Plaintiff's Motion to Compel | 10 | MR 270 – MR 271 |

# APPENDIX TAB 1

# AFFIDAVIT OF JUSTIN SMITH

**STATE OF TEXAS** §
§
**COUNTY OF GREGG** §

Before me, the undersigned notary, on this day personally appeared Justin Smith, the affiant, a person whose identity is known to me. After I administered an oath to affiant, he testified:

My name is Justin Smith. I am over the age of 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

I am an attorney licensed to practice law in the State of Texas and admitted to practice in the Fifth Circuit United States Court of Appeals, the United States District Courts for the Northern, Eastern and Southern Districts of the State of Texas, and the United States Court of Federal Claims. I and my firm are the attorneys of record for Thomas Jackson in Cause Number 2014-1365-A, styled *Thomas Jackson v. AAA Texas County Mutual Insurance Company*, pending in the 188th District Court for Gregg County, Texas. As part of my representation of Mr. Jackson, I have been personally involved in the preparation of motions and other filings in the underlying matter, have attended the hearings in this matter, and have reviewed the file.

Attached to my affidavit, and incorporated into the brief and appendix of Mr. Jackson's response to AAA Texas County Mutual Insurance Company's Petition for Writ of Mandamus, are true and correct copies of documents relating to the underlying suit. Appendix Tab 2 is a true and correct copy of the Reporter's Record transcribing the hearing on Mr. Jackson's motion to compel discovery in the underlying suit and that took place on October 1, 2015. The transcript identified as Appendix Tab 2 and marked as Mandamus Record ("MR") 139—182 was prepared

and provided to my office by the official court reporter for the 188th District Court of Gregg County, Texas, and was ordered by me to complete the record. The reporter's certification of the transcript is located at MR 182. Similarly, identified as Appendix Tab 3, MR 183—MR 216, is a true and correct copy of the Reporter's Record transcribing the hearing on AAA Texas County Mutual Insurance Company's ("AAA") motion to sever and abate and special exceptions in the underlying cause and which took place on November 6, 2015. The transcript identified as Appendix Tab 3 and MR 183—MR 216 was ordered by my office to complete the record and was prepared and provided to me by the official court reporter for the 188th District Court of Gregg County, Texas, whose certification is located at MR 216.

Appendix Tab 4, MR 217—MR 226, is a true and correct file marked copy of Thomas Jackson's Original Petition, along with Exhibits A and B, filed in the underlying cause. Exhibit A to Mr. Jackson's Original Petition is a letter sent by AAA to my firm on April 28, 2014, which appears as MR 1, attached to Mr. Balido's affidavit filed in conjunction with AAA's Petition for Writ of Mandamus. Exhibit B to Mr. Jackson's Original Petition is a letter sent by my firm to AAA on May 2, 2014, which appears as MR 2—MR 3, attached to Mr. Balido's affidavit filed in conjunction with AAA's Petition for Writ of Mandamus. Exhibit A and Exhibit B to Mr. Jackson's Original Petition, App. Tab 4 and marked MR 224—MR 226, are true and correct copies of these letters filed with below and reflect the only filing of these letters in the underlying matter. The letters marked as MR 1 and MR 2—MR 3 are not true and correct copies of the letters filed with the trial court, as evidenced by the absence of the marking of the exhibits which accompanied their filing with the Original Petition. Marked as App. Tab 5, MR 227—MR 228 is a true and correct copy of Defendant, AAA's, Original Answer filed in the underlying

matter. Marked as App. Tab 6, MR 229—MR 235 is a true and correct copy of Mr. Jackson's First Amended Petition in the underlying matter.

Marked as App. Tab 7, MR 236—MR 245 is a true and correct copy of Mr. Jackson's Motion to Compel, filed on January 16, 2015, along with true and correct copies of the agreements entered pursuant to Texas Rule of Civil Procedure 11 in which Mr. Jackson extended AAA's deadline to respond to discovery, marked as Exhibit A through Exhibit D and filed with Mr. Jackson's Motion to Compel on January 16, 2015. Marked as App. Tab 8, MR 246, is a true and correct copy of Mr. Jackson's Notice of Hearing on Plaintiff's Motion to Compel, filed in the underlying matter.

Marked as App, Tab 9, MR 247—MR 269, is a true and correct copy of Mr. Jackson's Response to Defendant AAA's Emergency Motion to Reset the Hearing on Plaintiff's Motion to Compel, filed in the underlying matter on October 1, 2015, along with a true and correct copy of the letter sent by my office on July 15, 2015 to AAA's counsel seeking to meet and confer on discovery and requesting a privilege log and enclosing a copy of the motion to compel, filed as Exhibit A, a true and correct copy of the Notice of Hearing for the motion to compel file September 10, 2015 and the fax confirmation sheet confirming service on AAA's counsel, filed as Exhibit B, and the letters prepared pursuant to Rule 11 extending discovery, filed as Exhibit C.

Marked as App. Tab 10, MR 270—MR 271, is a true and correct copy of Plaintiff's Proposed Order on his Motion to Compel discovery, which was filed by my office on October 6, 2015, and signed by the trial court on October 26, 2015. Prior to the filing of Plaintiff's Proposed Order, App. Tab 10, on October 6, 2015, I prepared a draft agreed order on the motion to compel and sent it, via email, to Nancy Raine, an attorney with Walters, Balido and Craine and counsel

of record for AAA in the underlying cause. Ms. Raine sent to me a copy of her proposed changes to the draft via email on October 5, 2015, following which Ms. Raine and I had telephone conference to discuss the order memorializing the trial court's ruling at the October 1, 2015 hearing. During that conference, Ms. Raine and I discussed and reached an agreement regarding which discovery requests related to which category of claims. Specifically, the parties reached an agreement as to which requests would be within the scope of discovery with respect to the underlying wreck, third party fault, underinsured status, and coverage, and which requests would only be within the scope of discovery for the remaining and extra-contractual claims. The only disagreement Ms. Raine and I had at the completion of our conference on October 5 or October 6, 2015 was whether the trial court had overruled AAA's objections to Mr. Jackson's discovery. Consequently, I filed the Proposed Order, marked as App. Tab 10, which reflected the parties' agreement with respect to the scope of discovery and the nature of the claims to which the requests related and which overruled AAA's objections consistent with the trial court's October 1, 2015 ruling on the motion.

On November 13, 2015, Mr. Jackson filed his Motion for Partial Summary Judgment, on the grounds that there is no genuine issue of material fact that Ms. Tompkin's was negligent, that her negligence caused the wreck which forms the basis of the underlying suit, that there is no genuine issue of material fact that the wreck proximately caused Mr. Jackson to pay or incur $47,131.05 in liquidated past medical expenses. Mr. Jackson's motion for summary judgment also seeks, on the basis of the aforementioned findings, a declaration of Ms. Tompkin's liability and underinsured status, given her minimum limits automotive liability policy.

Filed in conjunction with AAA's Petition for Writ of Mandamus is an affidavit by Mr. Balido, attaching documents which he attests are "[t]rue and correct copies of the material

documents filed with the trial court and which are central to the issues...." Attached to Mr. Balido's affidavit is a document marked MR 4—MR 5 which was not filed in the underlying cause during my representation of Mr. Jackson. Further, the document marked as MR 4—MR 5 and attached to Mr. Balidos' affidavit: (1) is not stamped or marked as having been filed with the trial court in the underlying matter; (2) is not attached to another document which was filed with the trial court in the underlying matter; and (3) not stamped or marked as an exhibit or attachment to any other document which was filed with the trial court in the underlying matter.

After seeing Mr. Balido's affidavit and the document attached thereto as MR 4—MR 5, I again reviewed the documents filed in the underlying matter, including each exhibits and attachment to those filings, beginning with the Original Petition filed on July 16, 2015 and ending with notice of this proceeding, filed on November 17, 2015, in order to confirm that MR 4—MR 5 had not been filed in the underlying action at any point in time. I also reviewed the Register of Actions maintained by Gregg County, Texas and which reflects the filings, hearings, and orders for the underlying cause. In my accounting and review of the documents that have been filed in the trial court below, I could not locate the document attached to Mr. Balido's affidavit as MR 4—MR 5.

FURTHER, THE AFFIANT SAYETH NOT.

_____
JUSTIN A. SMITH

SWORN TO AND SUBSCRIBED before me by JUSTIN A. SMITH on December 2, 2015.



Notary Public in and for
the State of Texas

# APPENDIX TAB 2

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUMES
TRIAL COURT CAUSE NO. 2014-1365-A

THOMAS JACKSON ) IN THE DISTRICT COURT
)
vs. ) GREGG COUNTY, TEXAS
)
AAA TEXAS COUNTY MUTUAL )
INSURANCE COMPANY )188TH JUDICIAL DISTRICT

---

PLAINTIFF'S MOTION TO COMPEL

---

On the 1st day of October, 2015, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable David Brabham, Judge Presiding, held in Longview, Gregg County, Texas.

Proceedings reported by computerized stenotype machine.

**APPEARANCES**

MR. JUSTIN SMITH
SBOT NO. 24068415
SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM
101 East Whaley Street
Longview, Texas 75601
Telephone: 903.757.7000


REPRESENTING THE PLAINTIFF



MS. NANCY RAINE
SBOT NO. 00786183
WALTERS, BALIDO & CRAIN, L.L.P.
Meadow Park Tower, Suite 1500
10440 North Central Expressway
Dallas, Texas 75231
Telephone: 214.749.4805


REPRESENTING THE DEFENDANT


REPORTER'S NOTE

Uh-huh = Yes - Affirmative response
Huh-uh = No - Negative response
Quotation marks are used for clarity and do not necessarily
indicate a direct quote.

GRELYN FREEMAN, TEXAS CSR 8179
188TH DISTRICT COURT
101 E. METHVIN, SUITE 408
LONGVIEW, TEXAS 75601  903.237.2688

**MR 140**

## CHRONOLOGICAL INDEX

### VOLUME 1

### PLAINTIFF'S MOTION TO COMPEL

October 1, 2015

|                                    | PAGE | VOL. |
|------------------------------------|------|------|
| PLAINTIFF'S MOTION TO COMPEL       |      |      |
| Mr. Smith.........................4 | 1    |
| DEFENDANT'S MOTION FOR CONTINUANCE |      |      |
| Ms. Raine........................15 | 1    |
| Mr. Smith........................18 | 1    |
| Court's ruling...................25 | 1    |
| PLAINTIFF'S MOTION TO COMPEL       |      |      |
| Ms. Raine........................25 | 1    |
| Mr. Smith........................33 | 1    |
| Ms. Raine........................37 | 1    |
| Court's ruling...................40 | 1    |
| Reporter's certificate...........44 | 1    |

GRELYN FREEMAN, TEXAS CSR 8179
188TH DISTRICT COURT
101 E. METHVIN, SUITE 408
LONGVIEW, TEXAS 75601  903.237.2688

MR 141

# PROCEEDINGS

October 1, 2015

(Open court, parties present)

THE COURT: All right. This is a civil case. This is 2014-1365-A. This case is styled Thomas Jackson versus AAA Texas County Mutual Insurance Company. The matter before the Court is a Plaintiff's Motion to Compel. Justin Smith is present representing the Plaintiff.

Counsel, would you identify who you are, please?

MS. RAINE: Yes, Your Honor. My name Nancy Raine. My last name is R-A-I-N-E, and I represent the Defendant, AAA Texas.

THE COURT: All right. Ms. Nancy Raine is present for the Defendant.

Both sides ready on the matter before the Court?

MR. SMITH: Yes, Your Honor.

MS. RAINE: Yes, Your Honor.

THE COURT: Okay. Mr. Smith, it's your motion. You may proceed at this time.

MR. SMITH: Yes, Your Honor. Just kind of by way of preview to begin with. It is my motion, but on motions to compel, the law is I don't have the burden of proof to prove that the objections are improper. The burden

is on the Defendant to prove that their objections are proper.

Now, this case involves -- it's a UM/UIM case. Mr. Jackson was leaving work at a church and driving down Pliler Precise Road on June 12th, 2013. He was driving behind another vehicle, and they came up to the intersection of Pliler Precise Road and Judson Road and there's a traffic stoplight there.

The vehicle in front of Mr. Jackson, and Mr. Jackson, stopped at the red light. The light turned green, the car in front of him went. Mr. Jackson proceeded into the intersection on a green light. And a woman, Patricia Tompkins, who was driving north on Judson approaching that red light, blew through the red light and T-boned Mr. Jackson.

He wound up in the ambulance and taken to the hospital. And he had lost consciousness, was disoriented, largely due to, I guess, the adrenaline causing his blood sugar to drop, given his diabetes. And he proceeded a course of treatment.

In the time since the wreck, Mr. Jackson has incurred approximately $47,000 in past medical expenses. And we have some letters that have been exchanged in discovery in this case regarding his necessary future medical care.

Mr. Jackson filed a claim with his own insurance company for the PIP benefits, and that was paid, $5,000. He filed a claim against Patricia Tompkins' insurance company. She had a minimum policy, $30,000 limits policy. And on consent of his UM/UIM carrier, Patricia Tompkins' insurer tendered the entirety of their underlying insurance policy. Then Mr. Jackson, pursuant to his policy, filed a claim on his UM/UIM for the remainder of his damages.

And this case is a little bit unusual in that -- from the bad faith cases that are cited in Defendant's motion or their response to our Motion to Compel. When Mr. Jackson presented his claim, the insurance company, like the insurance company has a requirement to do, began its investigation and made a determination as to damages and offered him $20,000. And Mr. Jackson's response was, "I think my damages are more than that, but if this is the undisputed sum of my injury, tender the undisputed sum to me and then we'll go about litigating the remainder." His UM/UIM carrier refused and wouldn't tender any partial payment absent a full and complete release of the entirety of his claims. This litigation ensued.

On October, I believe, the 16th of 2014, we served our interrogatories, our request for admissions and our request for production on the Defendant. Their

responses were due on November 16th of 2014. On November 17th of 2014 we gave them an extension of time to respond to discovery and didn't push a waiver of their objections. We did it again and again and again. We ultimately gave them four extensions on their deadline to respond to and object to our discovery. We ultimately got that discovery on December 23rd, 2014, and it's sorely deficient.

THE COURT: 2015 or '14?

MR. SMITH: 2014.

THE COURT: Okay. Thank you.

MR. SMITH: Over two months after we had served the initial request.

THE COURT: Okay.

MR. SMITH: A number of things have taken place in the intervening months since we received the request. Defendants expressed an interest in doing early mediation. Ultimately, that was held on September 29th, and it was unsuccessful.

When we turn to the objections that Defendants have lodged in their responses to Plaintiff's discovery request, they're virtually the same set of objections over and over and over again, regardless of what the nature of the interrogatory or the request for production is.

And essentially there are two kinds of discovery that we're trying to conduct in our request for production, our request for admissions, and our interrogatories. One is on our underlying breach of contract and declaratory judgment claim, because part of the policy requires that you prove that the third party was negligent and that she was an underinsured or an uninsured motorist.

So we've sent interrogatories, for example, that have requested, if you contend that Mr. Jackson is at fault for the collision that took place, give us the general factual basis for that contention; if you contend that there were any other causes or third parties who are at fault other than Patricia Tompkins, give us the general factual basis for that contention, as Rule 197.1 allows us to do. Those requests are not responded to, and they're objected to.

There are requests for underlying information like photographs, diagrams. Not just photographs of the vehicle, but if photographs have been taken of the scene during their investigation of the underlying matter, we want those photographs. There's a corresponding interrogatory that goes to the authentication of those documents. Provide us the name of the person who took the photographs you produced along with the date that he took those photographs.

All of those requests relate to the underlying matter. They're objected to on largely the same grounds as every other request, which is, you're not allowed to seek discovery of bad faith claims in your action. Well, this case has both breach of contract and declaratory judgment claims along with bad faith claims and extra-contractual claims for the Defendant's refusal to tender any partial payment of any undisputed sum that's due to Mr. Jackson.

Now, there is no question that the discovery that is targeted to the underlying incident, the breach of contract, declaratory judgment action to prove that the third party is at fault and that she's an underinsured driver, there's no question that that discovery is permissible in this action.

Defendant's objections are kind of -- a little bit of putting the cart before the horse. What they ultimately want to do is they want to sever off the bad faith extra-contractual claims and abate them. Now, they filed a motion regarding that previously, and when we had the discussion regarding having an early mediation, both Plaintiff's Motion to Compel, which we were working on at the time, and their motion to sever and abate were kind of taken off the table so we would have an opportunity to mediate and not incur any additional and unnecessary

litigation expenses.

But with regard to those bad faith claims, those claims are still alive here. And essentially what their objection is, and they cite to a line of cases that have ordered severance and abatement when you had breach of contract claims and bad faith claims brought together in the same lawsuit against a UM/UIM carrier. Their argument is, is that we can't do both at the same time. If you are allowed to admit into evidence underlying investigative materials, which are discoverable and relevant to your bad faith claims or determination of whether or not we are likely liable for the underlying loss and the extent to which we are likely liable for the underlying loss, those prejudice their right to stand on their refusal to acknowledge the claim and require the Plaintiff to establish that the third party is at fault and that she was an underinsured or uninsured motorist.

The difference between those cases and this case is that in all the cases that Defendants cite to, all the bad faith claims relate to the sufficiency of the settlement offer. Basically, if you were to take it and apply it to the facts of this case, you know, they made a $20,000 offer. In these other cases, the complaint is, well, you should have offered me 60 or 100 or 100,000 or whatever, you know, the damages would be.

GRELYN FREEMAN, TEXAS CSR 8179
188TH DISTRICT COURT
101 E. METHVIN, SUITE 408
LONGVIEW, TEXAS 75601 903.237.2688

That's not the nature of Plaintiff's bad faith claims in this case. The nature of Plaintiff's bad faith claims in this case is that you have done an investigation, you have obviously made a determination that he is due some amount under the policy up to $20,000 because that's what you offered. And when Plaintiff requested that you tender the partial payment of the undisputed sum, you refused to do so and essentially tried to strong-arm him in withholding undisputed sums that he's entitled to in an attempt to kind of strong-arm him into signing a complete and final release of all his claims.

THE COURT: Was the offer of 20 -- well, it's not an offer, but was the $20,000, was that before he had counsel or after he had counsel?

MR. SMITH: After.

THE COURT: Okay.

MR. SMITH: Now, Mr. Hatcher and Mr. Robertson were the ones who were litigating this case at that time.

THE COURT: Okay.

MR. SMITH: But my understanding is, and based on correspondence that I've seen, is that that occurred after he had counsel.

THE COURT: And tell me again, Mr. Smith, your position is how was the $20,000 -- tell me again the

context under which that came up.

MR. SMITH: So, after the third party settlement?

THE COURT: Yes.

MR. SMITH: And I guess to kind of -- there was negotiation with a third party when it became clear that they were going to tender up their policy. We sent the consent to settle --

THE COURT: I got that part.

MR. SMITH: -- to the UM/UIM. They consent to the settlement. We got the third party money.

THE COURT: Got that.

MR. SMITH: We then submitted the claim for the remainder to the UM/UIM.

THE COURT: Right.

MR. SMITH: Once that claim was submitted -- and I believe we were the ones who submitted the claim on Mr. Jackson's behalf.

THE COURT: Okay.

MR. SMITH: After that claim was submitted, we presume that an investigation was done because the insurance code requires it, and they ultimately came back and said, you know, "We're going to offer you $20,000."

When we got that offer, Mr. Hatcher sent them a letter saying, if this is the undisputed sum, or if

MR 150

there's an undisputed sum to which Mr. Jackson is entitled, then tender that money and we will litigate the remainder.

THE COURT: Okay.

MR. SMITH: What AAA Insurance Company's response was was nothing. They just refused to tender the partial payment, or any partial payment for that matter.

THE COURT: Okay.

MR. SMITH: And so our position is, is that at this time, based on those bad faith claims, those bad faith claims are proper. But even if they're not -- even if there is some sort of relief that's required in order to prevent any kind of prejudice to the insurance company, aside from privilege, those are all evidentiary issues not discovery issues.

And surely severance and abatement is one avenue that the Court, in its discretion, could use to ameliorate that prejudice. It's certainly not the only medium the Court could use. For example, the Court could use a bifurcation and bifurcate the underlying dec action and breach of contract from the bad faith claims. And that way we wouldn't have to have two separate lawsuits, and we could try it in two stages of the same proceeding.

If that's -- and, again, we don't contend that that's necessary in this case based on the posture of the bad faith claims. But if it is, we would want a

bifurcation rather than severance and abatement. And it would be far more efficient for us to go through and conduct the discovery that we need to conduct, and we would have to do that if this is a bifurcation issue.

So that is, in sum, the essence of their objections. It's essentially the same thing over and over and over again, y'all aren't allowed to conduct discovery of bad faith claims even if the discovery doesn't have anything to do with bad faith claims and relates to the underlying incident. And because you're not allowed to try those in the same proceeding, you're not allowed to do discovery of them in the same proceeding.

Now, one other issue that's kind of on top of this is that we had sent our meet and confer letter attaching this Motion to Compel on July 15th, I believe it's dated, of 2015. In that meet and confer letter we had asked for a conference to satisfy the Rules of Civil Procedure. But the other thing that we had asked for, because replete throughout these objections are assertions of privilege, attorney-client privilege, work product privilege, the party communication privilege, and a witness statement privilege, which is not a privilege that even exists. Witness statements are expressly discoverable under 192.3.

We've asked for a privilege log back on July 15th of 2015 so that we could get evidence and create a

position with regard to what is and what is not privileged that they have asserted is protected. And to date we haven't received that privilege log. So in addition to striking the objections -- and one thing that we would request in the alternative is that an order compelling them to produce a privilege log so we can take those next steps in determining whether or not those privileges are appropriate or proper.

THE COURT: Thank you, Mr. Smith.

Ms. Raine?

MS. RAINE: Thank you, Your Honor.

Your Honor, I apologize, I did not jump up a little sooner. Yesterday the Defendant filed an Emergency Motion for Continuance on Plaintiff's Motion to Compel. Did the Court receive that motion, Your Honor?

THE COURT: I did, yes.

MS. RAINE: I could argue that at this time, Your Honor, or ask the Court if you've made a ruling on the Motion for Continuance.

THE COURT: Well, I haven't. So in fairness to you, you can tell me what that position is on continuing, I'll get their response, I can rule on that, and then I guess we'll get back to the merits if I overrule your continuance. But tell me why you want the continuance on this.

MS. RAINE: Your Honor, Plaintiff's filed their Motion to Compel, as Mr. Smith stated, back in July. We were not notified of the hearing date. Mediation was set, as Mr. Smith stated, two days ago on September 29th. That was the first we learned that there was a hearing date set for today. It was from the mediator.

THE COURT: And when was that, ma'am? I'm sorry.

MS. RAINE: September 29th, two days ago.

THE COURT: Two days. Okay.

MS. RAINE: The day before yesterday. We mediated with Mr. Davis, and the mediation did not go through.

And Mr. Smith is correct. We have pending motions to compel, we have a pending motion to sever and abate the extra-contractual claims in this case. And informally or by, you know, mutual agreement of a great legal thought -- plot here, we agreed that we would table those motions, not set them for hearing to interrupt the Court's time and try to proceed to mediation, try to get the case resolved.

THE COURT: Right.

MS. RAINE: So when the case did not resolve, the next course of action would certainly be, let's get all those pending motions out there set for a hearing, which we

were prepared to do. However, we were unaware that Plaintiff's counsel had already set their Motion to Compel hearing for today. Had we realized that, we would have set our motion to sever and abate the extra-contractual claims at the same time because we believe those two things are interrelated.

Further, our adjuster had a health emergency. He was not able to be physically present at mediation. He had a pulmonary embolism. And that was last week, and he was hospitalized. He's not able to travel, and he's not able to work. But he can certainly participate by telephone, which is what he did at mediation.

So I don't want the Court to think that we attended mediation without proper settlement authority or anyone present. We did not have anyone physically present from the insurance company, but we certainly were mediating in good faith and were present in good faith to mediate that matter.

Your Honor, simply that, we just did not receive notification. And there's a lot of, you know, copies of faxes and e-mails and all that, and I don't -- you know, it's -- I believe it was a mistake, I believe a clerical mistake. I am not saying Plaintiff's counsel didn't send that to us. I didn't have a copy of the letter they sent to us. I believe it was a clerical, electronic,

some sort of, you know, modern-day error in that we did not receive notice of today's hearing but for being told by the mediator two days ago.

THE COURT: Well, let me hear their response on that, and we'll see where we are.

Mr. Smith, on the motion to continue the hearing today. I should have got to that first, and I do apologize. Mr. Smith?

MS. RAINE: That was my fault. I'm sorry, Your Honor.

MR. SMITH: Sure. I think the Court is well aware that our standard practice is to try to work out any kind of issues. You know, it's understandable, sometimes these things occur. Unexpected things, sometimes clerical issues occur. That does happen.

Our concern was and is and remains that this is not an isolated occurrence in this case. You know, we talked about when this discovery was sent originally, and we had to go through four different extensions of time. Some of those occurred after the deadline had already passed.

And then we have this -- as Ms. Raines (sic) discussed, you know, we had this agreement that we were going to do an early mediation to avoid these kind of costs and things. That was in April of this year.

THE COURT: The mediation?

MR. SMITH: No, the discussion that we were going to have an early mediation. We worked for two months to get an agreeable mediation date. We coordinated with the mediator, Dick Davis, who we ultimately were able to get an agreement on. We got 14 dates to begin with in June and July. None of those dates worked. We got another 13 or 14 dates for August and September at their request. And what they picked out of, you know, all the dates that were available in a four-month window of time was the very last available date for mediation, September 29th.

This case is set for trial in February. An early mediation should not take six months to occur. And when you have a four-month period of time with over two dozen available dates, it shouldn't take until the very last one to have mediation occur.

And when we got that available date from them on June 24th of this year, it became pretty apparent to us that we could not rely upon any kind of diligence on the part of the Defendant to get this case moving. That was the impetus for us to finish our Motion to Compel, prepare a letter to meet and confer, and send it to them on July 15th, 2015.

One of the things that they attached to their responses is that -- after that was sent I got an e-mail to call them to confer on that. I did that three times. I

called three times -- on July 30th, on July 31st, and again on August 3rd -- to confer, and I never got a response back.

Set the motion -- or, no, I didn't set the motion -- I filed the motion without setting it for a hearing in the hope that if I filed it without setting it for a hearing, maybe I would get a call back and they would actually confer on the substance of our discovery issues and we wouldn't have to be there -- or be here. On August 10th I filed it. I heard nothing.

On September 10th we filed the notice of hearing. We did it via the e-filing service, which, as the Court knows, that service is supposed to serve all parties electronically when the filing occurs.

Now, I understand it's technology and that technological issues can happen. So maybe there was a flub on the e-filing service. I don't have any control over that. I don't know. I presume that if they say, "We didn't get the e-filing notice," they didn't get it. But we also served them by facsimile. We did it two different ways. We served them by two different methods. I have the fax confirmation saying that that went through and that it went through on September 10th of 2015.

THE COURT: Okay. Has -- Ms. Raine, have you been the only attorney in the case or have there been other attorneys?

MS. RAINE: There are other attorneys, Your Honor. I'm an associate at the office. One of our partners attended mediation the day before yesterday, Ashley Whatley. And Carlos Balido is the lead attorney on this case.

THE COURT: Okay. Okay. Of course, I guess you -- how does this work? Do you direct these things to lead counsel or just to the firm? How does this work when you have multiple attorneys? I don't know how that works.

MR. SMITH: I can show you -- I mean, on the e-filing service, it depends on who's got the account. And so for like for us, my e-filing account has me and my paralegal and my secretary on it.

THE COURT: Right.

MR. SMITH: If it's another attorney on the case, then it will go to him, the paralegal, secretary, and probably me.

THE COURT: Okay.

MR. SMITH: On the facsimile that we sent, the e-filing -- not the e-filing, facsimile -- I don't know who they've got listed as their service contacts on that.

THE COURT: Okay.

MR. SMITH: But with respect to the fax that we sent, I've got a copy of it here. I attached as Exhibit B to our response to their emergency motion.

THE COURT: All right.

MR. SMITH: Do you have a copy? Or I can provide you the one that I have.

THE COURT: That's Exhibit B?

MR. SMITH: Exhibit B.

THE COURT: Okay. That's -- that's your --

MR. SMITH: If I may approach, Judge? I'll just give you my copy.

THE COURT: Yeah, let me look at that.

MR. SMITH: It's not to the Motion to Compel.

THE COURT: Okay. Thank you.

MR. SMITH: That, I believe, is addressed to Carlos Balido, the lead counsel, who signs all their pleadings in this case.

THE COURT: Right. Okay.

MR. SMITH: And also the clerk of this court.

THE COURT: Ms. Raine, did y'all look in your file? Did y'all get this fax?

MS. RAINE: We did look in our file, Your Honor. We looked in our file, Copytrax files, the fax system, however the faxes come into our office. And, Your Honor, the only thing we could point out is, on the fax confirmation page, which we received from Plaintiff's counsel the day before yesterday, it notes that -- it does say something about "TX incomplete," and then it says "transaction okay," and it says "error." And I don't

know -- I don't know what all that means.

THE COURT: Right.

MR. SMITH: I can tell the Court what that means.

THE COURT: All right.

MR. SMITH: On all the fax confirmations that go through, those entries are there. And I actually pulled an example of one, Judge, if I may?

THE COURT: Sure.

MR. SMITH: This is a fax confirmation sheet that was sent yesterday or the day before. You can see at the top there's the "TX incomplete."

THE COURT: Right.

MR. SMITH: And then down below the "error." What happens is that those entries are always there. I had to double-check this with my paralegal to make sure, but this is how it works. If there is an incomplete fax, the number will appear there. If it's a completed fax, the numbers will go through there if there's an error. You can see there on that entry, one of the numbers it went through to; and on the other one there's a number there that indicates there was an error in the fax. So it was not an incomplete fax or an error in the facsimile. Both those faxes went through both to the Court and to opposing counsel for the number that they've got listed.

THE COURT: All right.

MS. RAINE: And, Your Honor, just in response. The letter says -- the letter dated September 10th, 2015, says it was sent via e-filing and facsimile. When we contacted the Court to determine if a notice letter was sent -- we talked to somebody in your court, Your Honor -- and they let us -- they sent us a copy of the letter as well and said it had not been e-filed. So, we looked in our e-filing system as well and we didn't have it.

THE COURT: Well, you're saying that the notice of hearing letter dated September 10, you don't -- you don't think it was e-filed?

MS. RAINE: That is correct. That was not -- I believe that was not e-filed, and that was verified through the court services.

THE COURT: Mr. Smith, what say you on whether that was e-filed or not I guess is my next question?

MR. SMITH: I mean, there's a file-mark stamp on the top right-hand corner of the page.

THE COURT: Yeah, I see that. I wonder if it shows in my documents here. Let's see.

MS. RAINE: Your Honor, I don't want to misrepresent to the Court. I believe Plaintiff's counsel might have e-filed the letter to the Court, but it doesn't

reflect an e-file that went to Defense counsel. I did not want to dispute that Plaintiff's counsel e-filed the document with the Court.

THE COURT: Okay.

MS. RAINE: I believe that is how they filed it with the Court, it just did not get re-sent out via e-file to us.

THE COURT: Given all these issues, Counsel, I'm going to overrule the Motion for Continuance, and we're going to proceed with the Motion to Compel hearing. So you may respond at this time to the -- as I understand it, the burden is on you, Ms. Raine, to now show why your objections are appropriate. Do you agree with Mr. Smith on that?

MS. RAINE: That the burden is on me?

THE COURT: That's what he said.

MS. RAINE: Yes, sir.

THE COURT: Okay.

MS. RAINE: To that extent, yes, sir.

THE COURT: All right. You may proceed at this time then.

MS. RAINE: Thank you. Your Honor, this morning we filed Defendant's Response to Plaintiff's Motion to Compel. Did the Court receive a copy of our motion? If not, Your Honor, I have a --

THE COURT: I think -- let me -- I believe I

have.  Let's see here.  That came in -- let's see if e-file is at least going to do that for me.  Defendant's Response to Plaintiff's Motion to Compel?

MS. RAINE:  Yes, sir.

THE COURT:  I have that.

Mr. Smith, I'm going to let you get these back before I lose them.

MR. SMITH:  Yes, Your Honor.  Thank you.

MS. RAINE:  And, Your Honor, the late filing of the response goes to the lack of notice of hearing.

THE COURT:  I understand.

MS. RAINE:  That's why all that is there.  So I appreciate you giving us the opportunity to argue this.

Well, Plaintiff's counsel stole my metaphor because my metaphor was Plaintiff's counsel is putting the cart before the horse.  He's arguing bad faith claims, he's arguing extra-contractual claims.  And we're just not there yet.

Your Honor, this is a case against -- the Plaintiff is suing his insurance company for an underinsured motorist claim.  There is no contractual duty to pay any underinsured motorist claims until the Plaintiff has proven and received a signed judgment establishing negligence and the underinsured status of the -- of the other motorist, of the tort-feasor in this case.  Merely accepting a settlement

offer, or whatever, from the tort-feasor does not move this forward into a claim of underinsured benefits to the insurance company as such that would rise to the level of a breach of contract. There is no contractual duty for the insurance company to pay Mr. Jackson until there is a signed judgment. And that's established by the *Brainard v. Trinity Universal* case, Your Honor.

It is the cart before the horse in that the lawsuit that is before the Court is a breach of contract case. Now, there's a bunch of extra-contractual claims on top of it, breach of good faith and fair dealing, and DTPA, and deceptive practice act, protection act, and violations of the insurance code. None of those come into play until there's established there has been a breach of contract. And you don't get to the breach of contract until there has been a failure to pay an award of damages. So we are not there yet.

The primary purpose of underinsured insurance is compensatory. It's to protect against financial loss. There is no loss to Mr. Jackson until he recovers a signed judgment from the Court. Plaintiff's discovery responses -- or, excuse me, discovery requests and their request for production of 34, there's 22 that have to deal -- that deal with extra-contractual claims. Request for claim files, notes, training, computer programs, documents about

MR 165

settlement.

The interrogatories, again, they're listed in my response. The number that are, again, go to claim files, notes, training, employees evaluation, employee identification, refusal to pay, release and policies, none of that would go towards helping the Plaintiff prove their case of negligence and damages against the tort-feasor. All that is for the extra-contractual issues.

Your Honor, not having the Motion to Sever and Abate be able to be heard by the Court today, that is in a sense my argument and my response to the Court. The Court was -- and having a motion to reset this case on the Motion to Compel, we need for the Court to have all of those things before it to eliminate the need for us to come back here later on on our Motion to Sever and Abate the extra-contractual claims.

Plaintiff's discovery requests to those items that are extra-contractual, the files, the notes, the training, the identification of everybody involved, is not relevant and is inappropriate because it does not prove or advance Plaintiff's case towards proving liability and damages.

The privileged materials that he seeks about evaluations and investigations, the settlement negotiations, are going to be inadmissible to this jury to establish

liability and damages. Plaintiff wants to argue and litigate this $20,000 settlement offer. He is going to introduce all kinds -- and interject all kinds of insurance issues in front of the jury.

Now, granted, you get that anyway because the only defendant in the case is the insurance company. But we're going to have -- we would have to defend ourselves about settlement negotiations about what's -- what was fair and reasonable, what was said and not said. And the jury is going to hear there's $20,000 on the table. Whether there was or wasn't, whether there should or shouldn't be, that's what the jury is going to hear. And that's prejudicial, Your Honor.

And forcing the Defendant to have to reply to those things in discovery at this time is unfair, creates a burden, because Plaintiff's counsel, frankly, may never get there. He's got to prove what his damages are first before he ever gets to any sort of underinsured motorist coverage.

Again, the purpose of underinsured motorist coverage is compensatory, is to make sure that there -- the insured does not incur a financial loss. There's no loss to Mr. Jackson right now. There's merely claims, purported claims, purported money owed. We are not there yet.

So, Your Honor, we're asking that the Court not -- not -- as enumerated in Defendant's response, I think

we clearly set out which of those issues are extra-contractual, which are not appropriate, which are privileged, which do not relate to the underlying basis of the payment to the breach of contract case.

We will go through -- I personally will go through with Plaintiff's counsel and work through any of those outstanding issues that he feels can be -- that should be produced in regards to his claim. But, Your Honor, it's just not proper to -- to develop -- to allow Plaintiff's counsel to develop the extra-contractual issues when we are not there. We are not there at all.

*THE COURT:* So let me be sure I understand your position. You do agree that there are some of these objections you need to address, but it's just -- you just -- because you just got notice of the hearing you haven't had -- realized the hearing, you haven't had a chance to do that? Is that -- not the extra-contractual matters, but the other matters?

*MS. RAINE:* There are a few in here, Your Honor, in looking at this late last night. And I will not bore the Court with my other tired -- because you would not believe the excuse we would have. But we did not have computer access in our office until 2 o'clock yesterday afternoon. We had a transformer blow. We were in the office at 8 o'clock in the morning and stood at an empty

desk until 2 o'clock in the afternoon, which is -- I can't -- why my response is so late. So it didn't get done until very, very late. I'm out of breath. Oh, I've also not slept a lot, so I apologize if I'm out of breath. That's my point from that.

Yes. In going through my discovery, the discovery question by question. And, again, it was so long because I went through it question by question to make sure I was covering every issue. And there are a few out there where I think we can withdraw the objections.

THE COURT: Okay.

MS. RAINE: I don't know that there is additional information. I did see that we had not yet produced a certified copy of the policy and a recorded statement of the Plaintiff, which we certainly should have done earlier. I apologize that was not done. That was sent over first thing this morning as I was driving over to Gregg County.

THE COURT: Do you have any -- you know, he was saying all these other issues in terms of -- do you have any response to all that?

MS. RAINE: The issues about the lack of response issue?

THE COURT: Yes.

MS. RAINE: I don't. I know Plaintiff sent

out the letters about -- you know, again, it's probably a better story shared over a cold beer than in a courtroom, but I can tell you some stories about those extensions early on. And I apologize for that. I mean, I don't have an excuse for that. We did ask for extensions, they weren't responded to, and I feel bad about that.

But this is not -- his motion is not about the timeliness of the discovery. He wants to get to -- he wants to get past all that. He wants to get into the extra-contractual issues and the training of the claims and the claim files and the claim notes is really what they want to get to.

Plaintiffs haven't been harmed by this delay other than being a little irritated at us. And I get that. I appreciate being irritated at us. The case hasn't been harmed. He's still able to go forward, he's still able to do the things he needs to do to get ready for trial. He was still able to do the things that he needed to do to get the case ready for mediation. So -- and I'm not throwing away mediation. I think we're going to get a mediator proposal from Mr. Davis, and I hope that gets a lot of -- you know, that gets everything resolved.

You have my personal word, Your Honor, from here on out. I'll call Mr. Smith back within 24 hours of receiving a call from him. I don't know what happened in

MR 170

that regard earlier. And, again, you have my personal word that I will call him. I will call within 24 hours of getting a call from him or e-mail or a message and respond.

THE COURT: All right. Let me hear back from Mr. Smith.

MR. SMITH: I appreciate the offer to meet and confer after this hearing on discovery that should have been responded to before. It's a little bit late in the game for that. I mean, if that meet and confer meet reaches an impasse, we're going to be back here again to get a ruling on these objections.

And, you know, the truth is is that this is not some sort of gotcha situation, you know. The reason for bringing up these multiple extensions at the beginning is not to say that their objections have been waived. And no one is here disputing that, you know, filing the response to the Motion to Compel that it shouldn't be considered. You know, they put in the time and the effort to respond to the Motion to Compel. I don't have any issue with listening to their arguments.

The problem is, if we wait another two weeks or three weeks to do a confer on discovery and reach an impasse, and then we wind up back here, we're just pushing -- kicking the can down the road so to speak.

I would like to get this case moving on

MR 171

discovery. These interrogatories -- these requests for productions, I can point the ones out specifically to the Court that deal with the underlying substantive matters. Those need to be responded to within the next 14 days, and the objections need to be taken down.

And with respect to these extra-contractual claims, the argument is is that nobody has been hurt by this, and that's not true. Mr. Jackson has been hurt by this. You know, he's got $47,000 in past medical expenses. He's got $35,000 in settlement to date. He's got another, what is that, 12,000 in past medical expenses that are sitting out there in the wings that haven't been paid.

And the issue with this argument on bad faith and partial payments is that, if you're arguing about the sufficiency of the settlement offer, which is what all these court cases that they cite to are talking about, you know, if the issue is, we offered you 20 and you said, no, we don't want it, you owe us more, well, then you're right because there hasn't been a request that the money that no one dispute should be paid is not being paid. The issue is that you're not giving us more than what this undisputed sum is.

But where the issue is, we've done an investigation. We've determined that you are, under our contract, entitled to an award from your

MR 172

uninsured/underinsured motorist coverage. We're going to tell you that we have done our investigation implicitly by making this offer. And then when the insured says, "Okay, if this is the undisputed sum that I'm entitled to, I will take that, and comply with your obligations under the insurance code to make timely and prompt payment on your claims following an investigation and based on your own determination." When the insurance company fails to do that, the injury occurs then.

And where you see this in the context of non-UM/UIM claims is, let's say I've got a house. And, well, and this just happened, I had a flood in my house. The insurance company comes in with an estimator, an adjuster, to run out what all my damages are, the measurements, the cost of the materials per exactimate (sic) all this information. We've got a dispute. And he says, the insurance company doesn't dispute that you're entitled to X number of dollars, but with regard to this other damage, we don't think it's related, and, therefore, we have a dispute with respect to this measure of damages.

The insurance company makes a proffer of a partial payment of which there is no dispute. And the insured says, "Okay, we'll take the partial payment and then we'll have our dispute." And the insurance company says, "No, no, no, hold on. Yes, this is a partial payment for

the undisputed portion of your claims, but we're not going to give you the partial payment of the undisputed portion of your claims unless you sign a release that gives us indemnity or release of all the claims, including the ones that we dispute."

That is an issue that I have not seen arise in the UM/UIM context. But when it arises in the first party context with homeowners insurance companies, and those policies, there's no question that you can bring the bad faith claims and the underlying breach of contract claims together.

Therein lies kind of the rub. Now, it's a complicated area of law. *Brainard* says that you need to have a judgment. An admission by the third party is not sufficient and a settlement by itself is not sufficient. *Brainard* doesn't even talk about what the effect of having the UM/UIM carrier consent to the settlement with a third party has on their contractual obligations. And no case does that I'm aware of.

But the long and short of it is that the substantive claims, these interrogatories that ask for the general factual basis of their contentions, photographs, diagrams of the scene, of the parties involved, of the witnesses, witness statements, those interrogatories, those requests for productions, those objections absolutely need

to be overruled.

And with respect to the bad faith claims, those objections should also be overruled. If there's a severance and abatement, then we'll conduct that discovery in the severed case. If there's a bifurcation, we'll conduct it in this case. But that's an evidentiary issue. You know, if the Court overrules those objections and permits the discovery of the bad faith claims, and then ultimately when they bring their motion to sever and abate, if the Court finds that's proper and, in its discretion, orders the severance and abatement, their obligation to comply with that order will be abated with the remainder of the claims. We won't have to come back here again whenever that case kicks back up.

THE COURT: All right. Anything further?

MS. RAINE: Your Honor, just real briefly.

There is nowhere in the policy that it's a pay-as-you-go. It's not that you get to submit your claims as you go along and the insurance company is obligated to pay it just because that's what is submitted to pay. So it's not, we're going to pay -- you know, there's no obligation to pay in increments at a time along the way until the whole thing gets resolved.

Again, that is a litigate that is -- that's an evidentiary matter about settlement and about -- you

know, whether or not there's been a proper settlement goes to the basis of the case only after there's been a proof of damages. If there's no damages, there's no damages awarded to Mr. Jackson, there's no -- there's no -- there's no need to go further against the case against AAA. Until Mr. Jackson establishes what his damages are, there's no underinsured motorist claim to make, and there's no contractual duty to pay him.

Your Honor, we're coming back here again because I've got to set my Motion to Sever and Abate, I've got to set my Special Exceptions and declaratory judgment. If the Court wants the parties to try to work on discovery response between now and the time that hearing is going to be set, I'm happy to do so.

Your Honor, just in brief -- and I know that Plaintiff's counsel isn't presenting his whole list of what he would like to respond to -- certainly we can respond to the identity of the pictures and who took them and things like that. But, again, going into the thought process of who made the decision to pay and who made the decision to deny and who thought this or that, that does go to the underlying bad faith claims, which are the extra-contractual claims, which, in my argument, should be severed and separated from this lawsuit.

THE COURT: Well, if those were severed,

MR 176

you'd still have to respond to that discovery eventually, would you not?

MS. RAINE: If Plaintiff's counsel gets there. If he gets there and there is an award of damages, and AAA doesn't pay, then there's a breach -- then there could be a claim of breach of contract. And if there's a breach of contract, then perhaps there are those few other claims of breach of good faith and fair dealing and violation of the insurance code. It's really just a step by step process, and Plaintiff's counsel is speeding ahead to the end of the road.

Your Honor, I'd also remind the Court that my adjuster really is sick. And so I will do -- and I will do what I can to work with the office or work with his supervisor, but in my response, as the Court probably knows it, I was not able to provide an affidavit from when litigation was anticipated because it requires so much to review those and to review that information. And the adjuster that is assigned to the case is not at work and able to do it. And certainly someone else in the office can have access to that information, but not in the time period that I had today.

So, again, it's not -- I can't just pick up the phone and call somebody who's going to be familiar with what's going on with this case to get and in-depth, detailed

answer. You know, the adjuster is working from home, and I think I'm not really supposed to call him a lot. I think he's not supposed to be working.

THE COURT: All right. Thank you, Counsel.

What relief are you asking for, Counsel, Mr. Smith?

MR. SMITH: With respect to -- and I can give you the specific interrogatories and requests if that's what you would prefer, or I can segregate it by category.

THE COURT: However you want to do it, just tell me.

MR. SMITH: The easiest way of doing it is for the requests and the interrogatories that deal with the substantive underlying claim, I would ask that those objections be overruled and that they be ordered, compelled to respond to those within 14 days. With respect to the bad faith --

THE COURT: I'm going to make that ruling. Okay. All right.

MR. SMITH: With respect to the bad faith claims, perhaps the fairest way of dealing with that is to overrule the objections and require a response within 30 days, or maybe even 45 days. That will give them time to file their motion to sever and abate. In the event that it's granted, that discovery would be pending in the severed

claim, and they won't have to respond to it until the abatement is removed. In the event that it's bifurcated, then we already have an order that compels the production of that information, and we can kind of keep this thing rolling.

THE COURT: I'll make that ruling.

Anything further from either side?

MR. SMITH: No, Your Honor, that's all.

MS. RAINE: Your Honor, does Plaintiff have to provide the specific requests -- and, I'm sorry, I missed that first part. Is he going to provide the specific items that he believes meet the requirement for substantially underlying claims?

MR. SMITH: I can do so.

THE COURT: He says he's going to do that.

MS. RAINE: Okay. Provide it to the Court or -- well, I guess he provides it to you, and if I don't agree with those numbers we'll be back on that as well.

MR. SMITH: I'll --

MS. RAINE: I mean, I've got to agree with the photographs -- I'm sorry to interrupt.

MR. SMITH: That's fine.

MS. RAINE: I agree -- like to the identity of the photographs, but I don't want to agree to people's thought processes and ideas, who made decisions to deny,

because then there is some sort of concession that we did make a decision to deny, and that's not really what it is.

MR. SMITH: So in that respect, I think the easiest way to do it is for me to prepare a proposed order with that segregated out and then to provide it to Defense counsel. She can review it. If there is a dispute over I think this is bad faith as opposed to substantive, then we can have that conversation. And we'll ultimately put an agreed order in front of the Court, or at least a proposed order from each side if we can't reach an agreement.

And the other thing that I would add on that, since she reminded me, regarding the privileges, in conjunction with these orders I would ask that a privilege log be prepared within that same period of time with respect to each one of these categories of discovery. So on the substantive claims, if there's privileged materials that are being withheld, produce privilege logs within 14 days. On the other one, bad faith extra-contractual claims, produce privilege logs within 30 or 45 days.

THE COURT: I'll do 45 days. All right. Anything further?

MS. RAINE: No, Your Honor. I will point out that I did give Mr. Smith my cell phone number since our telephones were out of service yesterday. So now Mr. Smith has no reason at all not to talk to me on a regular basis.

THE COURT: That sounds like a good plan.

MR. SMITH: I might need to get that from you again. Was that in an e-mail?

MS. RAINE: And in the letter -- we sent it both, sent it twice. We're covered.

THE COURT: Okay. Thank y'all for coming in. We're in recess.

MR. SMITH: Thank you, Your Honor.

(End of proceedings)

STATE OF TEXAS

COUNTY OF GREGG

I, Grelyn Freeman, Official Court Reporter in and for the 188th District Court of Gregg, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $264.00 and was paid by Sloan, Bagley, Hatcher & Perry Law Firm.

WITNESS MY OFFICIAL HAND this the 25th day of November, 2015.

/s/ Grelyn Freeman
Grelyn Freeman, CSR
Texas CSR 8179
Official Court Reporter
188th District Court
Gregg County, Texas
101 E. Methvin, Suite 408
Longview, Texas 75601
Telephone: 903-237-2688
Expiration: 12/31/2015

GRELYN FREEMAN, TEXAS CSR 8179
188TH DISTRICT COURT
101 E. METHVIN, SUITE 408
LONGVIEW, TEXAS 75601  903.237.2688

APPENDIX TAB 3

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUMES
TRIAL COURT CAUSE NO. 2014-1365-A

THOMAS JACKSON                    )  IN THE DISTRICT COURT
                                  )
vs.                               )  GREGG COUNTY, TEXAS
                                  )
AAA TEXAS COUNTY MUTUAL           )
INSURANCE COMPANY                 )188TH JUDICIAL DISTRICT

---

## DEFENDANT'S MOTION FOR SEVERANCE AND/OR PLEA IN ABATEMENT

## &

## SPECIAL EXCEPTIONS

---

On the 6th day of November, 2015, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable David Brabham, Judge Presiding, held in Longview, Gregg County, Texas.

Proceedings reported by computerized stenotype machine.

**APPEARANCES**

MR. JUSTIN SMITH
SBOT NO. 24068415
SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM
101 East Whaley Street
Longview, Texas 75601
Telephone:  903.757.7000


     REPRESENTING THE PLAINTIFF



MS. NANCY RAINE
SBOT NO. 00786183
WALTERS, BALIDO & CRAIN, L.L.P.
Meadow Park Tower, Suite 1500
10440 North Central Expressway
Dallas, Texas 75231
Telephone:  214.749.4805



     REPRESENTING THE DEFENDANT









                    REPORTER'S NOTE

        Uh-huh = Yes - Affirmative response
        Huh-uh = No - Negative response
Quotation marks are used for clarity and do not necessarily
               indicate a direct quote.

GRELYN FREEMAN, TEXAS CSR 8179
188TH DISTRICT COURT
101 E. METHVIN, SUITE 408
LONGVIEW, TEXAS 75601  903.237.2688

**MR 184**

CHRONOLOGICAL INDEX

VOLUME 1

DEFENDANT'S MOTION FOR SEVERANCE AND/OR PLEA IN ABATEMENT
&
SPECIAL EXCEPTIONS

November 6, 2015

|                                              | PAGE | VOL. |
|----------------------------------------------|------|------|
| DEFENDANT'S MOTION TO SEVER AND ABATE        |      |      |
| Ms. Raine                                    | 5    | 1    |
| Mr. Smith                                    | 8    | 1    |
| Ms. Raine                                    | 17   | 1    |
| Mr. Smith                                    | 19   | 1    |
| Court's ruling                               | 22   | 1    |
| DEFENDANT'S MOTION FOR SPECIAL EXCEPTIONS    |      |      |
| Mr. Smith                                    | 23   | 1    |
| Ms. Raine                                    | 23   | 1    |
| Court's ruling                               | 25,29| 1    |
| Reporter's certificate                       | 34   | 1    |

GRELYN FREEMAN, TEXAS CSR 8179
188TH DISTRICT COURT
101 E. METHVIN, SUITE 408
LONGVIEW, TEXAS 75601  903.237.2688

MR 185

**P R O C E E D I N G S**

November 6, 2015

(Open court, parties present)

THE COURT: All right. This is a civil matter. This is 2014-1365-A. This case is styled, I believe, Thomas Jackson versus AAA Texas County Mutual Insurance Company. I believe, Counsel, we're here on Defendant's Motion for Severance and Defendant's Motion for Special Exceptions. If you'll identify who you are for the court reporter and who you represent, please. Counsel?

MR. SMITH: Justin Smith here on behalf of the Plaintiff, Your Honor.

MS. RAINE: Nancy Raine on behalf of the Defendant.

THE COURT: All right. And, Ms. Raine, are you ready on your motions then?

MS. RAINE: Yes, sir.

THE COURT: All right. You may proceed at this time.

MS. RAINE: Your Honor, would you like for me to go forward and present the Motion to Sever and Abate first and then the Special Exceptions or present them at the same time?

THE COURT: Just however you want to proceed. I'm going to let you decide.

MS. RAINE: That's fine. Thank you, Your Honor.

Your Honor, Defendant has filed a Motion to Sever and Abate the extra-contractual claims that the Plaintiff has brought forth in this lawsuit. This is a lawsuit involving a motor vehicle accident. Thomas Jackson is an insured person under a policy issued by AAA Texas. That is not in contention that that policy is there. I think, there's been discovery exchanged, and coverage and issues of those things are not at issue.

Your Honor, this is a UIM underinsured motorist claim. It's actually a lawsuit to establish the conditions precedent in order then for the Plaintiff to try to make a claim for his UIM benefits.

It is Defendant's position, Your Honor, that there first must be a judicial determination by the Plaintiffs of liability, actual damages, and the status of the tort-feasor as being an underinsured motorist before there is a judgment presented to the Defendant in which damages should be paid. And until there is a judicial determination, which is a judgment, presented to the Defendant, there is no -- there is no -- there is no breach of contract. There is no damages.

The Defendant does not have an obligation to make a payment just because a claim has been filed. The

Defendant has no obligation to make a payment just because discovery has been exchanged. The only obligation that the Defendant has to make a payment to Plaintiff in this claim is if there has been judicial determination and the conditions precedent have been established.

In Plaintiff's discovery they have asked for numerous questions, discovery of extra-contractual claims regarding claim manuals and individual information about agents. Your Honor, we're asking the Court to sever the extra-contractual claims out of this lawsuit because they are highly prejudicial to the insured. They also go into matters involving settlement, and we do not believe that that information is proper to introduce to the jury. And it's a waste of judicial and party resources to enter into and engage in discovery for extra-contractual claims in which the Plaintiff may not ever get there.

Your Honor, we're also asking the Court to abate the extra-contractual demands and claims made in this lawsuit, again because it goes towards discovery that will be produced that could be prejudicial -- or privileged, excuse me -- and undiscoverable. Again, that's a waste of judicial and party resources.

The harm to the Defendant is listed in Defendant's responses to the Motion to Compel. We believe we've outlined what those harms are. But also, Your Honor,

a couple of weeks ago we were here before you on the Plaintiff's Motion to Compel, and the Court signed an agreed order. And in that agreed order it enumerates the specific items that the Court held off in demanding or ordering the Defendant to compel until after this hearing. But, Your Honor, I'd ask you to take judicial notice of the Court's order on that matter. It lists out the specific admissions, request for production and interrogatory answers that the Defendant is being asked to answer and to produce in terms of the extra-contractual claims. And also, again, Your Honor, that's in the Court's file, that's in Defendant's responses to the Motion to Compel.

Plaintiff filed a response to the Motion to Sever and Abate. Again, Your Honor, we just believe that Plaintiff has brought, really has brought a lawsuit to establish the conditions precedent. They tried to couch it in terms of a breach of contract, but there's no -- there's no breach of contract because there's been no judicial determination of damages to be paid.

Also, to segue into the Special Exceptions, Plaintiff has called their lawsuit a declaratory judgment. Your Honor, this is not an issue where we're asking the Court or the Court is being asked to decide on the construction of the contract. And, again, it's not an issue of coverage. The only reason to call it a declaratory

judgment is to circumvent the Court's order to -- or the Court's decision in *Brainard* for the Plaintiffs to seek attorney's fee.

And, Your Honor, the Supreme Court case *Brainard* states that there are no attorney fees to be paid until there's been a judicial determination of conditions precedent, which, again, is for the Plaintiffs to establish liability, actual damages and the status of the tort-feasor. Calling it a breach of contract, calling it a declaratory judgment, it's still what it is. And what it is is just a suit to come forward before the Court to establish the conditions precedent so the Plaintiffs can seek recovery under his UIM policy.

To that, Your Honor, the Court -- the Defendant would ask the Court to grant their Motion to Sever and Abate and to grant their Special Exceptions to Plaintiff's Second Amended Petition.

*THE COURT:* Thank you, Counsel.

All right. Mr. Smith, you may respond at this time.

*MR. SMITH:* Yes, Your Honor. Kind of as an initial matter, you know, we were here probably about a month ago talking about this case. It involves a car wreck. Mr. Jackson was driving on Judson or Pliler Precise Road heading out to the intersection of Judson Road. And he had

a stoplight. He stopped at the stoplight. It turned green. He went through the intersection to make a left-hand turn on the other side of the intersection. And Patricia Tompkins, who is the third party, ran through the red light and T-boned him.

He's got about, I think, in excess of $80,000 in medical expenses to date. And we expect that he's going to have future medical. And all this has been presented to the Defendant in the form of the medical records, billing records, and letters from treating physicians.

Now, when we were here about a month ago, one of the things we were talking about is discovery. But this issue that we're talking about here today came up, and that's why we had this kind of, you know, we'll do this breach of contract underlying liability discovery first and then abate the remainder of that until we can have this hearing.

Now, this hearing, this severance and abatement issue, which I'll take up first, the Defendant has the burden of proof on establishing that severance and abatement is proper. The trial court is generally granted a wide array of discretion in determining how it's going to conduct the trial and how discovery is going to proceed.

And what the Defense have asserted in their motion is that, you know, despite the fact that the trial

court is generally vested with wide discretion, it has no discretion in this case to order a severance and abatement. And that's not true.

Now, there are three different claims here that we're kind of talking about. Four if you include the declaratory judgment action. One of those claims is a breach of contract claim, and there's two of those in this case. One breach of contract claim says, look, we presented all of this information to you, you did an evaluation and investigation of this case, and you determined that in excess of the third party policy limits which have been paid, and in excess of the PIP benefits that have been made, Mr. Jackson was entitled to $20,000. And when we made the demand that you pay that undisputed sum to us, you refused to do so. And that's a breach of contract.

That is also the basis of our bad faith claims. And all the cases that are in their Motion for Severance and Abatement, all of them, you know, *Trinity Universal* dealt with a third party and a UM/UIM carrier who had been joined in the same suit before the third party claims had been disposed of. There's another case in there where the UM/UIM carrier and -- sorry, not the UM/UIM carrier, the Defendant driver and the Defendant driver's insurance company, what would be his liability insurance company, his adjuster was enjoined in the same lawsuit.

Obviously, there are different considerations there than there are here. All of the UM/UIM cases in their motion, all of the bad faith cases where they said that severance and abatement was mandatory, is where the bad faith claims were premised on the inadequacy or the deficiency of the settlement offer.

And essentially what you'll see is -- take, for example, the Supreme Court case in *Akin*. In *Akin* the insurer had tendered partial payment of an undisputed sum. And then thereafter, when there was litigation on the disputed sum, they moved for severance and abatement. And in that case the Texas Supreme Court adopted a very flexible standard for trial courts and appellate courts to review severance and abatement. And what it said was, we're not going to adopt a hard-and-fast rule that says that severance and abatement is required anytime you have contractual claims and bad faith or extra-contractual claims joined in the same lawsuit. We're not going to have that hard-and-fast rule. Trial courts need to look at the cases that they've got and make a determination based on the facts that they're presented.

It did say there are certain bad faith cases, contractual cases, where it would be mandatory to have a severance and abatement. And that is where the insurer has made a settlement offer for the entire contractual claim.

We don't have that here. So we've got one breach of contract claim that says, y'all made an offer saying this is what we believe that he's entitled to, that's a breach of contract and that's bad faith. There's no bad faith claim in this lawsuit saying that that offer was insufficient. And so with respect to that breach of contract claim and those extra-contractual claims, whatever the Court decides to do, those two claims need to stay together because they arise out of the exact same facts and they deal with the exact same legal issues.

Now, there's another breach of contract claim, which is the one that Ms. Raines (sic) is talking about, this kind of traditional UM/UIM claim that says you breached the contract and you breached the contract because the third party was liable for it. Mr. Jackson suffered actual damages, and his actual damages are in excess of what the third party's limits are.

Now, *Akin* -- and there's a case out of the Court of Appeals of El Paso, which specifically deals with this issue in the UM/UIM context. What that case decided was, pursuant to *Akin*, when you have a -- a proffer of an undisputed sum, that's not sufficient to arise to the level where severance and abatement is mandatory. The question there is whether or not there was a settlement offer for the entire contractual claim.

And because the burden was on the insurance company, who was moving for severance and abatement, they looked at evidence. And what the insurer in that case did to prove that there was contractual -- or there was an offer of settlement for the entire contractual claim, was they put on letters and affidavits from their insurance adjustors.

We don't have any evidence of that here. And so the only way that there's going to be a mandatory severance and abatement, as the defendant claims, is if they put on that proof that there was an offer for the entire contractual claim. They haven't done that. And so the trial court retains its discretion on what it wants to do in terms of looking at the facts of this case and what is appropriate to provide whatever protection the Court deems is necessary.

The Court has the discretion to order a severance and abatement. The Court also has discretion to order a bifurcation of the trial so that any kind of prejudice, things that would be inadmissible on the breach of contract, declaratory judgment, will still be inadmissible for those claims. And after that issue is tried, we would have a bifurcated trial on the bad faith claims and the breach of contract claim that asserts that your failure to tender the amount that you determined to be owed was a breach of contract and bad faith.

MR 195

The Court retains the discretion to do that. It also retains the discretion to not do anything at all. If it just wants to have everything in one trial proceeding and the discovery all proceed together, the Court has the discretion to do that.

Now, with respect to severance and abatement versus doing a bifurcation, there are pluses and minuses on both sides. You know, they want severance so that inadmissible evidence doesn't go to the jury on the determination of whether the third party is liable and is actually an underinsured motorist. They don't want inadmissible evidence to go in on that claim. I think that that's a valid concern that they have. Severance would deal with that issue. Also bifurcation would deal with that issue.

The other complaint that they've got is on the abatement. And they're saying that we don't want to do discovery of anything that deals with extra-contractual claims until after we got a trial and the determination is then, well, how long are we going to abate this second proceeding? Is it going to be through the final judgment? Is it going to be through final appeals? And therein is a concern that severance and abatement gives rise to that we don't have on bifurcation.

You know, there's going to be a lot of things

in this lawsuit that's going to relate to both breach of contract and bad faith. You know, the nature of any investigation that they did into underlying facts, their termination of -- of coverage is going to be an issue in the underlying case. Because as Ms. Raines points out, one of the things you've got to prove is that, you know, she's -- the third party was liable and that she was also an underinsured motorist. So there's going to be overlap there. A lot of the same witnesses will be called. Well, at least in terms of the third parties and maybe some insurance adjustors as well.

If we abate the discovery, depending on how long we abate it -- and there's a case that's cited in our response that deals with that. It's the *Texas Farmers Insurance Company v. Cooper*. And there they were discussing the propriety of an abatement. And in that case they determined that abatement was not proper because the insured had not met its burden of proof to show that it was -- that it was proper.

And the concerns that the Court had in *Texas Farmers Insurance Company v. Cooper* are the ones that I'm talking about now. Specifically that, even assuming -- this is what the Court said -- even assuming that Texas Farmers prevails on the contract claim, which is certainly not foregone, this is only one aspect of judicial economy when

it talks about the standard for abatement. If discovery in the extra-contractual case is stayed until the uninsured motorist claim is final, years may pass, witnesses may die or disappear, files may be lost, and memories will undoubtedly fade. Rather than minimizing pretrial efforts, abatement may require that discovery be conducted twice as the carrier may successfully argue it initially prepared for trial only on Kidd's contractual claim, not his extra-contractual claims. Moreover, it is possible that the entire lawsuit, contractual and extra-contractual, is subject to disposition before trial. Numerous pretrial rulings may affect both contractual and extra-contractual claims.

And so there's concerns on both sides in terms of severance and abatement or bifurcation. We believe that bifurcation is going to expedite this proceeding, that bifurcation will provide any kind of protection they need from the jury hearing inadmissible evidence. That would be evidence that would be inadmissible on a termination of whether the third party was liable and that the actual damages exceeded per policy limits. Whereas, severance and abatement is going to cause a great deal of delay in this case.

Since the Court retains the discretion of what it wants to do and what it feels is proper, we feel the

Court should enter in a bifurcation if it feels that some protection is necessary in order to protect the Defendant's interest but also keep this thing moving along so that we can get it resolved as quickly as possible.

*THE COURT:* Thank you, Mr. Smith.

Brief response, Counsel?

*MS. RAINE:* Yes, Your Honor. Your Honor, this is not a motion to enforce settlement. This is not a breach of contract. The insurer, AAA Texas, is under no contractual duty to pay a claim brought under a UIM policy until liability is established and actual damages are proven and the tort-feasor status, period. There -- this is not a breach of contract claim.

Plaintiff keeps bringing up the $20,000 offer to settle this case. This was an offer to settle, Plaintiff would not sign a full and final release of all claims because they wanted that to be a partial -- a partial amount that they only wanted -- so there was no -- this is no breach of contract. This is not a Motion to Enforce Settlement.

Your Honor, bifurcation is not proper in this case. We're asking the Court to abate because of the discovery that Plaintiff has already put forth, and may continue to put forth, in terms of the requirements of having to answer all the interrogatories, requests for

production, and admissions that have been presented to the Defendant.

Your Honor, we just feel like, although the law is very clear on the issue, that we're not -- we're just not there yet. This is -- Plaintiffs first have to prove that they are confounded and have a judicial determination regarding the conditions precedent.

THE COURT: Do you -- excuse me. Do you agree that this is within the discretion of the Court to make the decision to sever and to abate?

MS. RAINE: Not in this case, Your Honor, because this is not a breach of contract case. And I believe the courts will support an order to direct the Court to abate and sever the extra-contractual claims in this case because there's been no breach of contract. There's only a breach of contract if there's been a judgment presented to the Defendant after the conditions precedent have been met, and then the Defendant doesn't pay their judgment that's owed less any credits or offsets that were made.

So, I mean, bottom line is if there's a trial in this case and Plaintiffs are -- they get an award of damages from the jury as to -- as to the liability established, how much Mr. Jackson's damages are, and that the tort-feasor driver, Ms. Autrey (sic), was under -- she was underinsured, there's going to be a bottom line number

of that. From that bottom line number, we're going to subtract out the amount that Ms. Autrey's (sic) insurance has already paid and any PIP payments to offset. Then there's going to be a balance that's owed. AAA Texas has 30 days to pay any balance that is owed. If they fail to do that within 30 days, that could be a breach of contract.

THE COURT: Thank you. Counsel, briefly respond to that last issue, Mr. Smith.

MR. SMITH: Yes, I will. And this kind of overlaps with the Special Exceptions issue as well. Ms. Raines keeps on saying this is not a breach of contract case, it's not a breach of contract case. Every single case that she cites in her motion, every single case that's cited in our response, talks about contractual claims versus extra-contractual claims.

And so, you know, she says that -- and this was initially that it's not a breach of contract, it's not a declaratory judgment, it's just a request for a judicial determination of liability and underinsured status. I don't know how you do that without a cause of action. I mean, you have to have something to put these things in, in order to put it in front of the jury and have them fill out the jury verdict form. It's not going to be a questionnaire that says, you know, is she liable, is she an underinsured motorist. It's going to be in the context of is there a

breached contract. And the declaratory judgment provides the framework for the remainder of it.

So I don't understand -- and I haven't seen any law that says that these are not breach of contract claims. Every case that I've seen, whether it's cited in her motion or ours, characterizes this issue as contractual claims versus extra-contractual claims.

And I will agree that there's some confusion in the law given *Brainard*, given what *Brainard* said is, you know, you're entitled -- you're legally entitled to recover. You're legally entitled to recover when you established that the third party is liable and that she is an underinsured motorist.

But there's no framework in which to make that judicial determination absent breach of contract and/or declaratory judgment. There's no cause of action that says, you know, are you an underinsured motorist status, are you liable for the third party. There has to be something that you put these things in in terms of a cause of action.

Now, the last thing that she said was on this contingent claims, right? You can't have a -- an entitlement to recover until you get a judicial determination of the liability of the third party and the uninsured status. That's not any different than any other contingent claim that's brought together. I mean, you think

about negligence and gross negligence. The punitive damages question is always contingent upon a finding of negligence by unanimous verdict in the underlying case.

And the case from El Paso that I was quoting from a moment ago also brought up that issue about how there's all kinds of lawsuits where contingent and derivative claims are brought together. And the courts have always dealt with these by either trying them together, bifurcating or severing and abating them. The fact that you can't have what you need in order to satisfy this legally entitled to recover language is judicial determination, therefore, bad faith claims are contingent, is not any different than any other contingent claim.

Now, I will say that there is a difference because all the cases that we've been talking about, with the exception of the El Paso Court of Appeals case, where they put on evidence that it was a settlement offer for the entire amount of the claim, every single one in the UM/UIM context talks about the inadequacy of the settlement offer.

In *In Re Fire Lloyds*, which is out of San Antonio, they had made a settlement offer for $100,000 for the entire contract claim at a mediation. And then after that settlement offer for the entire contract claim was made, they filed a Motion for Severance and Abatement. And that was found to be mandatory.

In *Millard*, you had a bad faith case that was premised on the perceived deficiencies in the settlement offer. And I think it's *Maynard* (phonetic), it was the inadequacy of the settlement offer that gave rise to the severance and abatement.

Every single one of those cases you have the bad faith premised on inadequacy of the settlement offer, not the fact that you had apparently a determination of coverage, an investigation in coverage, and a determination that you're entitled to a certain amount of money and then we just don't pay it because we try to strong-arm a full and final release out of you for the undisputed amount.

Now, Ms. Raines wants to say that that's a settlement offer for the entire amount of the contract, but she has to put on evidence that that's true because this is her Motion for Severance and Abatement, and she has to prove that those elements are met. And there's no evidence here that this was a settlement offer for the entire amount of the claim.

THE COURT: All right. Thank you, Counsel. Very good work on both sides.

I'm going to deny the Motion to Sever and deny the Motion to Abate. I will bifurcate the case.

Where does this leave us on these Special Exceptions?

MR. SMITH: With the Special Exceptions, this is the confusion that we were talking about a second ago. It's either got to be a breach of contract claim or a declaratory judgment claim or both. I mean, we have to have a cause of action to put this in front of the jury. Ms. Raines says it's not a breach of contract. Well, if it's not a breach of contract, then we have to have something to put in front of the jury, cause of action. And that's why the declaratory judgment claim is pled in there, because of this confusion that arises and because we have, you know, statements they're saying it's not a breach of contract claim. We've got to have something as a cause of action to bring -- to bring this in front of the jury. If it's -- if it's not one of those two, I have no idea what it is.

THE COURT: Ms. Raine?

MS. RAINE: Your Honor, you can call it whatever you want to call it. Bottom line is Plaintiffs do not get to recover attorney fees on this cause of action. They can leave it -- they can call it a declaratory action. They can call it whatever.

THE COURT: Is that what your Special Exceptions address or is there other things?

MS. RAINE: It addresses --

THE COURT: Let me just say here's where we

are, Counsel. I'm going to have to briefly recess us because I've got a case coming up behind where they're going to call in at 10:55. So I don't want to get in a bind here on that.

MS. RAINE: My order to the Court was going to be to grant our -- grant that Plaintiff replead this case to -- to take out the declaratory judgment and to -- and our claim for attorney's fees. So if I may approach the Court?

THE COURT: Mr. Smith, what's your response to that?

MR. SMITH: I'd like to see some law that says that you can't recover attorney's fees on a declaratory judgment case in a UM/UIM context. I haven't seen law that says that.

MS. RAINE: Your Honor, I have a Supreme Court case that's going to say that, if this is not a declaratory judgment, which it is not, it is not to establish the construction of this -- of this policy. It's not a -- it's not asking the Court to establish the constructive issues of this policy. Therefore, it is not a declaratory judgment, and you cannot collect attorney's fees on a case that is not -- on an issue that is not declaratory judgment. It violates the American rule that the parties are responsible for their own attorney's fees.

THE COURT: Mr. Smith, I mean --

MR. SMITH: I'd like to have an opportunity to review the case law. And I think this is probably something we can deal with at a later date on, you know, more full briefing for the Court after I've had an opportunity to look at exactly what the issues are and determine if this -- this is the rule in UM/UIM context.

THE COURT: How much time would you need to do that?

MR. SMITH: Oh, probably a week to two weeks.

THE COURT: All right.

MS. RAINE: Your Honor, if I may approach I can give the Court a copy of this?

THE COURT: Sure.

MR. SMITH: Is this copy for me, Ms. Raines?

MS. RAINE: Yes.

THE COURT: I will take that, the issue of the Special Exceptions under advisement, give Mr. Smith two weeks to respond. And is there anything else, Counsel, we need to do at this hearing?

MS. RAINE: Your Honor, if you could sign an order today denying the Motion to Sever and Abate.

THE COURT: If you have it prepared I will.

MS. RAINE: Do you have an order?

MR. SMITH: I do not have an order, but I'll present one to Ms. Raines.

MS. RAINE: I just want to make sure I walk out of here with a signed copy today.

THE COURT: Sure.

MS. RAINE: If that's all right with you?

MR. SMITH: Yeah. And we should probably put in here the bifurcation, since that is what the Court ordered to do, right?

THE COURT: I did. Y'all want to add that? Y'all want to add that on the one I sign?

MS. RAINE: Your Honor, standard for Court that if you sign an order can we go and get a copy, a conformed copy of what the Court signed, or do you want us to make copies here?

THE COURT: Sure. No, we'll get you the conformed copy. But do we need to add the bifurcation issue? Do y'all want to work on that language here?

MR. SMITH: Yeah, I think that's fine. That way we've got --

THE COURT: I tell you what I'm going to do. I'm going to recess this hearing and let y'all work on that order, because I've got a phone call coming in on this next hearing. And I can come back to you if I need to go on the record. Just give me just a few minutes, okay?

MR. SMITH: Yes, Your Honor.

THE COURT: Okay. I'm going to recess this

MR 208

matter, and thank you very much. We'll come right back to it if we need to.

MR. SMITH: Thank you, Your Honor.

MS. RAINE: Thank you, Your Honor.

(Recess)

THE COURT: All right. Let's go back on the record if we could, Counsel, in the Jackson matter.

Have y'all worked on an order that's agreeable in form at least?

MR. SMITH: Yes, Your Honor, I believe we have.

Ms. Raines, is that language agreeable to you?

MS. RAINE: Well, Your Honor, I just want to clarify. Is your intention to bifurcate the trial and abate the extra-contractual claims as well so we'll have -- because we believe that we need to have a separate trial? We need to have a separate jury hear the extra-contractual claims. Otherwise, we're picking a jury for the underlying UIM claims, but also adding in all the extra-contractual claims, which, again, is what we are opposed to. So I'm asking the Court, is the Court's intention to bifurcate the extra-contractual claims as well as to abate -- to abate those extra-contractual claims?

And for, Your Honor, we were talking

earlier -- I have a case for the Court to review. It's a -- it's *In Re Farmers Texas County Mutual Insurance Company*, Texas Court of Appeals out of Austin. The case number is 03-15-00527.

May I approach, Your Honor?

THE COURT: Sure.

MS. RAINE: Your Honor, that case deals with that the Court needs to -- shall sever and abate extra-contractual claims from UIM claims. So I just wanted to clarify if that's the Court's ruling was to bifurcate the case and abate the extra-contractual claims to a separate jury.

THE COURT: My understanding was a bifurcation is just -- it's before the same jury.

Mr. Smith, is that your understanding?

MR. SMITH: Mine as well, Judge.

THE COURT: I mean, that's what bifurcation is. Otherwise, you would abate it, and it would be before another jury. But is this the case, Mr. Smith, you had -- were you aware of this case when you were responding?

MR. SMITH: I don't think that -- and Ms. Raines can correct me if I'm mistaken -- but I don't believe this is the case that was cited in their motion. It may be a case that has been cited by some of the cases that are cited in their motion.

MS. RAINE: Your Honor, this case was not cited in our motion, no.

MR. SMITH: I don't know how it would -- let me see real quick.

THE COURT: Well, they severed here but denied the abatement; is that what the judge did?

MS. RAINE: Yes, Your Honor. And so it was an appeal within the Court to rule that it should be severed and abated.

THE COURT: Well, I think that's a different situation. Because I'm going to -- I'm denying the abatement, and we're going to bifurcate. And so -- then the issue would be, we're going to proceed with full discovery on all issues.

So this order that's presented to me says that Motion for Severance and Plea in Abatement is denied in its entirety. Extra-contractual claims will not be severed. Extra-contractual claims are not abated. The Court orders that the trial shall be bifurcated as to the Plaintiff's extra-contractual claims.

I'm prepared to sign this order.

Mr. Smith, anything further?

MR. SMITH: I don't have anything further at this time, Judge.

THE COURT: All right. All right. I'll get

each one of you a conformed copy here.

(Off-the-record discussion)

THE COURT: Counsel, do y'all have another issue?

MR. SMITH: Yeah, I think we may, Your Honor.

As you recall at the last hearing that we had, we had had a discussion about we would get together and talk about which discovery related to which issue.

THE COURT: Correct.

MR. SMITH: We did that, and we reached an agreement as to which discovery related to which issue. We had a disagreement about -- my recollection of what the Court's order was is that the objections were overruled and they would respond to discovery. Ms. Raine's recollection was that the Court did not overrule their objections. And so I have submitted a proposed order with my recollection overruling the objections.

I don't know that we have a signed copy of that, and that's what Ms. Raines and I were discussing.

THE COURT: After that hearing, I recall -- I never got -- I thought what I was going to get was an agreed order as to form. And I don't think I ever got that. So I sent some orders back on the queue e-file. Maybe each of you had sent a proposed order. I can't remember now.

MR. SMITH: I think I'm the only one who sent

a proposed order.

THE COURT: Okay. Did I not sign that? Let's see.

Let's see, here's a proposed order that I returned. Let's see if that's the one you sent, Mr. Smith.

MR. SMITH: Yes, this is the one that I sent to you.

THE COURT: Here is one -- let me look at this one. Here's a proposed order that -- I returned it because I said the lawyers would submit an order with signatures as to form, and I never got that. I think -- let me see if I can copy this.

MS. RAINE: Your Honor, we have an agreed order that Plaintiff's counsel prepared that we discussed. And then I think there was just some miscommunication as to if it was agreed as to form.

And, Your Honor, we're ready at this time to present that to you as an agreed order on the motion, Plaintiff's Motion to Compel hearing. And it's agreed by the parties to form.

THE COURT: Okay. I'll sign that then.

MS. RAINE: Your Honor, I would just also like to make clear for the record, that is the order that I referenced in my argument here today because it clarifies the extra-contractual discovery questions and responses that

have been propounded to Defendant to answer as part of the extra-contractual discovery.

THE COURT: Okay. So --

MS. RAINE: And I apologize, I thought the order had been signed earlier and maybe it's a mistake that I just did not receive a copy.

THE COURT: So this is the order consistent with my prior ruling?

MR. SMITH: That's my recollection of it. Apparently, we're now agreed to form.

MS. RAINE: Yes, Your Honor.

THE COURT: Okay. I'm going to sign it and I'll get you a conformed copy, each one of you, on this one.

MR. SMITH: Thank you, Your Honor.

THE COURT: Sorry for the --

MR. SMITH: I apologize. I didn't know that was sent back. I'm sure it was, and I just guess I didn't see it.

THE COURT: All this e-filing is new to me.

MR. SMITH: Technology is a blessing and a curse.

THE COURT: All right. Anything further, Counsel, from either side?

MR. SMITH: No, Your Honor.

MS. RAINE: No, Your Honor.

THE COURT: All right. Good luck. Y'all have a safe trip back.

MR. SMITH: Thank you, Your Honor.

THE COURT: Okay.

(End of proceedings)

GRELYN FREEMAN, TEXAS CSR 8179
188TH DISTRICT COURT
101 E. METHVIN, SUITE 408
LONGVIEW, TEXAS 75601   903.237.2688

**MR 215**

STATE OF TEXAS

COUNTY OF GREGG

I, Grelyn Freeman, Official Court Reporter in and for the 188th District Court of Gregg, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $204.00 and was paid by Sloan, Bagley, Hatcher & Perry Law Firm.

WITNESS MY OFFICIAL HAND this the 25th day of November, 2015.

/s/ Grelyn Freeman
Grelyn Freeman, CSR
Texas CSR 8179
Official Court Reporter
188th District Court
Gregg County, Texas
101 E. Methvin, Suite 408
Longview, Texas 75601
Telephone: 903-237-2688
Expiration: 12/31/2015

APPENDIX TAB 4

CAUSE NO. 2014-1365-A

| | | |
|---|---|---|
| THOMAS JACKSON<br>    Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT |
| VS. | §<br>§ | GREGG COUNTY, TEXAS |
| AAA TEXAS COUNTY MUTUAL<br>INSURANCE COMPANY<br>    Defendant | §<br>§<br>§<br>§ | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION & REQUEST FOR DISCLOSURE

Thomas Jackson, Plaintiff, files this *Original Petition*, and in support thereof would respectfully show the Court as follows:

### A. DISCOVERY CONTROL PLAN

1.    Discovery is intended to be conducted under Level 3 of Tex. R. Civ. P. 190.4.

### B. PARTIES

2.    Plaintiff, Thomas Jackson, is a resident of Gregg County, Texas. Plaintiff's Driver's License number is XXXXX037. Plaintiff's Social Security number is XXX-XX-X454.

3.    Defendant, AAA Texas County Mutual Insurance Company, is an entity doing business in the State of Texas. This Defendant may be served with due process herein by serving its registered agent for service, C T Corporation System, 1021 Main Street, Suite 1150, Houston, Texas 77002.

### C. JURISDICTION & VENUE

4.    The Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the court. Plaintiff seeks monetary relief in excess of $ 100,000.00 but not more than $ 200,000.00.

1

**MR 217**

5. Pursuant to Tex. Ins. Code § 1952.110, venue is proper in Gregg County as the county in which the accident occurred.

## D. AGENCY/RESPONDEAT SUPERIOR

6. Whenever it is alleged in this petition that Defendant, AAA Texas County Mutual Insurance Company, did any act, omission or thing, it is meant that Defendant's employees, agents, officers, directors, servants, apparent agents, ostensible agents, agents by estoppel and/or representatives did such act, omission or thing and that at the time such act, omission or thing was done it was done with the actual or implied knowledge of Defendant, AAA Texas County Mutual Insurance Company, or was done with the full authorization or ratification of Defendant, AAA Texas County Mutual Insurance Company, or was done in the normal and routine course and scope of agency or employment of Defendant's employees, agents, officers, directors, servants, apparent agents or ostensible agents, agents by estoppel and/or representatives.

## E. FACTS

7. This lawsuit results from a collision that occurred on June 12, 2013 at approximately 8:58 p.m. in Longview, Gregg County, Texas. Plaintiff, Thomas Jackson, was operating his vehicle westbound on Pliler Precise Road in a safe, reasonable and lawful manner, when he stopped in obedience to a traffic control device at the intersection of Judson Road and Pliler Precise Road. After stopping, and in obedience to the traffic control device, Plaintiff proceeded to continue traveling westbound into the intersection of Pliler Precise Road and Judson Road. Patricia Tompkins was traveling northbound on Judson Road when, with complete disregard for the safety and welfare of other persons or property, she disregarded the traffic control device striking the driver's side of the vehicle being driven by Plaintiff, causing the collision made the basis of this lawsuit.

2

**MR 218**

8. At the time of the collision, Plaintiff's vehicle was covered by a policy of automobile insurance in full force and effect, which is the subject of this lawsuit. The policy of automobile insurance was issued by Defendant and included uninsured/underinsured motorist coverage as defined under the policy and/or by statute.

9. Plaintiff timely and properly notified Defendant of the motor vehicle collision that is the subject of this suit. Plaintiff has fully complied with all of the conditions of that insurance policy prior to his filing suit against Defendant. All conditions precedent have been performed or have occurred. Further, Plaintiff has complied with requests for provision of information to the Defendant.

10. As a result of the collision caused by Patricia Tompkins, Plaintiff sustained damages that exceed the amount of available and collectible liability insurance coverage issued to Patricia Tompkins and which covered her negligent actions. Defendant refused to consider Plaintiff's injuries, medical billing paid or incurred by or on behalf of Plaintiff and failed, and continues to fail, to fully compensate Plaintiff for the injuries caused by Patricia Tompkins, an underinsured motorist, and give Plaintiff the benefit of the bargain of his uninsured/underinsured motorist coverage present in the insurance policy, in violation of Texas law as described herein below. As a result of their acts and/or omissions, and unlawful conduct as described herein below, Defendant proximately caused Plaintiff injury.

## F. BREACH OF INSURANCE CONTRACT

11. All of the premiums that were due on the AAA Texas County Mutual Insurance Company policy with Thomas Jackson as the named insured, at the time of the wreck, had been paid and the policy was in full force and effect at the time of the collision. Defendant, AAA Texas County Mutual Insurance Company, kept its insured's money and had obligations as

3

**MR 219**

described in the insurance policy that was in effect at the time of the incident in question. Defendant to date has failed and refused to pay the money due under the policy, despite demand. Specifically, Defendant has determined that Plaintiff's underinsured motorist claim is worth at least $ 25,000, as evidenced by its offer to pay $ 20,000 in addition to $ 5,000 previously paid as personal injury protection policy limits (*see* Exhibit A). However, despite Plaintiff's demand for payment of this undisputed portion of his underinsured motorist coverage (*see* Exhibit B), Defendant has refused to tender this amount. This failure and refusal to pay constitutes a breach of contract and demonstrates bad faith. Further, Defendant's failure to properly value and fully pay Plaintiff's damages pursuant to its obligations in the policy at issue likewise constitute a breach of contract and demonstrate bad faith.

## G. PETITION FOR DECLARATORY RELIEF

12.     Based on the foregoing facts, and pursuant to the policy of insurance in force and effect between Plaintiff and Defendant AAA Texas County Mutual Insurance Company at the time of the wreck, Plaintiff seeks a declaratory judgment pursuant to Tex. Civ. Prac. & Rem. Code Ch. 37 construing the contract of insurance and declaring Plaintiff's rights and obligations under the contract. Specifically, Plaintiff seeks a finding that Patricia Tompkins is an underinsured motorist, that Plaintiff is entitled to recover from Defendant Plaintiff's damages resulting from the motor vehicle collision the subject of this suit, that Plaintiff's damages fall within the coverage afforded Plaintiff under the policy with Defendant, and specifying the amount of damages, attorney's fees, interest, and court costs that Defendant is obligated to pay.

13.     Defendant AAA Texas County Mutual Insurance Company's conduct is a proximate and producing cause of damages to Plaintiff. Such damages include, but are not limited to, unpaid benefits, medical expenses, physical impairment, lost earning capacity, and

4

**MR 220**

pain and mental anguish. Such damages have occurred in the past and are likely to continue in the future.

14.  As a result of Defendant AAA Texas County Mutual Insurance Company's conduct, Plaintiff has incurred attorney's fees through trial and appeal.

## H. BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

15.  Without adequate explanation or justification, AAA Texas County Mutual Insurance Company, by and through its agents, breached its duty of good faith and fair dealing by denying or delaying payment of benefits to Plaintiff in accordance with his insurance agreement when it was reasonably clear that it should do so. As a result, AAA Texas County Mutual Insurance Company is in violation of Tex. Ins. Code, Chapter 542, *et. seq.* Further, AAA Texas County Mutual Insurance Company has engaged in unfair claim settlement practices in violation of Tex. Ins. Code, §§542.056, 542.057, and 542.058. As a proximate result of these actions, Plaintiff suffered damages, which are more fully outlined herein below.

## I. DAMAGES

16.  As a proximate result of the collision, Plaintiff, Thomas Jackson, sustained serious personal injuries, specifically including neck, back, and head injuries and injuries to his body generally. Plaintiff believes some of his injuries are permanent in nature and have had a serious effect on his health and well-being. In connection with such injuries Plaintiff, Thomas Jackson, has suffered physical pain and mental anguish in the past, is suffering at the present, and in all reasonable probability will continue to suffer for the rest of his life. Further, it has been necessary for Plaintiff, Thomas Jackson, to pay or incur reasonable and necessary medical expenses in the past and in all reasonable probability will incur reasonable and necessary medical expenses for the treatment of his injuries in the future. In addition, he has sustained loss of

5

**MR 221**

earnings and physical impairment in the past and will in all probability continue to sustain a loss of earning capacity and physical impairment in the future. Plaintiff, Thomas Jackson, sues for the recovery of past and future medical expenses, past and future physical pain and mental anguish, past loss of earnings, past and future loss of earning capacity, and past and future physical impairment; all in an amount in excess of the minimum jurisdictional limits of this Court. Plaintiff is seeking a reasonable amount to be determined by the jury for his injuries.

17. In addition, Plaintiff is entitled to recover attorney's fees pursuant to Tex. Ins. Code §542.06 and interest at eighteen percent (18%) pursuant to Tex. Ins. Code §542.060.

## J. DOCUMENTS TO BE USED

18. Pursuant to Tex. R. Civ. P. 193.7, Plaintiff intends to use all documents exchanged and produced between the parties including, but not limited to, correspondence and discovery responses, during the trial of the above-entitled and numbered cause.

## K. REQUEST FOR DISCLOSURE

19. Pursuant to Texas Rule of Civil Procedure 194, you are requested to disclose, within fifty (50) days of service of this request, the information or material described in Rule 194.2 (a)-(l).

## L. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff request that the Defendant be cited to appear and answer and that upon final hearing hereon Plaintiff recover as follows:

a. Actual damages within the jurisdictional limits of this Court;

b. Prejudgment and post-judgment interest as allowed by law;

c. Declaratory relief as outlined in the petition;

6

**MR 222**

d. Costs of Court and attorney fees; and

e. All other relief the Court deems appropriate.

Respectfully submitted,

SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM

By: _____
M. Raymond Hatcher
State Bar No. 24002243
Alan J. Robertson
State Bar No. 24067952
Post Office Drawer 2909
101 East Whaley Street
Longview, Texas 75606
Telephone : (903) 757-7000
Facsimile  : (903) 757-7574
Email       : rhatcher@sloanfirm.com

ATTORNEYS FOR PLAINTIFF

7

**MR 223**



**AAA Texas County Mutual Insurance Company**
6555 North State Highway 161
Irving, Texas 75039-2402

April 28, 2014

PLAINTIFF'S EXHIBIT A

M. Raymond Hatcher, Esq.
Sloan, Bagley, Hatcher & Perry
101 East Whaley St.
Longview, TX  75601

RE:  Insured:     Thomas Jackson
     Client(s):   Thomas Jackson
     Claim#:      011157387
     Loss Date:   6/12/13

Dear Mr. Hatcher;

Thank you for your demand letter and compact disk dated March 26, 2014 and received in our offices on March 31, 2014. Per your letter you demand the "per person" Underinsured Motorist (UIM) bodily injury limits in settlement of your client's injury claim. Your disk included medical bills and records alleged to pertain to your client's care.

We have had an opportunity to thoroughly review the facts and circumstances surrounding the referenced loss as well the medical documentation you have provided. Unfortunately, we are unable to accept your demand.

However, in an effort to resolve this matter, we are willing to offer your client $20,000.00 UIM to resolve his claim. This offer is additional to the $30,000.00 paid by the adverse carrier and the $5,000.00 Personal Injury Protection (PIP) benefits previously paid.

Please present our offer to your client and contact me at the telephone number listed below so we may discuss and conclude this matter.

Sincerely,

Fredrick M. Armour
Claims Service Representative

6555 N. State Highway 161
Irving, TX  75039
Ph#:  888.222.9208 x2218379 or 469.221.8379

*NOTE: FOR YOUR INFORMATION AND PROTECTION, TEXAS LAW PROVIDES AS FOLLOWS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE PRISON*

Insurance provided to qualified AAA Texas members by the Interinsurance Exchange of the Automobile Club and its affiliates

**MR 224**



JOHN D. SLOAN JR. *+
LAUREEN F. BAGLEY
M. RAYMOND HATCHER
GLENN A. PERRY *+
*Board Certified Personal Injury Trial Law
+National Board of Trial Advocacy

# SLOAN, BAGLEY, HATCHER & PERRY
## LAW FIRM
### LONGVIEW - HOUSTON

J. RYAN FOWLER *
ALAN J. ROBERTSON
CARSON R. RUNGE
JUSTIN A. SMITH
WILLIAM X. KING

May 2, 2014

Mr. Frederick Armour                                    *Via Facsimile No.: (469) 221-6025*
AAA Texas County Mutual Insurance Company
6555 N. State Highway 161
Irving, Texas 75039

      Re:    Our Client/Your Insured:    Thomas Jackson
              Date of Incident:           June 12, 2013
              Claim No.:                011157387

Dear Mr. Armour:

Thank you for contacting our office recently regarding your evaluation of my client and your insured, Thomas Jackson's, underinsured motorist claim.

In your letter of April 28, 2014, you indicate that you are offering $20,000.00 in addition to the $5,000.00 PIP benefits previously paid to Mr. Jackson by AAA for his injuries, as settlement of his claims (over and above of the $30,000.00 third-party policy limits received by Mr. Jackson). By offering this amount, it is clear that AAA has performed its evaluation of Mr. Jackson's UIM claim and determined that the UIM claim is worth at least $25,000.00 ($20,000.00 plus $5,000.00 previously paid PIP benefits). As such, there is no reason that AAA should delay payment of this amount that itself acknowledges is due on this first party claim.

This letter is to request that you forward a check in the amount of your evaluation payable to this firm and your insured, Mr. Jackson. Because your insured vehemently disagrees with AAA's evaluation of the value of his claim, the payment of this amount is in no way to be considered "settlement" of Mr. Jackson UIM claim with AAA for the injuries that he sustained in the subject collision.

Please confirm in writing that you will forward the $20,000.00 payment as requested and that your insured may negotiate the check without the negotiation being considered any type of release of her rights to seek additional amounts under the policy in the future.

Thank you for your attention to this matter.



Yours very truly
SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM

M. RAYMOND HATCHER

MRH/pau
Jackson 3392-001

**MR 226**

APPENDIX TAB 5

Electronically Submitted
8/1/2014 4:42:01 PM
Gregg County District Clerk
By: Debbie Kinney ,deputy

8\1\14

CAUSE NO. 2014-1365-A

| | | |
|---|---|---|
| THOMAS JACKSON | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | GREGG COUNTY, TEXAS |
| | § | |
| AAA TEXAS COUNTY MUTUAL | § | |
| INSURANCE COMPANY | § | 188TH JUDICIAL DISTRICT |

## DEFENDANT'S ORIGINAL ANSWER

COMES NOW, AAA Texas County Mutual Insurance Company, Defendant in the above styled and numbered cause and files its Original Answer to the Plaintiff's Original Petition and in support thereof would respectfully represent and show unto the Court the following:

I.

Defendant AAA Texas County Mutual Insurance Company denies each and every, all and singular, the material allegations contained in Plaintiff's Original Petition and demands strict proof thereof.

II.

Defendant AAA Texas County Mutual Insurance Company demands a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Defendant AAA Texas County Mutual Insurance Company prays that upon final trial and hearing hereof, that no recovery be had from Defendant AAA Texas County Mutual Insurance Company, but that Defendant AAA Texas County Mutual Insurance Company go hence without delay and recover its costs, and for such other and further relief to which Defendant AAA Texas County Mutual Insurance Company may be justly entitled and will ever pray.

DEFENDANT'S ORIGINAL ANSWER                                                        Page 1

**MR 227**

Respectfully submitted,

WALTERS, BALIDO & CRAIN, L.L.P.

CARLOS A. BALIDO
State Bar No. 01631230
Meadow Park Tower, 15th Floor
10440 North Central Expressway
Dallas, TX 75231
Tel: 214-749-4805
Fax: 214-760-1670
carlos.balido@wbclawfirm.com

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been mailed, faxed, or hand delivered to all parties of record, in compliance with Rule 21a of the Texas Rules of Civil Procedure, on _____Aug. 1_____, 2014.

M. Raymond Hatcher
Alan J. Robertson
Sloan, Bagley, Hatcher & Perry law Firm
P. O. Drawer 2909
101 East Whaley Street
Longview, TX 75606
tel: 903-757-7000
fax: 903-757-7574
rhatcher@sloanfirm.com

CARLOS A. BALIDO

DEFENDANT'S ORIGINAL ANSWER                                                        Page 2

**MR 228**

# APPENDIX TAB 6

## CAUSE NO. 2014 – 1365 – A

| | | |
|---|---|---|
| **THOMAS JACKSON** | § | **IN THE DISTRICT COURT** |
| | § | |
| **vs.** | § | **OF GREGG COUNTY, TEXAS** |
| | § | |
| **AAA TEXAS COUNTY MUTUAL** | § | |
| **INSURANCE COMPANY** | § | **188th JUDICIAL DISTRICT** |

### PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE COURT:

Plaintiff Thomas Jackson files this, his First Amended Petition, and in support thereof respectfully shows the Court the following:

### A. DISCOVERY CONTROL PLAN

1.    Plaintiff intends that discovery will be conducted pursuant to a Level 3 discovery control plan. TEX. R. CIV. P. 190.4.

### B. PARTIES

2.    Plaintiff Thomas Jackson, an individual, is a resident of Gregg County, Texas. Plaintiff's Texas driver's license number is XXXXX037. Plaintiff's Social Security number is XXX-XX-X454.

3.    Defendant AAA Texas County Mutual Insurance Company has generally appeared herein and is before the Court for all purposes.

### C. JURISDICTION AND VENUE

4.    The Court has jurisdiction over the controversy because the damages well exceed the Court's jurisdictional minimum. Plaintiff seeks monetary relief in excess of $100,000.00 but not exceeding $200,000.00.

5.    Pursuant to Texas Insurance Code § 1952.110, venue is proper in Gregg County, Texas, which is the county in which the subject wreck occurred.

**MR 229**

## D. AGENCY / RESPONDEAT SUPERIOR

6. Whenever it is alleged in this petition that Defendant, AAA Texas County Mutual Insurance Company, did any act, omission or thing, it is meant that Defendant's employees, agents, officers, directors, servants, apparent agents, ostensible agents, agents by estoppel and/or representatives did such act, omission or thing and that at the time such act, omission or thing was done it was done with the actual or implied knowledge of Defendant, AAA Texas County Mutual Insurance Company, or was done with the full authorization or ratification of Defendant, AAA Texas County Mutual Insurance Company, or was done in the normal and routine course and scope of agency or employment of Defendant's employees, agents, officers, directors, servants, apparent agents or ostensible agents, agents by estoppel, and/or representatives.

## E. FACTS

7. This lawsuit results from a collision that occurred on June 12, 2013, at approximately 8:58 p.m. in Longview, Gregg County, Texas. Plaintiff Thomas Jackson was operating his vehicle westbound on Pliler Precise Road in a safe, reasonable and lawful manner, when he stopped in obedience to a traffic control device at the intersection of Judson Road and Pliler Precise Road. After stopping, and in obedience to the traffic control device, Plaintiff proceeded to continue traveling westbound into the intersection of Pliler Precise Road and Judson Road. Patricia Tompkins was traveling northbound on Judson Road when, with complete disregard for the safety and welfare of other persons or property, she disregarded the traffic control device striking the driver's side of the vehicle being driven by Plaintiff and causing the collision made the basis of this lawsuit.

8. When the collision occurred, Plaintiff's vehicle was covered by a policy of automobile insurance in full force and effect, which is the subject of this lawsuit. The policy of

2

**MR 230**

automobile insurance was issued by Defendant and included uninsured/underinsured motorist coverage as defined under the policy and/or by statute.

9. Plaintiff timely and properly notified Defendant of the motor vehicle collision that is the subject of this suit. Plaintiff has fully complied with all of the conditions of that insurance policy prior to his filing suit against Defendant. All conditions precedent have been performed or have occurred. Further, Plaintiff has complied with requests for provision of information to the Defendant.

10. As a result of the collision caused by Patricia Tompkins, Plaintiff sustained damages that exceed the amount of available and collectible liability insurance coverage issued to Patricia Tompkins and which covered her negligent actions. Defendant refused to consider Plaintiff s injuries, medical billing paid or incurred by or on behalf of Plaintiff and failed, and continues to fail, to fully compensate Plaintiff for the injuries caused by Patricia Tompkins, an underinsured motorist, and give Plaintiff the benefit of the bargain of his uninsured/underinsured motorist coverage present in the insurance policy, in violation of Texas law as described herein below. As a result of their acts and/or omissions, and unlawful conduct as described herein below, Defendant proximately caused Plaintiff injury.

### F. BREACH OF INSURANCE CONTRACT

11. All of the premiums that were due on the AAA Texas County Mutual Insurance Company policy with Thomas Jackson as the named insured had, at the time of the wreck, been paid and the policy was in full force and effect at the time of the collision. Defendant, AAA Texas County Mutual Insurance Company, kept its insured's premiums and had obligations as described in the insurance policy that was in effect at the time of the incident in question. Defendant to date has failed and refused to pay the money due under the policy, despite demand.

3

**MR 231**

Specifically, Defendant has determined that Plaintiff s underinsured motorist claim is worth at least $ 25,000, as evidenced by its offer to pay $ 20,000 in addition to $ 5,000 previously paid as personal injury protection policy limits (*see* Exhibit A). However, despite Plaintiff's demand for payment of this undisputed portion of his underinsured motorist coverage (*see* Exhibit B), Defendant has refused to tender this amount. This failure and refusal to pay constitutes a breach of contract and demonstrates bad faith. Further, Defendant's failure to properly value and fully pay Plaintiff's damages pursuant to its obligations in the policy at issue likewise constitutes a breach of contract and demonstrate bad faith.

## G. PETITION FOR DECLARATORY RELIEF

12.   Based on the foregoing facts, and pursuant to the policy of insurance in force and effect between Plaintiff and Defendant AAA Texas County Mutual Insurance Company at the time of the wreck, Plaintiff seeks a declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code construing the contract of insurance and declaring Plaintiff's rights and obligations under the contract. Specifically, Plaintiff seeks findings that (1) Patricia Tompkins is an underinsured motorist, (2) that Plaintiff is entitled to recover from Defendant Plaintiff's damages resulting from the motor vehicle collision the subject of this suit, (3) that Plaintiff's damages fall within the coverage afforded Plaintiff under the policy with Defendant, and (4) a finding specifying the amount of damages, attorney's fees, interest, and court costs that Defendant is obligated to pay.

13.   Defendant AAA Texas County Mutual Insurance Company's conduct is a proximate and producing cause of damages to Plaintiff. Such damages include, but are not limited to, unpaid benefits, medical expenses, physical impairment, lost earning capacity, and

4

**MR 232**

pain and mental anguish. Such damages have occurred in the past and are likely to continue in the future.

14.    As a result of Defendant AAA Texas County Mutual Insurance Company's conduct, Plaintiff has incurred attorney's fees through trial and appeal.

## H.  BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

15.    Without adequate explanation or justification, Defendant AAA Texas County Mutual Insurance Company, by and through its agents, breached its duty of good faith and fair dealing by denying or delaying payment of benefits to Plaintiff in accordance with its insurance agreement with Plaintiff when it was reasonably clear that it should pay said benefits to Plaintiff. Accordingly, Defendant is in violation of Texas Insurance Code, Chapter 542, *et seq.* Further, Defendant has engaged in unfair claim settlement practices in violation of Texas Insurance Code §§ 542.056, 542.057, and 542.058. As a proximate result of these actions, Plaintiff suffered damages, which are more fully outlined herein below.

## I.  DAMAGES

16.    As a proximate result of the collision, Plaintiff Thomas Jackson sustained serious personal injuries, specifically including neck, back, and head injuries and injuries to his body generally. Plaintiff believes some of his injuries are permanent in nature and have had a serious effect on his health and well-being. In connection with such injuries, Plaintiff Thomas Jackson has suffered physical pain and mental anguish in the past, is suffering at the present, and, in all reasonable probability, will continue to suffer for the rest of his life. Further, it has been necessary for Plaintiff, Thomas Jackson, to pay or incur reasonable and necessary medical expenses in the past and in all reasonable probability will incur reasonable and necessary medical expenses for the treatment of his injuries in the future. In addition, he has sustained physical

5

**MR 233**

impairment in the past and will in all probability continue to sustain physical impairment in the future. Plaintiff Thomas Jackson sues for the recovery of past and future medical expenses, past and future physical pain and mental anguish, and past and future physical impairment; all in an amount in excess of the minimum jurisdictional limits of this Court. Plaintiff seeks a reasonable amount to be determined by the jury for his injuries.

17. In addition, Plaintiff is entitled to recover attorney's fees and interest on the amount of his claim at eighteen percent (18%) per year pursuant to Texas Insurance Code § 542.060.

## J. DOCUMENTS TO BE USED

18. Pursuant to Texas Rule of Civil Procedure 193.7, Plaintiff intends to use all documents exchanged and produced between the parties including but not limited to correspondence and discovery responses during the trial of the above-entitled and numbered cause.

## K. PRAYER FOR RELIEF

PREMISES CONSIDERED, Plaintiff requests that the Defendant be cited to appear and answer and that, upon final hearing hereon, Plaintiff recover as follows:

a. Actual damages within the jurisdictional limits of this Court;

b. Prejudgment and post-judgment interest as allowed by law;

c. Declaratory relief as outlined in the petition;

d. Costs of Court and attorney's fees; and

e. All other relief to which Plaintiff may show himself justly entitled.

6

**MR 234**

Respectfully submitted,

SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM

M. RAYMOND HATCHER
State Bar No. 24002243
rhatcher@sloanfirm.com
ALAN J. ROBERTSON
State Bar No. 24067952
arobertson@sloanfirm.com
101 East Whaley Street
Longview, TX 75601
Telephone 903-757-7000
Facsimile   903-757-7574

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this  3rd  day of September, 2014, a true and correct copy of the foregoing document was sent by certified mail, return receipt requested, facsimile transmission, and/or e-mail in accordance with the Texas Rules of Civil Procedure to the following counsel of record:

Mr. Carlos A. Balido
WALTERS, BALIDO & CRAIN, L.L.P.
Meadow Park Tower, 15th Floor
10440 North Central Expressway
Dallas, TX 75231

M. RAYMOND HATCHER
ALAN J. ROBERTSON

7

**MR 235**

APPENDIX TAB 7

Electronically Submitted
1/16/2015 3:02:45 PM
Gregg County District Clerk
By: Debbie Kinney ,deputy

CAUSE NO. 2014 – 1365 – A

| | | |
|---|---|---|
| **THOMAS JACKSON** | § | **IN THE DISTRICT COURT** |
| | § | |
| **vs.** | § | **OF GREGG COUNTY, TEXAS** |
| | § | |
| **AAA TEXAS COUNTY MUTUAL** | § | |
| **INSURANCE COMPANY** | § | **188ᵗʰ JUDICIAL DISTRICT** |

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

TO THE HONORABLE COURT:

Plaintiff Thomas Jackson files this, his Motion to Compel Discovery. Plaintiff requests that this Court sign an order compelling Defendant AAA Texas County Mutual Insurance Company ("AAA") to fully answer/respond to Plaintiff Thomas Jackson's First Request for Admissions, First Set of Interrogatories, and First Request for Production. In support thereof, Plaintiff respectfully shows the Court the following:

## I. INTRODUCTION

This lawsuit results from a motor vehicle collision occurring on or about June 12, 2013, in Gregg County, Texas. The collision occurred at the intersection of Pliler Precise Road and Judson Road in Longview, Texas. At that time, Plaintiff Thomas Jackson was the driver of a vehicle lawfully and safely traveling westbound on Pliler Precise Road. Jackson stopped in obedience to a traffic light at the intersection of Judson Road and Pliler Precise Road. After stopping, and in obedience to the traffic light, Jackson continued traveling westbound into the intersection of Pliler Precise Road and Judson Road. Patricia Tompkins was traveling northbound on Judson Road when, with complete disregard for the safety and welfare of other persons or property, she disregarded the red light, struck the driver's side of Jackson's vehicle, and caused the collision made the basis of this lawsuit.

**MR 236**

When the collision occurred, AAA covered Jackson with a personal automobile insurance policy. AAA's policy included underinsured motorist coverage. Jackson's injuries and damages exhausted the limits of Ms. Tompkins's liability insurance coverage, so Jackson now seeks to enforce against AAA the insurance policy for which both he and AAA bargained and for which Jackson paid premiums.

AAA has previously offered to pay Jackson $20,000.00 of its $100,000.00 underinsured motorist coverage in addition to the $5,000.00 personal injury protection coverage it previously paid and the $30,000.00 of liability insurance paid by Ms. Tompkins's insurer. Despite Jackson's demand that AAA pay this amount (and the parties continue to litigate the amount(s) about which they disagree), AAA refuses to pay the $20,000.00 which it has already offered.

Discovery in this matter is governed by a Level 3 discovery control plan. This matter has not yet been set for trial.

## II. DEFICIENCIES IN DEFENDANT'S DISCOVERY RESPONSES

No party to this lawsuit disputes that the events listed below occurred on the corresponding dates listed:

- **October 17, 2014**: Jackson's counsel serves AAA with Jackson's First Request for Admissions, First Request for Production, and First Set of interrogatories.

- **November 17, 2014**: AAA's counsel requests (and Jackson's counsel grants) the first of four extensions of AAA's deadline to respond to Jackson's written discovery. The parties agree to extend AAA's deadline to **November 25, 2014**. Exhibit A.

- **November 25, 2014**: AAA's counsel obtains its second extension. The deadline to object/respond/answer is now **December 10, 2014**. Exhibit B.

- **December 10, 2014**: AAA's counsel obtains its third extension. The deadline to object/respond/answer is now **December 17, 2014**. Exhibit C.

- **December 17, 2014**: AAA's counsel obtains its fourth and final extension. The deadline to object/respond/answer is now **December 24, 2014**. Exhibit D.

2

**MR 237**

- **December 23, 2014:** AAA serves its Objections and Responses to Plaintiff's First Request for Admission, its Objections and Responses to Plaintiff's First Request for Production, and its Objections and Answers to Plaintiff's First Set of Interrogatories.

Although AAA purports to answer Jackson's discovery, it wholly failed to provide meaningful responses/answers, despite having over two months and four extensions of its deadline to respond. For example:

- In response to Jackson's 34 requests for production, AAA objected to **all but 7** requests and produced:

  - The Texas Peace Officer's Crash Report regarding the subject collision (previously produced by Jackson in discovery); and

  - Black-and-white photocopies of two digital photographs, presumably of the car driven by Jackson when the subject collision occurred.

- In response to Jackson's 20 interrogatories, AAA objected to **all but 1** interrogatory and provided substantive answers subject to its objections to only 6 interrogatories.

- AAA objected that Jackson's Request for Admission 14, which states "Based upon your investigation(s) and/or evaluation(s) of Plaintiff's uninsured/underinsured motorist claim, you have determined that Plaintiff has sustained damage in excess of the sum of (1) Plaintiff's $5,000.00 personal injury protection coverage and (2) Patricia Tompkins' $30,000.00 limit of liability insurance," is a two-part question and is vague.

- AAA objected that Jackson's Request for Admission 17, which states that, "[AAA has] failed to pay any portion of the $20,000.00 that you offered Plaintiff on April 28, 2014," is vague and argumentative.

- AAA objected that Jackson's Request for Admission 18, which states that, "Plaintiff has complied with all conditions precedent to recovering from the uninsured/underinsured motorist coverage contained in your policy number TPA016443353,"is vague. Further, AAA responds that, "[w]ithout waiving this objection and subject thereto, Defendant cannot admit or deny. Reasonable inquiry has been made for this information and the information known or easily obtainable is insufficient to enable Defendant to admit or deny."

Such lackadaisical efforts to respond to written discovery can hardly be considered to be in the good faith required by Texas Rule of Civil Procedure 193.2(c). *See also In re Park Cities Bank,* 409 S.W.3d 859, 877 (Tex. App.—Tyler 2013, no pet.). Consequently, the Court should

3

overrule all of Defendant's objections and compel AAA to provide full and complete responses/answers. *See* TEX. R. CIV. P. 193.2(e) ("An objection...that is obscured by numerous unfounded objections...is waived unless the [C]ourt excuses the waiver for good cause shown.").

## III. FACTS NOT APPARENT FROM THE RECORD

Jackson attaches the following exhibits to his Motion for the Court's reference and incorporates them herein as though they were set forth verbatim:

Exhibit A    -    November 17, 2014, Rule 11 Agreement extending AAA's deadline to object/respond/answer Jackson's written discovery requests until November 25, 2014.

Exhibit B    -    November 25, 2014, Rule 11 Agreement extending AAA's deadline to object/respond/answer Jackson's written discovery requests until December 10, 2014.

Exhibit C    -    December 10, 2014, Rule 11 Agreement extending AAA's deadline to object/respond/answer Jackson's written discovery requests until December 17, 2014.

Exhibit D    -    December 17, 2014, Rule 11 Agreement extending AAA's deadline to object/respond/answer Jackson's written discovery requests until December 24, 2014.

Exhibit E    -    Defendant AAA Texas County Mutual Insurance Company's Objections and Responses to Plaintiff Thomas Jackson's First Request for Production

Exhibit F    -    Defendant AAA Texas County Mutual Insurance Company's Objections and Answers to Plaintiff Thomas Jackson's First Set of Interrogatories

Exhibit G    -    Defendant AAA Texas County Mutual Insurance Company's Objections and Responses to Plaintiff Thomas Jackson's First Request for Admissions

## V. PRAYER FOR RELIEF

PREMISES CONSIDERED, Plaintiff Thomas Jackson requests that the Court hear and

4

**MR 239**

overrule Defendant AAA Texas County Mutual Insurance Company's objections to Jackson's First Request for Production, First Set of Interrogatories, and First Request for Admissions, compel AAA to provide full and complete answers/responses to same, and grant all such other and further relief to which Jackson may show himself justly entitled.

Respectfully submitted,

M. RAYMOND HATCHER
State Bar No. 24002243
rhatcher@sloanfirm.com
ALAN J. ROBERTSON
State Bar No. 24067952
arobertson@sloanfirm.com
SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM
101 East Whaley Street
Longview, Texas 75601
Telephone      903-757-7000
Facsimile      903-757-7574

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of January, 2015 a true and correct copy of the foregoing document was served in accordance with the Texas Rules of Civil Procedure on the following counsel of record:

Mr. Carlos A. Balido
WALTERS, BALIDO & CRAIN, L.L.P.
10440 North Central Expressway, Suite 1500
Dallas, Texas 75231

M. RAYMOND HATCHER
ALAN J. ROBERTSON

5

**MR 240**



**AUSTIN ★ DALLAS ★ DECATUR ★ HOUSTON**

CARLOS A. BALIDO
Partner
carlos.balido@wbclawfirm.com
(214) 347-8320 - Direct Line
(214) 347-8321 - Direct Facsimil

November 17, 2014

*Via Email: rhatcher@sloanfirm.com*
*Via Email: aroberston@sloanfirm.com*
*Via Email: paguilar@sloanfirm.com*
M. Raymond Hatcher
Sloan, Bagley, Hatcher & Perry Law Firm
101 East Whaley Street
Longview, Texas 75601

Re:  Cause No. 201-1365-A; *Thomas Jackson vs. AAA Texas County Mutual Insurance Company*, In the 188th Judicial District, Gregg County, Texas. Our File No. 1493-77325

Dear Counsel:

Please allow this letter to serve as a Rule 11 Agreement in the above-referenced matter. Specifically, you have agreed to extend Defendant AAA Texas County Mutual Insurance Company's deadlines to serve responses and objections to Plaintiff's written discovery requests. Defendant AAA Texas County Mutual Insurance Company's responses and objections to Plaintiff's Requests for Disclosure, Plaintiff's First Requests for Production, Plaintiff's First Set of Interrogatories, and Plaintiff's Requests for Admissions are now due **December 1, 2014.**

If this accurately reflects our agreement, please sign below where indicated and return a copy to me in accordance with Rule 11 of the Texas Rules of Civil Procedure. Thank you for your professional courtesies with this matter.

Very truly yours,

*/s/ Carlos A. Balido*
Carlos A. Balido

**AGREED TO BY:**

M. Raymond Hatcher
Attorney for Plaintiff

WALTERS BALIDO & CRAIN L.L.P.
MEADOW PARK TOWER  10440 NORTH CENTRAL EXPRESSWAY  SUITE 1500  DALLAS, TEXAS 75231
FAX: 214.760.1670  TELEPHONE: 214.749.4805
www.wbclawfirm.com

EXHIBIT A

**MR 241**



**WBC** | WALTERS
BALIDO &
CRAIN
ATTORNEYS AT LAW

AUSTIN ★ DALLAS ★ DECATUR ★ HOUSTON

CARLOS A. BALIDO
Partner
carlos.balido@wbclawfirm.com
(214) 347-8320 - Direct Line
(214) 347-8321 - Direct Facsimile

November 25, 2014

*Via Email: grobertson@sloanfirm.com*
Alan Robertson
Sloan, Bagley, Hatcher & Perry Law Firm
101 East Whaley Street
Longview, Texas 75601

Re:  Cause No. 201-1365-A;
     *Thomas Jackson vs. AAA Texas County Mutual Insurance Company*
     Our File No. 1493-77325

Dear Mr. Robertson:

Please allow this letter to confirm that the Plaintiff has agreed to extend Defendant, AAA Texas County Mutual Insurance Company's, deadline to serve its objections and/or responses to Plaintiff's interrogatories, admissions, production, and disclosure requests until Wednesday, December 10, 2014. Should this comport with your understanding, please sign where indicated and return your signatory agreement to our office via facsimile or e-mail.

Thank you for your professional cooperation and courtesy in this matter.

Very truly yours,

Carlos A. Balido

CAB:wjh
#1311012

**EXHIBIT B**

**MR 242**

November 25, 2014
Page 2

AGREED TO BY:

Alan Robertson
Attorney for Plaintiff

**EXHIBIT B**

**MR 243**



**AUSTIN ★ DALLAS ★ DECATUR ★ HOUSTON**

CARLOS A. BALIDO
Partner
carlos.balido@wbclawfirm.com
(214) 347-8320 - Direct Line
(214) 347-8321 - Direct Facsimil

December 10, 2014

*Via Facsimile: 903.757.7574*
M. Raymond Hatcher
Alan J. Robertson
Sloan Bagley Hatcher & Perry Law Firm
101 East Whaley Street
Longview, Texas 75601

      Re:    Cause No. 201-1365-A; *Thomas Jackson vs. AAA Texas County Mutual Insurance Company;* In the 188th District Court, Gregg County, Texas
           Our File No. 1493-77325

Dear Counsel:

    Please allow this letter to serve as a Rule 11 Agreement in the above-referenced matter. Specifically, you have agreed to extend Defendant AAA Texas County Mutual Insurance Company's deadlines to serve responses and objections to Plaintiff's written discovery requests. Defendant AAA Texas County Mutual Insurance Company's responses and objections to Plaintiff's Request for Disclosures, First Set of Interrogatories, First Request for Admissions and First Request for Production are now due **December 17, 2014.**

    If this accurately reflects our agreement, please sign below where indicated and return a copy to me in accordance with Rule 11 of the Texas Rules of Civil Procedure. Thank you for your professional courtesies with this matter.

                Very truly yours,

                /s/ *Carlos A. Balido*
                Carlos A. Balido

**AGREED TO BY:** _____
           M. Raymond Hatcher
           Attorney for Plaintiff

WALTERS BALIDO & CRAIN L.L.P.
MEADOW PARK TOWER   10440 NORTH CENTRAL EXPRESSWAY   SUITE 1500   DALLAS, TEXAS 75231
FAX: 214.760.1670   TELEPHONE: 214.749.4805
www.wbclawfirm.com

## EXHIBIT C

**MR 244**



**AUSTIN ★ DALLAS ★ DECATUR ★ HOUSTON**

CARLOS A. BALIDO
Partner
carlos.balido@wbclawfirm.com
(214) 347-8320 - Direct Line
(214) 347-8321 - Direct Facsimil

December 17, 2014

*Via Facsimile:* **903.757.7574**
Alan J. Robertson
Sloan Bagley Hatcher & Perry Law Firm
101 E Whaley Street
Longview, Texas 75601

Re:   Cause No. 201-1365-A; *Thomas Jackson vs. AAA Texas County Mutual Insurance Company;* In the 188th District Court, Gregg County, Texas
Our File No. 1493-77325

Dear Counsel:

Please allow this letter to serve as a Rule 11 Agreement in the above-referenced matter. Specifically, you have agreed to extend Defendant AAA Texas County Mutual Insurance Company's deadlines to serve responses, answers and objections to Plaintiff's written discovery requests. Defendant AAA Texas County Mutual Insurance Company's responses, answers and objections to Plaintiff's Request for Disclosure, First Set of Interrogatories, First Request for Admissions and First Request for Production are now due **December 24, 2014.**

If this accurately reflects our agreement, please sign below where indicated and return a copy to me in accordance with Rule 11 of the Texas Rules of Civil Procedure. Thank you for your professional courtesies with this matter.

Very truly yours,

*/s/ Ashley Whatley*
Ashley Whatley

**AGREED TO BY:**

Alan J. Robertson
Attorney for Plaintiff

**EXHIBIT D**

**MR 245**

# APPENDIX TAB 8



JOHN D. SLOAN ·+
LAUREEN F. BAGLEY
M. RAYMOND HATCHER
GLENN A. PERRY ·+
*Board Certified Personal Injury Trial Law
+National Board of Trial Advocacy

**SLOAN, BAGLEY,
HATCHER & PERRY**
LAW FIRM
LONGVIEW · HOUSTON

ALAN J. ROBERTSON
CARSON R. RUNGE
JUSTIN A. SMITH
CLAY R. ZELBST

September 10, 2015

***Via E-filing
and Facsimile   214-760-1670***
Mr. Carlos A Balido
WALTERS, BALIDO & CRAIN, L.L.P.
Meadow Park Towers 15th Floor
10440 North Central Expressway
Dallas, Texas 75231

Re:  *Thomas Jackson v. AAA Texas County Mutual Insurance Company*; Cause No:
      2014-1365-A; In the 188th District Court of Gregg County, Texas.

## NOTICE OF HEARING

Dear Mr. Balido:

Please be advised that a hearing on Plaintiffs' Motion to Compel Discovery is scheduled
**Thursday, October 1, 2015 @ 1:00 p.m.,** in the 188th Judicial District Court of Gregg County,
Texas.

If you have any questions, please feel free to contact our office.

Sincerely

Rose Feazell
*Paralegal to Glenn A. Perry and
Justin A. Smith*

/rf
3392-001 JACKSON

***Via E-filing and facsimile (903)236-8603***
Dawn Callow
188th District Court
Gregg County, Texas

101 East Whaley Street Longview, Texas 75601
Phone 903.753.7000 | Facsimile 903.753.7519 | www.sloanfirm.com

**MR 246**

APPENDIX TAB 9

CAUSE NO. 2014 – 1365 – A

| THOMAS JACKSON | § | IN THE DISTRICT COURT |
| | § | |
| vs. | § | OF GREGG COUNTY, TEXAS |
| | § | |
| AAA TEXAS COUNTY MUTUAL | § | |
| INSURANCE COMPANY | § | 188th JUDICIAL DISTRICT |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S EMERGENCY MOTION TO RESET HEARING

TO THE HONORABLE COURT:

Plaintiff Thomas Jackson files this, his Response to Defendant's Emergency Motion to Reset the Hearing on Plaintiff's Motion to Compel and, in support thereof, would respectfully show the Court as follows:

### I. ARGUMENT & AUTHORITIES

As the basis for its emergency motion to reset the hearing on Plaintiff's motion to compel, Defendant argues two bases: first, that they were not timely served with notice of the hearing; and, second, they have not had sufficient time to respond. *See* Def's Mtn, pg. 1—2. On July 15, 2015, Plaintiff sent a letter, enclosing his motion to compel, and seeking to meet and confer with Defendant on its discovery deficiencies. *See* Ex. A, Letter Dated 7/17/2015. Following this letter, Plaintiff attempted to contact Defendant three times, on July 30, 2015, July 31, 2015, and August 3, 2015, to confer on the discovery deficiencies, without avail. *See* Plt's Mtn to Compel, Certificate of Conference. Plaintiff filed its Motion to Compel on August 7, 2015, in the hope that the filing might prompt Defendant to confer on the motion, supplement its discovery, or at least respond. It did not. Defendant's second basis, that it has not had sufficient time to respond, is without merit; Defendant has known the contents of Plaintiff's Motion to

---

*Plaintiff's Response to Defendant's*
*Emergency Motion to Reset Hearing*

**MR 247**

Compel since July 15, more than sixty days prior to the hearing, and that Motion has been on file with the Court, and was served on Defendant, on August 7, 2015, over fifty days prior to the hearing.

On September 10, 2015, approximately two months after sending Plaintiff's initial meet and confer letter, and over a month after filing the motion, Plaintiff noticed the motion for hearing on October 1, 2015. Defendant claims that it "received less than three days' notice prior to the hearing and has not had sufficient time to obtain and file evidence in support of its Response to Plaintiff's Motion to Compel." *See* Def's Mtn, pg. 1. The notice of hearing was e-filed and, thus, should have been served on Defendant electronically through the e-filing system, if Defendant maintains an e-filing account as it is required to do in Gregg County. Understanding that technical errors may occur, however, and presuming that they did not receive service through the e-filing system, Plaintiff *also* served them with the file marked copy of the notice of hearing by facsimile, a copy of which, along with the fax confirmation sheet, is attached hereto. *See* Ex. B, Notice of Hearing and Fax Confirmation. Thus, despite its protestations to the contrary, Defendant has been provided notice of the hearing far in excess of the three-day minimum.

It is understandable that, from time to time, through innocent mistake, oversight or through no fault of its own, a party will not be able to comply with or meet certain deadlines. In such instances, Plaintiff is inclined to accommodate opposing counsel and, by agreement, permit relief. Defendant's eleventh hour cry for delay on bases that have no merit, however, is the latest in a pattern of conduct which has caused intractable delay going back for almost a year. In the past, Plaintiff's counsel has, consistent with its practice, provided repeated accommodations.

**MR 248**

Those accommodations have not prompted Defendant's dilatory conduct to be followed with any semblance of diligence.

On October 17th, 2014, Plaintiff sent his first set of Interrogatories, Requests for Production, and Requests for Admission. Defendant's responses were due on November 16, 2014. On November 17, 2014, after having failed to comply with its deadline, Plaintiff provided Defendant an extension to respond to discovery, moving the deadline to December 1, 2014. *See* Ex. C, Rule 11 Agreements. On November 25, 2014, Plaintiff provided a second extension to Defendant, moving the deadline to December 10, 2014. *See id.* On December 10, 2014, Plaintiff provided a third extension to Defendant, moving the deadline to December 17, 2014. *See id.* On December 17, 2014, Plaintiff provided a fourth extension, moving the deadline to December 24, 2014. *See id.*

On December 23, 2014, after more than sixty days and four extensions, Plaintiff finally received Defendant's responses to discovery, which were sorely deficient. The parties proceeded with certain discovery and motion practice. On April 22, 2014, Defendants' called to confer on Plaintiff's Motion to Quash certain unlimited depositions on written questions to Plaintiff's medical providers. During that conversation, Defendant expressed its interest to engage in early mediation to avoid incurring substantial litigation costs. The parties resolved their differences regarding the depositions on written questions and Plaintiff tabled his motion to compel began attempting to schedule mediation. Plaintiff's counsel circulated fourteen (14) available dates in June and July. Defendant was unavailable for all of them. At Defendant's request, Plaintiff's counsel circulated twelve (12) additional available dates in August and September.

On June 24, 2015, after more than two months of attempting to schedule mediation, Defendant, despite its expressed desire for early mediation, finally provided a mediation date. In

the four month window of time for which Plaintiff had provided available dates, Defendant selected the very last available date of September 29, 2015. This course of dilatory conduct, which became apparent on June 24, 2015, is what prompted Plaintiff to complete his motion to compel and begin the process of attempting to confer on July 15, 2015. In the more than sixty days following that letter, despite repeated attempts to confer, the filing of the motion, the filing and service of the notice of hearing (again, by two separate means), Defendant has been as unresponsive to Plaintiff's attempt to diligently litigate this case as it was in October of last year, when Plaintiff provided four separate extensions to Defendant's deadline to respond to the very discovery that forms the basis of Plaintiff's Motion to Compel.

## I. CONCLUSION AND PRAYER

For the reasons expressed above, Plaintiff respectfully requests that the Court deny Defendant's Emergency Motion to Reset the Hearing on Plaintiff's Motion to Compel, and for any and all other relief to which Plaintiff may be justly entitled.

Respectfully submitted,
SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM

_/s/ Justin A. Smith_
GLENN A. PERRY
State Bar No. 15801500
gperry@sloanfirm.com
JUSTIN A. SMITH
State Bar No. 24068415
jsmith@sloanfirm.com
101 East Whaley Street
Longview, Texas 75601
Telephone     903-757-7000
Facsimile     903-757-7574

ATTORNEYS FOR PLAINTIFF

**MR 250**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 1st day of October, 2015 a true and correct copy of the foregoing document was served in accordance with the Texas Rules of Civil Procedure on the following counsel of record:

Mr. Carlos A. Balido
WALTERS, BALIDO & CRAIN, L.L.P.
10440 North Central Expressway, Suite 1500
Dallas, Texas 75231

/s/ Justin A. Smith
GLENN A. PERRY
JUSTIN A. SMITH

**MR 251**



JOHN D. SLOAN *+
LAUREEN F. BAGLEY
M. RAYMOND HATCHER
GLENN A. PERRY *+
*Board Certified Personal Injury Trial Law
+National Board of Trial Advocacy

**SLOAN, BAGLEY,
HATCHER & PERRY**

LAW FIRM

LONGVIEW - HOUSTON

July 15, 2015

J. RYAN FOWLER *
ALAN J. ROBERTSON
CARSON R. RUNGE
JUSTIN A. SMITH
CLAY R. ZELBST

<u>*Via Facsimile 214-760-1670 & Regular U.S. Mail*</u>
Mr. Carlos A Balido
*WALTERS, BALIDO & CRAIN, L.L.P.*
Meadow Park Towers 15th Floor
10440 North Central Expressway, Suite 1500
Dallas, Texas 75231

Re: *Thomas Jackson v. AAA Texas County Mutual Insurance Company*; Cause No. 2014-1365-A; In the 188th District Court of Gregg County, Texas

Dear Mr. Balido:

Enclosed please find Plaintiff's Motion to Compel discovery from Defendants. This letter is sent with the intention of satisfying the meet and confer requirements under the Texas Rules of Civil Procedure. Defendants, despite having been granted four extensions to their discovery deadline, failed to provide any meaningful responses to Plaintiff's discovery and have obscured the few substantive answers with groundless objections. Please remove your objections and supplement your discovery with all responsive information to Plaintiff's requests by July 31, 2015. For any request to which you asserted a privilege, please produce a privilege log pursuant to Texas Rule of Civil Procedure 193.3 within fifteen days of this letter.

If you wish to conference further on Defendant's responses to discovery, please feel to contact me prior to July 31, 2015. Please note, however, that I will be out of the office from July 21 through July 29, 2015. If I do not hear from you by July 31, 2015, I will be forced to file the enclosed Motion to Compel.

Sincerely,

Justin A. Smith

JAS/cfm
Enclosure
3392-001 JACKSON

## EXHIBIT A

**MR 252**

| THOMAS JACKSON | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| vs. | § | OF GREGG COUNTY, TEXAS |
| | § | |
| AAA TEXAS COUNTY MUTUAL | § | |
| INSURANCE COMPANY | § | 188th JUDICIAL DISTRICT |

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

TO THE HONORABLE COURT:

Plaintiff Thomas Jackson files this, his Motion to Compel Discovery. Plaintiff requests that this Court sign an order compelling Defendant AAA Texas County Mutual Insurance Company ("AAA") to fully answer/respond to Plaintiff Thomas Jackson's First Request for Admissions, First Set of Interrogatories, and First Request for Production. In support thereof, Plaintiff respectfully shows the Court the following:

## I. INTRODUCTION

This lawsuit results from a motor vehicle collision occurring on or about June 12, 2013, in Gregg County, Texas. The collision occurred at the intersection of Pliler Precise Road and Judson Road in Longview, Texas. At that time, Plaintiff Thomas Jackson was the driver of a vehicle lawfully and safely traveling westbound on Pliler Precise Road. Jackson stopped in obedience to a traffic light at the intersection of Judson Road and Pliler Precise Road. After stopping, and in obedience to the traffic light, Jackson continued traveling westbound into the intersection of Pliler Precise Road and Judson Road. Patricia Tompkins was traveling northbound on Judson Road when, with complete disregard for the safety and welfare of other persons or property, she disregarded the red light, struck the driver's side of Jackson's vehicle, and caused the collision made the basis of this lawsuit.

# EXHIBIT A

**MR 253**

When the collision occurred, AAA covered Jackson with a personal automobile insurance policy. AAA's policy included underinsured motorist coverage. Jackson's injuries and damages exhausted the limits of Ms. Tompkins's liability insurance coverage, so Jackson now seeks to enforce against AAA the insurance policy for which both he and AAA bargained and for which Jackson paid premiums.

AAA has already determined that Mr. Jackson was entitled at least $20,000.00 of its $100,000.00 underinsured motorist coverage, in addition to the $5,000.00 personal injury protection coverage it previously paid and the $30,000.00 of liability insurance paid by Ms. Tompkins's insurer. Despite Jackson's demand that AAA pay this amount (and the parties continue to litigate the amount(s) about which they disagree), AAA refuses to pay the $20,000.00 which it has already determined Mr. Jackson is entitled to and which AAA offered.

Discovery in this matter is governed by a Level 3 discovery control plan. This matter has been set for trial on February 8, 2016.

## II. DEFICIENCIES IN DEFENDANT'S DISCOVERY RESPONSES

No party to this lawsuit disputes that the events listed below occurred on the corresponding dates listed:

- **October 17, 2014**: Jackson's counsel serves AAA with Jackson's First Request for Admissions, First Request for Production, and First Set of interrogatories.

- **November 17, 2014**: AAA's counsel requests (and Jackson's counsel grants) the first of four extensions of AAA's deadline to respond to Jackson's written discovery. The parties agree to extend AAA's deadline to **November 25, 2014**. Exhibit A.

- **November 25, 2014**: AAA's counsel obtains its second extension. The deadline to object/respond/answer is now **December 10, 2014**. Exhibit B.

- **December 10, 2014**: AAA's counsel obtains its third extension. The deadline to object/respond/answer is now **December 17, 2014**. Exhibit C.

- **December 17, 2014**: AAA's counsel obtains its fourth and final extension. The deadline

2

# EXHIBIT A

**MR 254**

to object/respond/answer is now **December 24, 2014**. Exhibit D.

- **December 23, 2014:** AAA serves its Objections and Responses to Plaintiff's First Request for Admission, its Objections and Responses to Plaintiff's First Request for Production, and its Objections and Answers to Plaintiff's First Set of Interrogatories.

Although AAA purports to answer Jackson's discovery, it wholly failed to provide meaningful responses/answers, despite having over two months and four extensions of its deadline to respond. For example:

- In response to Jackson's 34 requests for production, AAA objected to **all but** 7 requests and produced:

  - The Texas Peace Officer's Crash Report regarding the subject collision (previously produced by Jackson in discovery); and

  - Black-and-white photocopies of two digital photographs, presumably of the car driven by Jackson when the subject collision occurred.

- In response to Jackson's 20 interrogatories, AAA objected to **all but 1** interrogatory and provided substantive answers subject to its objections to only 6 interrogatories.

- AAA objected that Jackson's Request for Admission 14, which states "Based upon your investigation(s) and/or evaluation(s) of Plaintiff's uninsured/underinsured motorist claim, you have determined that Plaintiff has sustained damage in excess of the sum of (1) Plaintiff's $5,000.00 personal injury protection coverage and (2) Patricia Tompkins' $30,000.00 limit of liability insurance," is a two-part question and is vague.

- AAA objected that Jackson's Request for Admission 17, which states that, "[AAA has] failed to pay any portion of the $20,000.00 that you offered Plaintiff on April 28, 2014," is vague and argumentative.

- AAA objected that Jackson's Request for Admission 18, which states that, "Plaintiff has complied with all conditions precedent to recovering from the uninsured/underinsured motorist coverage contained in your policy number TPA016443353,"is vague. Further, AAA responds that, "[w]ithout waiving this objection and subject thereto, Defendant cannot admit or deny. Reasonable inquiry has been made for this information and the information known or easily obtainable is insufficient to enable Defendant to admit or deny."

Such lackadaisical efforts to respond to written discovery can hardly be considered to be in the good faith required by Texas Rule of Civil Procedure 193.2(c). *See also In re Park Cities*

3

**EXHIBIT A**

**MR 255**

*Bank*, 409 S.W.3d 859, 877 (Tex. App.—Tyler 2013, no pet.). Consequently, the Court should overrule all of Defendant's objections and compel AAA to provide full and complete responses/answers. *See* TEX. R. CIV. P. 193.2(e) ("An objection…that is obscured by numerous unfounded objections…is waived unless the [C]ourt excuses the waiver for good cause shown.").

### III. FACTS NOT APPARENT FROM THE RECORD

Jackson attaches the following exhibits to his Motion for the Court's reference and incorporates them herein as though they were set forth verbatim:

| | |
|---|---|
| Exhibit A | - November 17, 2014, Rule 11 Agreement extending AAA's deadline to object/respond/answer Jackson's written discovery requests until November 25, 2014. |
| Exhibit B | - November 25, 2014, Rule 11 Agreement extending AAA's deadline to object/respond/answer Jackson's written discovery requests until December 10, 2014. |
| Exhibit C | - December 10, 2014, Rule 11 Agreement extending AAA's deadline to object/respond/answer Jackson's written discovery requests until December 17, 2014. |
| Exhibit D | - December 17, 2014, Rule 11 Agreement extending AAA's deadline to object/respond/answer Jackson's written discovery requests until December 24, 2014. |
| Exhibit E | - Defendant AAA Texas County Mutual Insurance Company's Objections and Responses to Plaintiff Thomas Jackson's First Request for Production |
| Exhibit F | - Defendant AAA Texas County Mutual Insurance Company's Objections and Answers to Plaintiff Thomas Jackson's First Set of Interrogatories |
| Exhibit G | - Defendant AAA Texas County Mutual Insurance Company's Objections and Responses to Plaintiff Thomas Jackson's First Request for Admissions |

### V. PRAYER FOR RELIEF

PREMISES CONSIDERED, Plaintiff Thomas Jackson requests that the Court hear and

4

## EXHIBIT A

**MR 256**

overrule Defendant AAA Texas County Mutual Insurance Company's objections to Jackson's First Request for Production, First Set of Interrogatories, and First Request for Admissions, compel AAA to provide full and complete answers/responses to same, and grant all such other and further relief to which Jackson may show himself justly entitled.

Respectfully submitted,
SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM


/s/ Justin A. Smith
GLENN A. PERRY
State Bar No. 15801500
gperry@sloanfirm.com
JUSTIN A. SMITH
State Bar No. 24068415
jsmith@sloanfirm.com
101 East Whaley Street
Longview, Texas 75601
Telephone      903-757-7000
Facsimile      903-757-7574

ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of July, 2015 a true and correct copy of the foregoing document was served in accordance with the Texas Rules of Civil Procedure on the following counsel of record:

Mr. Carlos A. Balido
WALTERS, BALIDO & CRAIN, L.L.P.
10440 North Central Expressway, Suite 1500
Dallas, Texas 75231

GLENN A. PERRY
JUSTIN A. SMITH


5

**EXHIBIT A**

**MR 257**

overrule Defendant AAA Texas County Mutual Insurance Company's objections to Jackson's First Request for Production, First Set of Interrogatories, and First Request for Admissions, compel AAA to provide full and complete answers/responses to same, and grant all such other and further relief to which Jackson may show himself justly entitled.

Respectfully submitted,
SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM

/s/ Justin A. Smith
GLENN A. PERRY
State Bar No. 15801500
gperry@sloanfirm.com
JUSTIN A. SMITH
State Bar No. 24068415
jsmith@sloanfirm.com
101 East Whaley Street
Longview, Texas 75601
Telephone    903-757-7000
Facsimile    903-757-7574

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of July, 2015 a true and correct copy of the foregoing document was served in accordance with the Texas Rules of Civil Procedure on the following counsel of record:

Mr. Carlos A. Balido
WALTERS, BALIDO & CRAIN, L.L.P.
10440 North Central Expressway, Suite 1500
Dallas, Texas 75231

GLENN A. PERRY
JUSTIN A. SMITH

5

**EXHIBIT A**

**MR 258**

JOHN D. SLOAN JR. *+
LAUREEN F. BAGLEY
M. RAYMOND HATCHER
GLENN A. PERRY *+
*Board Certified Personal Injury Trial Law
+National Board of Trial Advocacy

# ✶
## SLOAN, BAGLEY, HATCHER & PERRY
### LAW FIRM
#### LONGVIEW - HOUSTON

ALAN J. ROBERTSON
CARSON R. RUNGE
JUSTIN A. SMITH
CLAY R. ZELBST

## FACSIMILE TRANSMITTAL LETTER

### July 15, 2015

**TO:** Carlos A. Balido
**COMPANY:** *Walters Balido & Crain, LLP*
**FAX:** (214) 760-1670 or (214 ) 347-8321

**FROM:** Claudia Fuentes-Martinez
*Legal Secretary to Justin A. Smith*

**RE:** *Thomas Jackson v. AAA Texas County Mutual Insurance Company*
3392-001

**ORIGINAL MAILED:** Yes, Regular U.S. Mail

**NUMBER OF PAGES, INCLUDING THIS COVER LETTER: 7**

Please see attached.

**IF TRANSMISSION IS NOT COMPLETE, PLEASE CALL (903) 757-7000.**

**CONFIDENTIALITY NOTICE:** This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is unauthorized and strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the documents.

## EXHIBIT A

**MR 259**

```
****************************
*** FAX MULTI TX REPORT ***
****************************
```

| | |
|---|---|
| JOB NO. | 0620 |
| DEPT. ID | 3392001 |
| PGS. | 7 |
| TX INCOMPLETE | ----- |
| TRANSACTION OK | 12147601670 |
| | 12143478321 |
| ERROR | ----- |



**SLOAN, BAGLEY, HATCHER & PERRY**

LAW FIRM

LONGVIEW · HOUSTON

JOHN D. SLOAN JR. *+
LAUREEN P. BAGLEY
M. RAYMOND HATCHER
GLENN A. PERRY *+
*Board Certified Personal Injury Trial Law
+National Board of Title Advocacy

ALAN J. ROBERTSON
CARSON R. RUNGE
JUSTIN A. SMITH
CLAY R. ZELBST

## FACSIMILE TRANSMITTAL LETTER

### July 15, 2015

**TO:**   Carlos A. Balido
**COMPANY:**   *Walters Balido & Crain, LLP*
**FAX:**   (214) 760-1670 or (214 ) 347-8321

**FROM:**   Claudia Fuentes-Martinez
*Legal Secretary to Justin A. Smith*

**RE:**   *Thomas Jackson v. AAA Texas County Mutual Insurance Company*
**3392-001**

**ORIGINAL MAILED:  Yes, Regular U.S. Mail**

**NUMBER OF PAGES, INCLUDING THIS COVER LETTER: 7**

**Please see attached.**

**IF TRANSMISSION IS NOT COMPLETE, PLEASE CALL (903) 757-7000.**

**CONFIDENTIALITY NOTICE:** This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is unauthorized and strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the documents.

# EXHIBIT A

**MR 260**

JOHN D. SLOAN *+
LAUREEN P. BAGLEY
M. RAYMOND HATCHER
GLENN A. PERRY *+
* Board Certified Personal Injury Trial Law
(National Board of Trial Advocacy)



**SLOAN, BAGLEY,
HATCHER & PERRY**
LAW FIRM
LONGVIEW - HOUSTON

ALAN J. ROBERTSON
CARSON R. RUNGE
JUSTIN A. SMITH
CLAY R. ZELDST

September 10, 2015

*Via E-filing
and Facsimile  214-760-1670*
Mr. Carlos A Balido
WALTERS, BALIDO & CRAIN, L.L.P.
Meadow Park Towers 15th Floor
10440 North Central Expressway
Dallas, Texas 75231

Re: *Thomas Jackson v. AAA Texas County Mutual Insurance Company*; Cause No:
2014-1365-A; In the 188th District Court of Gregg County, Texas.

### NOTICE OF HEARING

Dear Mr. Balido:

Please be advised that a hearing on Plaintiffs' Motion to Compel Discovery is scheduled **Thursday, October 1, 2015 @ 1:00 p.m.,** in the 188th Judicial District Court of Gregg County, Texas.

If you have any questions, please feel free to contact our office.

Sincerely

Rose Feazell
*Paralegal to Glenn A. Perry and
Justin A. Smith*

/rf
3392-001 JACKSON

*Via E-filing and facsimile (903)236-8603*
Dawn Callow
188th District Court
Gregg County, Texas

101 East Whaley Street, Longview, Texas 75601
Phone 903.757.7000 | Facsimile 903.757.7574 | www.sloanfirm.com

## EXHIBIT B

**MR 261**

```
**************************
*** FAX MULTI TX REPORT ***
**************************
```

| | |
|---|---|
| JOB NO. | 0591 |
| DEPT. ID | 3392001 |
| PGS. | 2 |
| TX INCOMPLETE | ----- |
| TRANSACTION OK | 12147601670 |
| | 9032368603 |
| ERROR | ----- |



JOHN D. SLOAN JR.
LAUREN P. BAGLEY
M. RAYMOND HATCHER
GLENN A. PERRY
Board Certified Personal Injury Trial Law
National Board of Trial Advocacy

## SLOAN, BAGLEY, HATCHER & PERRY
### LAW FIRM
### LONGVIEW · HOUSTON

ALAN J. ROBERTSON
CARSON R. RUNGE
JUSTIN A. SMITH
CLAY R. ZILLST

### FACSIMILE TRANSMITTAL LETTER

#### September 15, 2015

TO:        Carlos A. Balido
COMPANY:   *Walters Balido & Crain, LLP*
FAX:       (214) 760-1670

TO:        Dawn Callow
COMPANY:   *188th District Court, Gregg County, Texas*
FAX:       (903) 236-8603

FROM:      Rose Fenzell
           *Paralegal to Glenn A. Perry and*
           *Justin A. Smith*

RE:        *Thomas Jackson v. AAA Texas County Mutual Insurance Company*
           3392-001

ORIGINAL MAILED:  No, facsimile only;

NUMBER OF PAGES, INCLUDING THIS COVER LETTER: 2

Please see attached, Plaintiff's Notice of Hearing on its Motion to Compel Discovery.

IF TRANSMISSION IS NOT COMPLETE, PLEASE CALL (903) 757-7000.

CONFIDENTIALITY NOTICE: This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is unauthorized and strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the documents.

## EXHIBIT B

**MR 262**



JOHN D. SLOAN, JR. *‡
LAURENCE BAGLEY *
M. RAYMOND HATCHER
GLENN A. PERRY *‡
*Texas Certified Personal Injury Trial Law
‡National Board of Trial Advocacy

## SLOAN, BAGLEY, HATCHER & PERRY
### LAW FIRM
### LONGVIEW - HOUSTON

ALAN J. ROBERTSON
CARSON R. RUNGE
JUSTIN A. SMITH
CLAY EZZELL *

## FACSIMILE TRANSMITTAL LETTER

### September 15, 2015

TO: **Carlos A. Balido**
COMPANY: *Walters Balido & Crain, LLP*
FAX: **(214) 760-1670**

TO: **Dawn Callow**
COMPANY: *188ᵗʰ District Court, Gregg County, Texas*
FAX: **(903)236-8603**

FROM: **Rose Feazell**
*Paralegal to Glenn A. Perry and*
*Justin A. Smith*

RE: *Thomas Jackson v. AAA Texas County Mutual Insurance Company*
3392-001

**ORIGINAL MAILED:** No, facsimile only;

**NUMBER OF PAGES, INCLUDING THIS COVER LETTER: 2**

Please see attached, Plaintiff's Notice of Hearing on its Motion to Compel Discovery.

**IF TRANSMISSION IS NOT COMPLETE, PLEASE CALL (903) 757-7000.**

**CONFIDENTIALITY NOTICE:** This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is unauthorized and strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the documents.

101 East Whaley Street, Longview, Texas 75601
Phone 903.757.7000 | Facsimile 903.757.7574 | www.sloanfirm.com

## EXHIBIT B

**MR 263**



JOHN D. SLOAN *+
LAUREEN F. BAGLEY
M. RAYMOND HATCHER
GLENN A. PERRY *+
*Board Certified Personal Injury Trial Law
+National Board of Trial Advocacy

**SLOAN, BAGLEY,
HATCHER & PERRY**
LAW FIRM
LONGVIEW - HOUSTON

ALAN J. ROBERTSON
CARSON R. RUNGE
JUSTIN A. SMITH
CLAY R. ZELBST

September 10, 2015

*Via E-filing
and Facsimile  214-760-1670*
Mr. Carlos A Balido
WALTERS, BALIDO & CRAIN, L.L.P.
Meadow Park Towers 15th Floor
10440 North Central Expressway
Dallas, Texas 75231

Re:  *Thomas Jackson v. AAA Texas County Mutual Insurance Company*; Cause No:
2014-1365-A; In the 188th District Court of Gregg County, Texas.

### NOTICE OF HEARING

Dear Mr. Balido:

Please be advised that a hearing on Plaintiffs' Motion to Compel Discovery is scheduled **Thursday, October 1, 2015 @ 1:00 p.m.**, in the 188th Judicial District Court of Gregg County, Texas.

If you have any questions, please feel free to contact our office.

Sincerely

Rose Feazell
*Paralegal to Glenn A. Perry and
Justin A. Smith*

/rf
3392-001 JACKSON

*Via E-filing and facsimile (903)236-8603*
Dawn Callow
188th District Court
Gregg County, Texas

## EXHIBIT B

**MR 264**



**AUSTIN ★ DALLAS ★ DECATUR ★ HOUSTON**

CARLOS A. BALIDO
Partner
carlos.balido@wbclawfirm.com
(214) 347-8320 - Direct Line
(214) 347-8321 - Direct Facsimil

November 17, 2014

*Via Email: rhatcher@sloanfirm.com*
*Via Email: aroberston@sloanfirm.com*
*Via Email: paguilar@sloanfirm.com*
M. Raymond Hatcher
Sloan, Bagley, Hatcher & Perry Law Firm
101 East Whaley Street
Longview, Texas 75601

Re:     Cause No. 201-1365-A; *Thomas Jackson vs. AAA Texas County Mutual Insurance Company*, In the 188th Judicial District, Gregg County, Texas. Our File No. 1493-77325

Dear Counsel:

Please allow this letter to serve as a Rule 11 Agreement in the above-referenced matter. Specifically, you have agreed to extend Defendant AAA Texas County Mutual Insurance Company's deadlines to serve responses and objections to Plaintiff's written discovery requests. Defendant AAA Texas County Mutual Insurance Company's responses and objections to Plaintiff's Requests for Disclosure, Plaintiff's First Requests for Production, Plaintiff's First Set of Interrogatories, and Plaintiff's Requests for Admissions are now due **December 1, 2014.**

If this accurately reflects our agreement, please sign below where indicated and return a copy to me in accordance with Rule 11 of the Texas Rules of Civil Procedure. Thank you for your professional courtesies with this matter.

Very truly yours,

*/s/ Carlos A. Balido*
Carlos A. Balido

**AGREED TO BY:**

M. Raymond Hatcher
Attorney for Plaintiff

WALTERS BALIDO & CRAIN L.L.P.
MEADOW PARK TOWER  10440 NORTH CENTRAL EXPRESSWAY  SUITE 1500  DALLAS, TEXAS 75231
FAX: 214.760.1670  TELEPHONE: 214.749.4805
www.wbclawfirm.com

## EXHIBIT C

**MR 265**



**AUSTIN ★ DALLAS ★ DECATUR ★ HOUSTON**

CARLOS A. BALIDO
Partner
carlos.balido@wbclawfirm.com
(214) 347-8320 - Direct Line
(214) 347-8321 - Direct Facsimile

November 25, 2014

*Via Email: aroberston@sloanfirm.com*
Alan Robertson
Sloan, Bagley, Hatcher & Perry Law Firm
101 East Whaley Street
Longview, Texas 75601

      Re:    Cause No. 201-1365-A;
             *Thomas Jackson vs. AAA Texas County Mutual Insurance Company*
             Our File No. 1493-77325

Dear Mr. Robertson:

Please allow this letter to confirm that the Plaintiff has agreed to extend Defendant, AAA Texas County Mutual Insurance Company's, deadline to serve its objections and/or responses to Plaintiff's interrogatories, admissions, production, and disclosure requests until Wednesday, December 10, 2014. Should this comport with your understanding, please sign where indicated and return your signatory agreement to our office via facsimile or e-mail.

Thank you for your professional cooperation and courtesy in this matter.

Very truly yours,

Carlos A. Balido

CAB:wjh
#1311012

WALTERS BALIDO & CRAIN L.L.P.
MEADOW PARK TOWER   10440 NORTH CENTRAL EXPRESSWAY  SUITE 1500  DALLAS, TEXAS 75231
FAX: 214.760.1670  TELEPHONE: 214.749.4805
www.wbclawfirm.com

# EXHIBIT C

**MR 266**

November 25, 2014
Page 2

AGREED TO BY:

Alan Robertson
Attorney for Plaintiff

**EXHIBIT C**

**MR 267**



## AUSTIN ★ DALLAS ★ DECATUR ★ HOUSTON

CARLOS A. BALIDO
Partner
carlos.balido@wbclawfirm.com
(214) 347-8320 - Direct Line
(214) 347-8321 - Direct Facsimil

December 10, 2014

*Via Facsimile: 903.757.7574*
M. Raymond Hatcher
Alan J. Robertson
Sloan Bagley Hatcher & Perry Law Firm
101 East Whaley Street
Longview, Texas 75601

Re:  Cause No. 201-1365-A; *Thomas Jackson vs. AAA Texas County Mutual Insurance Company*; In the 188th District Court, Gregg County, Texas
Our File No. 1493-77325

Dear Counsel:

Please allow this letter to serve as a Rule 11 Agreement in the above-referenced matter. Specifically, you have agreed to extend Defendant AAA Texas County Mutual Insurance Company's deadlines to serve responses and objections to Plaintiff's written discovery requests. Defendant AAA Texas County Mutual Insurance Company's responses and objections to Plaintiff's Request for Disclosures, First Set of Interrogatories, First Request for Admissions and First Request for Production are now due **December 17, 2014.**

If this accurately reflects our agreement, please sign below where indicated and return a copy to me in accordance with Rule 11 of the Texas Rules of Civil Procedure. Thank you for your professional courtesies with this matter.

Very truly yours,

*/s/ Carlos A. Balido*
Carlos A. Balido

**AGREED TO BY:** _____

M. Raymond Hatcher
Attorney for Plaintiff

WALTERS BALIDO & CRAIN L.L.P.
MEADOW PARK TOWER  10440 NORTH CENTRAL EXPRESSWAY  SUITE 1500  DALLAS, TEXAS 75231
FAX: 214.760.1670  TELEPHONE: 214.749.4805
www.wbclawfirm.com

## EXHIBIT C

**MR 268**



WALTERS
BALIDO &
CRAIN
ATTORNEYS AT LAW

AUSTIN ★ DALLAS ★ DECATUR ★ HOUSTON

CARLOS A. BALIDO
Partner
carlos.balido@wbclawfirm.com
(214) 347-8320 - Direct Line
(214) 347-8321 - Direct Facsimil

December 17, 2014

*Via Facsimile: 903.757.7574*
Alan J. Robertson
Sloan Bagley Hatcher & Perry Law Firm
101 E Whaley Street
Longview, Texas 75601

      Re:    Cause No. 201-1365-A; *Thomas Jackson vs. AAA Texas County Mutual Insurance Company*; In the 188th District Court, Gregg County, Texas
             Our File No. 1493-77325

Dear Counsel:

Please allow this letter to serve as a Rule 11 Agreement in the above-referenced matter. Specifically, you have agreed to extend Defendant AAA Texas County Mutual Insurance Company's deadlines to serve responses, answers and objections to Plaintiff's written discovery requests. Defendant AAA Texas County Mutual Insurance Company's responses, answers and objections to Plaintiff's Request for Disclosure, First Set of Interrogatories, First Request for Admissions and First Request for Production are now due **December 24, 2014**.

If this accurately reflects our agreement, please sign below where indicated and return a copy to me in accordance with Rule 11 of the Texas Rules of Civil Procedure. Thank you for your professional courtesies with this matter.

                     Very truly yours,

                     */s/ Ashley Whatley*
                     Ashley Whatley

**AGREED TO BY:**

Alan J. Robertson
Attorney for Plaintiff

WALTERS BALIDO & CRAIN L.L.P.
MEADOW PARK TOWER 10440 NORTH CENTRAL EXPRESSWAY SUITE 1500 DALLAS, TEXAS 75231
FAX: 214.760.1670 TELEPHONE: 214.749.4805
www.wbclawfirm.com

# EXHIBIT C

**MR 269**

APPENDIX TAB 10

Electronically Submitted
OCTOBER 27, 2015 2:08 A.M.
Gregg County District Clerk
By: Kindell Whitley ,deputy

CAUSE NO. 2014 – 1365 – A

| | | |
|---|---|---|
| THOMAS JACKSON | § § § | IN THE DISTRICT COURT |
| vs. | § § | OF GREGG COUNTY, TEXAS |
| AAA TEXAS COUNTY MUTUAL INSURANCE COMPANY | § § | 188th JUDICIAL DISTRICT |

## PLAINTIFF'S PROPOSED ORDER ON PLAINTIFF'S MOTION TO COMPEL

After considering Plaintiff, Thomas Jackson's Motion to Compel, the response, any evidence submitted therewith, and arguments of counsel, the Court finds the Motion to be well taken and therefore GRANTS Plaintiff's Motion to Compel.

It is therefore, ORDERED, ADJUDGED and DECREED that Plaintiff's Motion to Compel is GRANTED and that all objections asserted by Defendant in its responses to Plaintiff's First Requests for Admission, First Set of Interrogatories, and First Requests for Production are hereby OVERRULED.

The Court further FINDS that the following requests are related to the incident underlying the suit, Plaintiff's claims for breach of contract and/or Plaintiff's claims for declaratory judgment: Plaintiff's Request for Admission No. 18; Plaintiff's Interrogatories Nos. 1, 2, 4, 5, 7, 9, 10, 11, 12, 13, 15, and 20; Plaintiff's Requests for Production Nos. 2, 3, 4, 5, 7, 9, 10, 11, 12, 13, 15, 16, 17, 18, 25, and 29; and Plaintiff's Request for Production No. 34, to the extent it pertains to these immediately aforementioned discovery requests. It is, therefore, ORDERED that Defendant shall fully respond to these requests and interrogatories and produce all responsive information and documents by October 15, 2015. It is further ORDERED that should any information or material be withheld on the basis of privilege from Defendant's responses to this discovery, Defendant shall produce a privilege log identifying the information

Page 1

**MR 270**

withheld, the specific privilege(s) asserted, information sufficient for the Court and Plaintiff to assess the applicable of those privileges, and any and all other information required by Texas Rule of Civil Procedure 193.3 by October 15, 2015.

The Court further FINDS that that the following requests are related to Plaintiff's extra-contractual claims: Plaintiff's Request for Admission No. 17; Plaintiff's Interrogatories Nos. 3, 6, 8, 14, 16, 17, 18, and 19; Plaintiff's Requests for Production Nos. 1, 6, 8, 14, 19, 20, 21, 22, 23, 24, 26, 27, 28, 30, 31, 32, and 33; and Plaintiff's Request for Production No. 34, to the extent it pertains to these immediately aforementioned discovery requests. It is, therefore, ORDERED that Defendant shall fully respond to these requests and interrogatories and produce all responsive information and documents within forty-five (45) days of October 1, 2015. It is further ORDERED that should any information or material be withheld on the basis of privilege from Defendant's responses to this discovery, Defendant shall produce a privilege log identifying the information withheld, the specific privilege(s) asserted, information sufficient for the Court and Plaintiff to assess the applicable of those privileges, and any and all other information required by Texas Rule of Civil Procedure 193.3 within forty-five (45) days of October 1, 2015.

SIGNED on ___October 26th___, 2015.

_____
JUDGE PRESIDING

**MR 271**